

# Potter Anderson & Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140 Direct Phone
(302) 658-1192 Fax

October 31, 2007
Public Version – November 7, 2007

**BY E-FILE**

The Honorable Mary Pat Thynge
Magistrate Judge
United States District Court
  for the District of Delaware
844 King Street
Wilmington, DE 19801

**PUBLIC VERSION**

Re: ZymoGenetics, Inc. v. Bristol-Myers Squibb Co., et al.,
D. Del., C.A. No. 06-500-***

Objection to Bristol-Myers Squibb's Tutorial

Dear Magistrate Judge Thynge:

    In accordance with paragraph 9 of the Scheduling Order ("Order") (D.I. 98), plaintiff ZymoGenetics, Inc. ("ZymoGenetics") writes to comment on defendant Bristol-Myers Squibb's ("BMS") tutorial. First, ZymoGenetics objects to BMS clearly overstepping the Court's Order regarding what information is to be included in the tutorial. "The tutorial should focus on the technology in issue *and should not be used to argue the parties' claims construction contentions.*" *See* Scheduling Order, ¶9 (emphasis added.) In fact, the Court put the parties on notice that the purpose of the tutorial was to "just be providing me background." *See* March 30, 2007 Telephone Conference transcript, page 10:23-24 (Ex. A).

    To understand the technology in issue, one needs a background of basic molecular biology. Such technology consists of isolating and cloning genes which code for proteins of therapeutic interest, of expressing those genes in eukaryotic cells, and of isolating the expressed protein for use in a therapeutic formulation. In light of the technology involved in this case, a tutorial need only cover basic techniques used to accomplish these goals.

    BMS has ignored the Court's Order, and produced a "tutorial" that unabashedly argues its claim construction contentions, puts forth non-infringement positions, interprets the specification of the patents-in-suit, and compares the accused product to an alleged embodiment of the patents-in-suit -- all in clear contradiction of the Order and the Court's instructions, as well as established law. Simply put, BMS has abused the Court's expectation of what the tutorial should involve by presenting its positions under the pretext of a neutral background on the technology. It is particularly problematic where the technology is not something that the Court ordinarily

The Honorable Mary Pat Thynge
November 7, 2007
Page 2

encounters on a daily basis and, as such, the Court necessarily needs to rely on the parties to present an impartial background of the technology in issue.

BMS' biased presentation, infected with its claim construction contentions and its non-infringement positions, undermines the entire purpose of submitting such tutorials in the first place. Furthermore, it is highly prejudicial to ZymoGenetics which, pursuant to the governing Order, presented the Court with an educational perspective of the technology in issue, and did *not* treat the tutorial as a forum to preempt claim construction and summary judgment briefing. BMS should not be permitted to present its case unchallenged under the guise of a tutorial.

## BMS Argues Its Claim Construction Contentions

Throughout the tutorial, BMS argues its disputed claim construction contentions rather than providing neutral background on the technology in issue. For example, the legal meaning of "dimerization", "biological activity", and "immunoglobulin" will have to be determined by the Court. BMS, however, has used its tutorial to improperly argue its preferred constructions for these terms.

### *Dimerization Contention*

"Dimerization" and "dimerizing" are terms that are found in the claims of the patents-in-suit. BMS contends            REDACTED

                                                                This is a contested area for claim construction. BMS does not simply define what it believes "dimerization" means in the context of the technology in issue, but rather presents its claim construction argument            REDACTED

BMS further contends that            REDACTED

. Regardless of how BMS intends to use this proposed construction of "dimerizing protein," it is inconsistent with the definition of dimerizing protein as taught by the patents-in-suit. *See e.g.* U.S. Patent 5,843,725 col. 9, ll 30-34. The tutorial is not the proper place for BMS to present such arguments regarding the appropriate scope of these terms.

### *Biological Activity Contention*

In the tutorial, BMS advocated its construction of the term "biological activity," despite the fact that this term is defined in the patents-in-suit. *See e.g.* U.S. Patent 5,843,725 col. 9, ll 35-46. On several occasions, BMS improperly asserts its position on the disputed issue of "biological activity" of Orencia.            REDACTED
BMS' attempt to pass off its definition of biological activity to the Court as an unblemished perspective of the technology violates the Court's Order because it is nothing more than advocacy in support of its own position.

### *Immunoglobulin Contention*

Rather than provide a general background on what constitutes an "immunoglobulin" and "non-immunoglobulin," BMS contends that            REDACTED
.                                        In contrast, ZymoGenetics presented a general perspective on the technology as it related to an "immunoglobulin" and "non-

The Honorable Mary Pat Thynge
November 7, 2007
Page 3

immunoglobulin," resisting the temptation to argue its case in the tutorial. Wholly apart from the fact that BMS' proposed interpretation of these terms is inconsistent with the specific disclosure in the patents-in-suit regarding these terms, *See e.g.* U.S. Patent 5,843,725 col. 13, ll 36-56, BMS should not argue its construction of these terms at this time.

