IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZYMOGENETICS, INC., a Washington Corporation, <br><br>           Plaintiff, <br><br> v. <br><br> BRISTOL-MYERS SQUIBB CO., a Delaware Corporation, and DOES 1 through 100, <br><br>           Defendants. | ) ) ) ) ) ) ) C.A. No. 06-500-SLR ) ) ) ) ) ) ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF ZYMOGENETICS, INC.'S MOTION
FOR SUMMARY JUDGMENT OF VALIDITY OF PATENTS-IN-SUIT
WITH RESPECT TO THE CAPON PATENTS AND THE SEED PATENT**

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 100
Redwood Shores, CA 94065
(650) 590-0700

Dated: May 16, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
ZymoGenetics, Inc.

## Table of Contents

**Page**

INTRODUCTION ..................................................................................................................1

SUMMARY OF ARGUMENT .............................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT.........................................................................................................................4

I. The Court Should Grant Summary Judgment That The ZymoGenetics Patents Are Valid Over The Seed Patent and Capon Patents......................................................4

    A. The Unrebutted Evidence Shows That The Date of Invention Was No Later Than January 4th-5th, 1988................................................................5

        1. The Unrebutted Evidence Shows That The Invention of ZymoGenetics Patents Was Conceived No Later Than January 4th-5th, 1988 ..................................................................................5

        2. The Unrebutted Evidence Shows ZymoGenetics Exercised Reasonable Diligence in Reducing the Invention to Practice..........9

        3. The Unrebutted Evidence Shows That ZymoGenetics Reduced the Invention to Practice Prior To September 28, 1988.......................11

    B. The Capon Patents and Seed Patent Are Not Prior Art Under § 102(e) or § 103.............................................................................................................13

II. CONCLUSION........................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

American Standard Inc. v. Pfizer Inc.,
    722 F.Supp.86 (D. Del. 1989) ................................................................. 13

Brown v. Barbacid,
    436 F.3d 1376 (Fed. Cir. 2006) ............................................................ 9-10

Burroughs Wellcome Co. v. Barr Labs., Inc.,
    40 F.3d 1223 (Fed. Cir. 1994) .................................................................. 5-8

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ..................................................................................... 4

Fasold v. Justice,
    409 F.3d 178 (3d Cir. 2005) ........................................................................ 4

Hitzeman v. Rutter,
    243 F.3d 1345 (Fed. Cir. 2001) ................................................................... 5

Hyatt v. Boone,
    146 F.3d 1348 (Fed. Cir. 1998) ................................................................... 7

Invitrogen Corp. v. Clontech Labs., Inc.,
    429 F.3d 1052 (Fed. Cir. 2005) ................................................................... 5

Mahurkar v. C.R. Bard, Inc.,
    79 F.3d 1572 (Fed. Cir. 1996) ................................................................. 5-6

Medichem, S.A. v. Rolabo, S.L.,
    437 F.3d 1157 (Fed. Cir. 2006) .............................................................6, 11

Monsanto Co. v. Mycogen Plant Science, Inc.,
    261 F.3d 1356 (Fed. Cir. 2001) ................................................................... 9

Panduit Corp. v. Dennison Mfg. Co.,
    810 F.2d 1561 (Fed. Cir. 1987) ................................................................. 14

SRAM Corp. v. AD-II Engineering, Inc.,
    465 F.3d 1351 (Fed. Cir. 2006) ................................................................... 4

**STATUTES**

35 U.S.C. § 102(e) ...................................................................................................... 3-4, 13-14

35 U.S.C. § 102(e) and § 103 ............................................................................................ 1, 4

35 U.S.C. § 102 and § 103 .................................................................................................. 14

35 U.S.C. § 103 ........................................................................................................ 3-4, 13-14

35 U.S.C. § 282 ....................................................................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2) ................................................................................................... 8, 13

Fed. R. Civ. P. 56(c) ............................................................................................................. 4

## INTRODUCTION

## NATURE AND STAGE OF PROCEEDINGS

On August 14, 2006, ZymoGenetics, Inc. ("ZymoGenetics") filed suit against Bristol-Myers Squibb Co. ("Bristol") asserting infringement of U.S. Patent No. 5,843,725 ("the '725 Patent") and U.S. Patent No. 6,018,026 ("the '026 Patent") (collectively the "ZymoGenetics Patents" or "Patents-in-Suit"). (D.I. 1, Complaint). Bristol counterclaimed noninfringement and invalidity under 35 U.SC. § 102, 103, and 112. (D.I. 7, Answer).