### BMS Argues Its Non-infringement Contentions

Throughout its tutorial, BMS proffers positions about Orencia that it believes will place Orencia beyond the scope of the claims of the patents-in-suit. For example, BMS states
REDACTED
As described below, BMS has improperly turned its tutorial into a campaign for its non-infringement positions.

#### *BMS Argues that REDACTED*

BMS states in its tutorial that            REDACTED

BMS further argues that

REDACTED


These are two highly disputed issues involving infringement in this case, and do not constitute a background of the technology. Once again, this is a hotly disputed contention that will be appropriately addressed during claim construction, expert reports, and in summary judgment briefing. Aside from the ample scientific evidence in virtually every form available, from peer review research articles to standard text books involving immunology disputing BMS' contention, BMS has abused the Court's Order that the parties submit a neutral tutorial on the technology.

BMS further argues its contention that
REDACTED
Yet again, BMS attempts to reinforce its non-infringement position regarding the immunoglobulin chains.

#### *BMS Argues that REDACTED*

BMS claims REDACTED.
This is another attempt by BMS to argue its non-infringement contention that
REDACTED. It is unfair to both the Court and to ZymoGenetics that such a slanted and biased presentation be submitted as a neutral tutorial on the technology in issue.

### BMS Impermissibly Interprets the Patents-in-suit

BMS devotes a good deal of time interpreting the specifications and claims of the patents-in-suit. Its presentation of such information, however, is presented by strategically excerpting portions of the specification and claims in order to advocate its positions in this case. *See e.g.*            REDACTED. BMS' tutorial disregards the Court's Order regarding the substance of the tutorial, and instead delivers a preview of its litigation positions.

The Honorable Mary Pat Thynge
November 7, 2007
Page 4

### *BMS Analyzes An Alleged Embodiment of the Patents-in-suit*

BMS goes as far as to inappropriately interpret the specifications of the patents-in-suit in order to put forward its claim construction contentions and non-infringement positions. Using the tutorial as a surrogate for its non-infringement briefing, BMS
REDACTED
The "tutorial" proceeds to indicate that Orencia
REDACTED                                                                    Such a "contrast"
is not required to educate the Court on the technology in issue, but rather is misusing the tutorial as a vehicle to brief the Court on its case. Such an accused product-to-embodiment comparison is inappropriate, both in light of the Court's Order and case law. *See infra.*

### *BMS Contends that the Claims REDACTED*

BMS contends in its tutorial that

REDACTED

Any such contention is vigorously disputed. BMS further states in its tutorial that
REDACTED                                                              . Such comparisons are clearly non-infringement positions, and are not the proper subject mater of what is supposed to be a tutorial.

### BMS Improperly Compares the Accused Product to an Alleged Embodiment of the ZymoGenetics' Patents

Relevant case law is clear in prohibiting an accused product-to-embodiment comparison. *See Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481-82, (Fed. Cir. 1984) (stating that "[t]he law of infringement requires that the asserted claims be compared with the products or processes accused of infringement...Infringement is not determined by comparison between parts of the description in a patent and the accused process or product..."). In fact, the Federal Circuit could not be more unambiguous on this point: "Infringement, either literal or by equivalence, is determined by comparing the accused device with the claims in suit, *not with a preferred or commercial embodiment of the patentee's claimed invention."* *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985) (emphasis added.) BMS has done exactly what the Federal Circuit prohibits.

Thus, beyond violating the Order, BMS improperly compares the accused product, Orencia, to an alleged embodiment of the patents-in-suit.  REDACTED         Such a misuse of the tutorial has a very real potential to prejudice ZymoGenetics should such a tutorial go unchecked.

The Honorable Mary Pat Thynge
November 7, 2007
Page 5

## Conclusion

ZymoGenetics objects to the BMS tutorial on the grounds that it blatantly violates the governing Order in this case, disregards the Court's specific instructions given during the March 30, 2007 hearing, is contrary to established case law, and is highly prejudicial to ZymoGenetics. ZymoGenetics respectfully requests that the Court strike the portions of the BMS tutorial that exceed the scope of the Order which, at a minimum, are slides 27 – 43 of the BMS tutorial.

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner
provner@potteranderson.com

PAR/mes/828668
Public version - 830175
cc: Frederick L. Cottrell, III, Esq. – by hand delivery and E-mail
    Christopher P. Borello, Esq. – by E-mail