Discovery in the case has been completed with the exception of Dr. Ravetch, Bristol's noninfringement and invalidity expert, due to Dr. Ravetch's unexpected illness. The deposition of Dr. Ravetch is currently set to be taken May 20, 2008. The parties' motions for summary judgment are to be served on May 16, 2008, with responses to be served on June 2, 2008. (D.I. 148, Revised Scheduling Order, March 14, 2008).

## SUMMARY OF ARGUMENT

ZymoGenetics respectfully requests the Court to grant summary judgment of the validity of the '725 and '026 Patents over the Seed patent and Capon patents. The basis for this motion, set forth in greater detail below, is summarized as follows:

1. The date of the invention of the '725 and '026 Patents is no later than January 4th-5th, 1988 as shown by deposition testimony of the inventors and additional corroborating evidence that was unrebutted by Bristol.

2. Bristol cannot meet its burden of proof to show that the ZymoGenetics Patents are invalid under 35 U.S.C. § 102(e) and § 103 with respect to the following patents that do not qualify as prior art: U.S. Patent No. 6,004,781 ("the Seed patent") and U.S. Patent

No. 5,336,603, U.S. Patent No. 5,565,335, U.S. Patent No. 6,117,655, and U.S. Patent No. 6,710,169 (collectively, "the Capon patents").

## STATEMENT OF FACTS

The invention of the '725 and '026 Patents is attributed to the intellect, hard work, and spark of ingenuity of Dr. Sledziewski, Ms. Lillian Anne Bell, and Dr. Kindsvogel, the named inventors of the ZymoGenetics Patents. Declaration of Hannah Lee in Support of ZymoGenetics' Motion for Summary Judgment of Validity of Patents-in-Suit with Respect to the Capon Patents and Seed Patent, Ex. 1 (Deposition of Andrzej Sledziewski ("Sledziewski Depo.") at 25:12-26:12). Deposition testimony and laboratory notebook pages of Dr. Sledziewski show that the invention was definite in the minds of the inventors by no later than January 4th-5th, 1988. Dr. Sledziewski states in his lab notebook entry of January 4th-5th, 1988: "I have some thoughts about the ligand binding (PDGF) to sPDGF-R made either in yeast or mammalian cells..." and he also details that he must create a "secreted PDGF-R dimer" and arrive at a "solution" in order to increase the "affinity" of PDGF-R. See id., Ex. 2 (Sledziewski Notebook at ZG 033206). This lab notebook entry shows "the conception of producing a secreted, biologically active non-immunoglobulin polypeptide joined to a dimerization partner," the invention of the ZymoGenetics Patents. Declaration of Paul Edward Purdue, Ph.D. in Support of ZymoGenetics, Inc.'s Motion for Summary Judgment of Validity of Patents-in-Suit with Respect to the Capon and Seed Patents ("Purdue Decl.") at ¶4.

Similarly, deposition testimony of the inventors as well as laboratory notebook pages show that the inventors continued to work diligently to obtain the invention of the ZymoGenetics Patents from January 1988 to early September 1988. The inventors ordered materials to be used in creating the fusion protein, and also Dr. Sledziewski wrote in his laboratory notebook of

2

experiments to create the fusion protein of the invention such as "[w]e have problems with pBTL11...it secretes PDGF-receptor but we can find it only on NT layered on Petri plates. When we grow liquid culture we can not find it," and "[s]tart[ing] constructions for dimers in PDGF-R" Lee Decl., Ex. 2 atLLL ZG 033217, 033220, 058359.