# EXHIBIT A

```
                                                        Friday, March 30, 2007
SHEET 1                                                                    1

  1              IN THE UNITED STATES DISTRICT COURT

  2              IN AND FOR THE DISTRICT OF DELAWARE

  3                              - - -

     ZYMOGENETICS, INC., a              :
  4  Washington corporation,            :   CIVIL ACTION
                                        :
  5              Plaintiff,             :
                                        :
  6         v                           :
                                        :
  7  BRISTOL-MYERS SQUIBB CO., a        :
     Delaware corporation, and          :
  8  DOES 1 THROUGH 100,                :
                                        :
  9              Defendants.            :   NO. 06-500 (***)

 10                              - - -

 11                      Wilmington, Delaware
                  Friday, March 30, 2007 at 10:02 a.m.
 12                      TELEPHONE CONFERENCE

 13                              - - -

 14  BEFORE:  HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE

 15                              - - -
     APPEARANCES:
 16

 17          POTTER ANDERSON & CORROON
             BY:  PHILIP A. ROVNER, ESQ.
 18
                    and
 19
             PERKINS COIE, LLP
 20          BY:  PAUL J. ANDRE, ESQ.
                  (Menlo Park, California)
 21
                        Counsel for Plaintiff
 22

 23

 24
                                        Brian P. Gaffigan
 25                                     Registered Merit Reporter

          United States District Court - Honorable Mary Pat Thynge
```

Friday, March 30, 2007

SHEET 4

**10**

be just to submit videotapes on the technology and then Your Honor could review them and the new judge could review them. Your Honor may need them, for example, if there is a discovery issue down the road.

THE COURT: Is there any position that plaintiff wishes to voice on that?

MR. ANDRE: Your Honor, this is Paul Andre. I think, absent a judge being appointed between now and June, I think we would prefer to push off the technology tutorial because I think while a videotape is nice, I think an in-person tutorial tends to work better because there are questions.

THE COURT: Do you have a problem, Paul, providing me with a CD or a video of what you're proposing or what information you think a judge needs to know but not have an in-person tutorial at that time?

MR. ANDRE: I think that would be fine, Your Honor.

THE COURT: Okay. So we'll leave the June 1st date for the purposes of just doing some type of submission to the Court. I think that is the way it's written. Let me just double-check and make sure. Yes. And that would not be an in-person tutorial and it would just be providing me background. Give me a videotape or you can give it to me on a DVD. You don't have to do it on tape. Whatever is easier

**11**

for counsel to do or the parties to do. That's fine. I know Judge Jordan has it as a videotape but a DVD is fine, too, and my standard order has that in it.

And then we'll just talk on July 11th about the status of the case, the status of any negotiations and whether we're going to go forward with the mediation on August 1st and what we're going to do about the submissions.

MR. COTTRELL: That's fine with Bristol-Myers, Your Honor.

MR. ANDRE: That is fine also with plaintiffs, Your Honor. The one caveat, that I just want to make sure we would still have an opportunity, whether at the time of the Markman hearing or prior to that, to provide an in-person tutorial as well in case there are any questions on the videotape.

THE COURT: Oh, yes. I'm not eliminating that at all, Paul. I didn't mean to suggest that if that was implied.

MR. ANDRE: Okay.

THE COURT: There is one other thing and that was the interim status report on August 16th with a teleconference on August 23rd. That's paragraphs 7 and 8 of Judge Jordan's order. In light of the fact that we're going to have a conversation in late July, does anybody feel that it's worthwhile necessarily have an interim status

**12**

discussion on August 23rd?

MR. ANDRE: Your Honor, this is Paul. I don't think there is any reason for that or any need for it.

MR. COTTRELL: No, Your Honor. Fred Cottrell. I don't think so either. You know, I suppose it wouldn't hurt to leave something on and then we can talk about it on July 11th, but if Your Honor wants to remove it from calendar, that's fine, too.

THE COURT: Well, I hadn't plugged it in on my calendar for July, because the date that concerns me, obviously, is -- and we can leave it on but I just hadn't plugged it in on the 23rd on my calendar. I can do it at 4:30 in the afternoon. And if you want to just leave it there and then talk about, gee, maybe there is a more appropriate time to do an interim status report later on, that would make sense. We could do it that way and talk about it.

MR. COTTRELL: That would be fine with us, Your Honor.

MR. ANDRE: Us as well.

THE COURT: All right. Defendants made this call?

MR. COTTRELL: Correct, Your Honor.

THE COURT: Plaintiff will make the next call for mid July.

**13**

MR. ROVNER: Okay, Your Honor. This is Phil Rovner. One question. While we're hopeful we won't have the need to call you on discovery disputes, are we following the same mechanism in the schedule order or do you do it differently?

THE COURT: No, I pretty much follow the same mechanism that Judge Jordan did.

MR. ROVNER: I thought so.

THE COURT: I think Judge Jordan got part of the idea from me because that's what I had done before or at least we talked about it when he came on the bench. What I said to him is avoid at all costs, do not allow them to file any motions on discovery. So that is the way I have been doing it. It certainly is the practice I have continued in the other cases, as you are well aware.

MR. ROVNER: That's what I thought. I just wanted to make sure that is what you wanted to do in this case. That's good for us.

THE COURT: All right. I'm not going to modify or change anything else in the schedule except realistically as we get closer and closer to 2008, we're going to have to obviously talk about hearing on claim construction and those type matters and the pretrial conference and the trial date, although I recognize that they're way into 2008, but I have no further information about what is happening with the

United States District Court - Honorable Mary Pat Thynge