The inventors worked diligently from the date of the conception to obtain the invention. Successful expression of the functional protein occurred between September 1, 1988 and September 19, 1988 as detailed in the laboratory notebook pages of Lillian Anne Bell, one of the named inventors of the ZymoGenetics' Patents and the deposition testimony of inventors. *See, e.g.,* id., Ex. 4 (Bell Notebook at ZG 040510-12; 40518-25; 40527); see also Purdue Decl., Ex. 1 (Rebuttal Expert Report of Paul Edward Purdue ("Purude Report") at ¶¶28-30). Ms. Bell's entries showed successful expression of a soluble PDGF-R linked to an immunoglobulin hinge region, and that the protein was functional. Id. Dr. Purdue, as one of ordinary skill in the art, opines that Ms. Bell's notebook entries during this time showed that the expressed protein was functional, and expressed as a dimer. Purdue Decl. at ¶¶9-12.

Bristol alleges that the '725 and '026 Patents are invalid for anticipation and obviousness. [D.I. 7, Answer]. Specifically, under 35 U.S.C. § 102(e), Bristol has alleged that U.S. Patent No. 6,004,781 (the "Seed patent") and U.S. Patent Nos. 5,336,603, 5,565,335, 6,117,655, and 6,710,169 (collectively, the "Capon patents") anticipate the Patents-in-Suit. *See* Lee Decl., Ex. 12 (Seed patent); Exs. 13-16 (Capon patents). Also, under 35 U.S.C. § 103, Bristol has alleged that the Capon patents render the Patents-in-Suit obvious. The alleged priority dates of the Seed patent and Capon patents occur after the date of the conception of the invention. *See* Lee Decl., Ex. 5, (Expert Report of Jeffrey V. Ravetch, Ph.D. Regarding Invalidity of U.S Patent Nos. 5,843,725 and 6,018,026 ("Ravetch Report") at ¶¶74, 115, 118, 121, 164). The priority date of

3

the Seed patent is January 22, 1988 and the priority date of the Capon patents is September 28, 1988. Id.

## ARGUMENT

**I.   The Court Should Grant Summary Judgment That The ZymoGenetics Patents Are Valid Over The Seed Patent and Capon Patents**

ZymoGenetics respectfully requests the Court grant summary judgment that the ZymoGenetics Patents are valid over the Seed patent and Capon patents. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, summary judgment is appropriate if there was no evidence that a reasonable jury could find in favor of the non-moving party. Fasold v. Justice, 409 F.3d 178, 183 (3d Cir. 2005).

"Under the patent statutes, a patent enjoys a presumption of validity, see 35 U.S.C. § 282, which can be overcome only through facts supported by clear and convincing evidence." SRAM Corp. v. AD-II Engineering, Inc., 465 F.3d 1351, 1357 (Fed. Cir. 2006) (citations omitted). Bristol cannot prove, by clear and convincing evidence, that the ZymoGenetics Patents are invalid by anticipation under § 102(e) and § 103 by the Seed patent and Capon patents because they do not qualify as prior art. Thus, there is no evidence that a reasonable jury could find anticipation under § 102(e) or obviousness under § 103, and the Court should summary judgment on the validity of ZymoGenetics' Patents under § 102(e) and § 103 with respect to the Seed patent and Capon patents.

### A. The Unrebutted Evidence Shows That The Date of Invention Was No Later Than January 4th-5th, 1988

"[T]he person 'who first conceives, and, in a mental sense, first invents…may date his patentable invention back to the time of its conception, if he connects the conception with its reduction to practice by reasonable diligence on his part, so that they are substantially one continuous act.'" Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1577 (Fed. Cir. 1996) (citation omitted). The evidence shows that a reasonable jury would find the inventors of the ZymoGenetics Patents conceived of the invention no later than January 4th-5th, 1988, and proceeded with reasonable diligence to reducing the invention to practice prior to September 28, 1988. Based on the evidence set forth below, the Court should grant summary judgment that the date of the invention was no later than January 4th-5th, 1988.

### 1. The Unrebutted Evidence Shows That The Invention of ZymoGenetics Patents Was Conceived No Later Than January 4th-5th, 1988

A district court may grant summary judgment on the date of conception if "it finds no disputed issue of material fact underlying the conception analysis." Invitrogen Corp. v. Clontech Labs., Inc., 429 F.3d 1052, 1063 (Fed. Cir. 2005) (citations omitted). The test for conception is "whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention." Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994). The idea must be "sufficiently precise that a skilled artisan could carry out the invention without undue experimentation." Id. at 1230. The inventor, however, need not understand that he produced a legally patentable invention. Hitzeman v. Rutter, 243 F.3d 1345, 1358-9 (Fed. Cir. 2001). The inventor also need not know or expect that his invention will actually work for its intended purpose for there to be conception. Burroughs, 40 F.3d at 1228.

If conception is to be shown solely through the oral testimony of the inventor, corroborating evidence is required. Mahurkar, 79 F.3d at 1577. Conception can be shown through the use of physical exhibits "aided by the testimony as to what the exhibit would mean to one skilled in the art." Id. at 1577-78. "Sufficiency of corroboration is determined by using a 'rule of reason' analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony." Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1170 (Fed. Cir. 2006) (citations omitted).

In this case, there was ample evidence showing that the invention of the ZymoGenetics Patents was conceived no later than January 4th-5th, 1988. The evidence of conception is in the form of lab notebook pages of the lead inventor of the invention of the Patents-in-Suit, deposition testimony of the inventors of the Patents-in-Suit and the expert opinion of Dr. Paul Edward Purdue, one of ordinary skill in the art.

The deposition testimony of Dr. Andrzej Sledziewski, named lead inventor of the '725 and '026 Patents, supported the date of conception as no later than January 4th-5th, 1988. Dr. Sledziewski testified during his deposition that conception of the invention occurred "late in 1987, but the written record [existed] from early 1988." Lee Decl., Ex. 1 (Sledziewski Depo. at 25:20-21; 74:15-18). Specifically, as corroborating evidence, Dr. Sledziewski testified that a page in his laboratory notebook dated January 4th-5th, 1988 showed conception of the invention of the '725 and '026 Patents because it detailed how to dimerize a non-immunoglobulin polypeptide, such as PDGF-R. See id., Ex. 2 (Sledziewski Notebook at ZG 033206 (signed and witnessed)); see also Ex. 1 (Sledziewski Depo. at 178:9-23; 186:2-17; 187:4-18). It also detailed the aspect of the invention that a dimerizing protein in the claims of the Patents-in-Suit, such as antibody or yeast invertase, could be joined with PDGF-R. Id. Ex. 2 at ZG 033206.

6

Dr. Purdue, as one of ordinary skill in the art, opines that the lab notebook page of Dr. Sledziewski clearly discloses the conception of "producing a secreted, biologically active non-immunoglobulin polypeptide joined to a dimerization partner." Purdue Decl. at ¶¶2, 4; Lee Decl., Ex. 3 (Deposition of Paul Edward Purdue ("Purdue Depo.") at 178:25-179:4) ("dimerization partner" is "dimerizing protein" of the ZymoGenetics Patents).

Dr. Kindsvogel, another inventor of the Patents-in-Suit, testified in his deposition on August 8, 2007, that he was doing work on non-immunoglobulin polypeptides like PDGF-R as disclosed in the invention of the Patents-in-Suit starting in 1987. Lee Decl., Ex. 7 (Kindsvogel Depo. at 15:19).

Though Dr. Sledziewski did not know "how exactly it [would] take place," he had conception as of this date. *See* Burroughs, 40 F.3d at 1228 (inventor need not know or expect that his invention will actually work for its intended purpose for there to be conception). Dr. Sledziewski's testimony at deposition was that the invention of the '725 and '026 Patents could be accomplished without "undue experimentation" since "[t]here was enough information" about PDGF and receptors "that dimerization was a valid concept." Lee Decl., Ex. 1 (Sledziewski Depo. at 183:5-9).

Bristol has failed to rebut the evidence that the date of conception of ZymoGenetics Patents was no later than January 4th-5th, 1988. Bristol alleges that the date of the invention is January 18, 1989, the constructive reduction to practice date of the Patents-in-Suit. *See* Hyatt v. Boone, 146 F.3d 1348, 1352 (Fed. Cir. 1998) ("filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application") (citation omitted). However, the only evidence that Bristol provides to show the priority date of the invention was after January 4th-5th, 1988 is legally insufficient. Dr. Ravetch, Bristol's expert,

7

makes conclusory statements in his report that January 4th-5th, 1988 does not support conception of the invention because the laboratory notebook page of Dr. Sledziewski relied on by ZymoGenetics "does not show the formation in the mind of the named inventors of a definite permanent idea of the complete and operative invention as it is applied in practice." Lee Decl., Ex. 5 (Ravetch Report at ¶24).

Dr. Ravetch's opinions are legally insufficient to rebut that conception occurred no later than January 4th-5th, 1988 because he erroneously assumes that the inventors must have the complete "operative" invention in order for there to be conception. The Federal Circuit has held, the inventor need not know or expect that his invention will actually work for its intended purpose for there to be conception. Burroughs, 40 F.3d at 1228.

Dr. Ravetch's opinions are also legally inadequate to rebut ZymoGenetics' conception date because he provides no explanation or "basis" for his opinions. He does not explain why there was no "formation in the mind of the named inventors of a definite and permanent idea" of the invention. See Fed. R. Civ. P. 26(a)(2)(expert must set forth in his report "a *complete* statement of all opinions the witness will express and *the basis and reasons for them*.") (emphasis added).

Similarly, Dr. Ravetch states in a conclusory fashion that he believes the invention could only be reduced to practice with "extensive research and experimentation." Lee Decl., Ex. 5 (Ravetch report at ¶24). Again, Dr. Ravetch does not give any explanation for his opinion that "extensive research and experimentation" was needed or why conception must have occurred with reduction to practice. Dr. Ravetch has not established any basis or reasons for his conclusory statements, and these conclusory statements are simply insufficient to show an expert

8

or a person of ordinary skill in the art would not find conception to have occurred no later than January 4th-5th, 1988.

Bristol's failure to rebut the evidence that conception of the invention occurred no later than January 4th-5th, 1988 shows that a reasonable jury would not find in Bristol's favor with respect to the date of conception, and the Court should grant summary judgment that the conception date was no later than January 4th-5th, 1988.

### 2. The Unrebutted Evidence Shows ZymoGenetics Exercised Reasonable Diligence in Reducing the Invention to Practice

The question of reasonable diligence is a case-specific inquiry. Monsanto Co. v. Mycogen Plant Science, Inc., 261 F.3d 1356, 1368 (Fed. Cir. 2001). "The basic inquiry [of exercising reasonable diligence] is whether, on all the evidence, there was reasonably continuing activity to reduce the invention to practice." Brown v. Barbacid, 436 F.3d 1376, 1380 (Fed. Cir. 2006). "There is no rule requiring a specific kind of activity in determining whether the applicant was reasonably diligent in proceeding toward an actual or constructive reduction to practice," and "a rule of reason" is to be applied in determining whether corroboration is required. Id.

The inventors of the '725 and '026 Patents exercised reasonable diligence in reducing the invention of the Patents-in-Suit to practice. After the date of invention, there was "continuing activity to reduce the invention to practice." Brown, 436 F.3d at 1380. The exercise of reasonable diligence by the inventors is evidenced by the deposition testimony and laboratory notebook pages of the named inventors of the Patents-in-Suit.

Dr. Sledziewski testified in his deposition that around March 22, 1988, he had "steps" written in his laboratory notebook of how to create the fusion protein of the invention in the Patents-in-Suit. Id. at 109:14-17. His laboratory notebook pages in late March of 1988 showed

9

Dr. Sledziewski was diligently working towards reducing the invention to practice as he stated: "hav[ing] problems with pBTL11…it secretes PDGF-receptor but we can find it only on NT layered on Petri plates. When we grow in liquid culture we can not find it." *See* Andrzej Sledziewski Notebook, ZG 033217. According to the '725 and '026 Patents, pBTL11 is a construct lacking an immunoglobulin or an invertase portion (the necessary dimerizing protein partner in the claimed invention of the ZymoGenetics Patents). *See* Lee Decl., Ex. 10 ('725 Patent at Fig. 2); Ex. 11 ('026 Patent, at Fig. 2); *see also* Purdue Decl. at ¶7).

Dr. Sledziewski's laboratory notebook pages between April 18 and 22, 1998 showed he was working on "[s]tart[ing] constructions for dimers in PDGF-R." *See* Lee Decl., Ex. 2 (Sledziewski Notebook at ZG033220, ZG058359). Further evidence of diligence is shown by the fact that the inventors ordered primers in order to create the fusion protein of the invention on April 22, 1988. *See* Lee Decl., Ex. 8 (primer order sheet at ZG047284-85); *see also* Brown, 436 F.3d at 1380 ("obtain[ing] necessary supplies and laboratory glassware and by testing of related materials" can be evidence of diligence). The laboratory notebook of Anne Bell, a named inventor of the Patents-in-Suit, shows that the primers were used to create the plasmids that would express the fusion protein of the invention on June 30, 1988. *See* Lee Decl., Ex. 4 (Bell Notebook at ZG040464). These examples were also noted by Dr. Purdue as evidence that the inventors continued to work to obtain the invention after the date of conception. *See* Purdue Decl. at ¶¶7-8.

The date of conception as no later than January 4th-5th, 1988 is also supported by the deposition testimony of Dr. Wayne Kindsvogel, another named inventor of the ZymoGenetics Patents. Lee Decl., Ex. 7 (Kindsvogel Depo. at 56:19-62:1) (testifying to work on patented fusion protein between 1987 to 1992). Dr. Sledziewski also testified in his deposition, on August

10

21, 2007, that "[the inventors] worked on those aspects of the project starting in 1988 and continued until [the inventors] solved the problem." Id. Ex. 1 (Sledziewski Depo. at 77:6-8).

Bristol has failed to set forth any evidence that ZymoGenetics did not exercise reasonable diligence from the date of conception to actual reduction to practice. There is absolutely no evidence that Bristol has provided in the litigation that has rebutted ZymoGenetics' showing that it exercised reasonable diligence to reduce the invention to practice from the date of conception, which was no later than January 4th-5th, 1988, to the reduction to practice date before September 28, 1988. Thus, a reasonable jury would find, based on the unrebutted evidence, that the inventors exercised reasonable diligence in reducing the invention to practice.

### 3. The Unrebutted Evidence Shows That ZymoGenetics Reduced the Invention to Practice Prior To September 28, 1988

In order to establish an actual reduction to practice, three things must be established: "(1) construction of an embodiment or performance of a process that met all the limitations of the [claimed invention]; (2) determination that the invention would work for its intended purpose; and (3) the existence of sufficient evidence to corroborate inventor testimony regarding these events." Medichem, 437 F.3d at 1169 (Fed. Cir. 2006) (citation omitted). ZymoGenetics' evidence of reduction to practice is in the deposition testimony Dr. Sledziewski and laboratory notebook pages of Ms. Bell. The evidence shows that the fusion protein of the invention of the Patents-in-Suit was created, and the created fusion protein was functional and worked for its intended purpose, prior to September 28, 1988.

Dr. Sledziewski testified during his deposition that the reduction to practice of the invention occurred in 1988 or 1989 as evidenced by lab notebook pages of the inventors, reports, and meeting minutes. Lee Decl., Ex. 1 (Sledziewski Depo. at 77:3-4; 78:5-15; 81:22-82:22). He specifically stated that he created a "fusion protein where a non-immunoglobulin polypeptide

requiring dimerization for biological activity was joined to an immunoglobulin polypeptide where the immunoglobulin polypeptide was acting as a dimerizing protein," during that time frame. Id. at 82:23-83:5.

Dr. Purdue, ZymoGenetics' expert, also opines that the evidence shows reduction to practice occurred prior to September 28, 1988. Purdue Decl. at ¶¶9-12. Dr. Purdue, as one of ordinary skill in the art, testified that he reviewed the laboratory notebooks of Dr. Sledziewski and Lillian Anne Bell, both named inventors of the Patents-in-Suit, and came to the conclusion that the invention was reduced to practice earlier than September 28, 1988. Id. He looked at laboratory pages from Ms. Bell's notebook dated September 1, 1988 which showed successful expression of PDGF-R (a non-immunoglobulin) joined to invertase or immunoglobulin (both dimerizing proteins in the Patents-in-Suit), and other laboratory notebook pages of Ms. Bell between September 12th-September 19th, 1988 which showed secretion of the functional protein of the invention of the Patents-in-Suit. Id.

Bristol, in similar fashion to its rebuttal evidence of ZymoGenetics' date of conception, used Dr. Ravetch's conclusory statements to attempt to rebut a reduction to practice of the invention prior to September 28, 1988. However, as stated above, Dr. Ravetch's statements are legally insufficient to support a finding that reduction to practice did not occur prior to September 28, 1988. Dr. Ravetch's opinion was conclusory as he stated, "[i]t is my opinion that this notebook page does not show that the products or methods of the asserted claims existed or worked for their intended purposes." Lee Decl., Ex. 5 (Ravetch Report at ¶26).

Dr. Ravetch's opinions are without any "basis or reason" and extremely conclusory in contradiction of the standard of disclosure set forth in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(2). He also failed to rebut Dr. Purdue's opinion in his expert rebuttal report that

reduction to practice was prior to September 28, 1988. Dr. Ravetch, as stated above, never responded to Dr. Purdue's opinions, and never served a supplemental expert report to rebut these opinions. Based on Bristol's lack of evidence that rebuts the date of reduction to practice as occurring prior to September 28, 1988 and ZymoGenetics' substantial evidence showing otherwise, the Court should hold that a reasonable jury would find the reduction to practice occurred prior to September 28, 1988.

### B. The Capon Patents and Seed Patent Are Not Prior Art Under § 102(e) or § 103

The earliest possible priority date of the Seed patent, as alleged by Bristol, is January 22, 1988. *See* Lee Decl., Ex. 5 (Ravetch Report at ¶164); Ex. 12 (Seed patent). Based on the reasons set forth above, the date of the invention is no later than January 4th-5th, 1988, and because the priority date of the Seed patent as Bristol alleges is after the date of the invention, the Seed patent does not qualify as prior art under § 102(e). *See* id.; *see also* Lee Decl., Ex. 9 (timeline showing relevant dates of priority); American Standard Inc. v. Pfizer Inc., 722 F.Supp.86, 122 (D. Del. 1989) (holding that patent is not prior art under § 102(e) if filing date of patent was *after* the effective date of the invention). The plain language of § 102(e) states that the reference must come "before the invention" in order to be prior art, and the earliest priority date of the Seed patent does not meet this requirement. Thus, the Court should grant summary judgment that ZymoGenetics Patents are valid over the Seed patent because Bristol could not prove to a reasonable jury, by clear and convincing evidence, that the Seed patent anticipates the Patents-in-Suit under § 102(e).

Similarly, the earliest priority date of the Capon patents, as Bristol alleges, falls on September 28, 1988 which is after the date of the invention. Lee Decl., Ex. 5 (Ravetch Report at ¶¶74, 115, 118, and 121); Ex. 9 (timeline showing relevant dates of priority); Ex. 12 (Seed

13

patent); Exs. 13-16 (Capon patents). Thus, the Capon patents do not qualify as prior art under § 102(e). Also, the Capon patents do not qualify as prior art under § 103. *See* Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1568 (Fed. Cir. 1987) (determining prior art under § 102 for purposes of § 103 analysis). Thus, the Court should grant summary judgment that ZymoGenetics Patents are valid over the Capon patents because Bristol could not prove to a reasonable jury, by clear and convincing evidence, that the Capon patents anticipate the Patents-in-Suit under § 102(e) or make obvious the invention under § 103.

## II. CONCLUSION

For the reasons discussed above, the Court should grant summary judgment that the ZymoGenetics Patents are valid over the Seed patent and Capon patents because these references do not qualify as prior art under 35 U.S.C. § 102 and § 103.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. André
Lisa Kobialka
King & Spalding LLP
1000 Bridge Parkway
Suite 100
Redwood City, CA 94065
(650) 590-0700

By: /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Dated: May 16, 2008
865133

*Attorneys for Plaintiff*
*ZymoGenetics, Inc.*

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on May 16, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richard Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE 19899
cottrell@rlf.com
farnan@rlf.com

I hereby certify that on May 16, 2008 I have sent by E-mail the foregoing document to the following non-registered participant:

Christopher P. Borello, Esq.
Colleen Tracy, Esq.
Fitzpatrick Cella Harper & Scinto
30 Rockefeller Plaza
New York, NY 10112
cborello@fchs.com
ctracy@fchs.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

748348