## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ZYMOGENETICS, INC., a Washington
Corporation,

               Plaintiff,

     v.

BRISTOL-MYERS SQUIBB CO.,
a Delaware Corporation, and DOES 1
through 100,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 06-500-SLR

**PUBLIC VERSION**

## PLAINTIFF ZYMOGENETICS, INC.'S MOTION TO
## EXCLUDE TESTIMONY OF BRISTOL-MYERS SQUIBB CO.'S EXPERTS

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 100
Redwood Shores, CA 94065
(650) 590-0700

Dated:  May 16, 2008
Public Version:  May 22, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
ZymoGenetics, Inc.

# TABLE OF CONTENTS

PAGE

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II.   SUMMARY OF THE ARGUMENT ....................................................1

III.  STATEMENT OF FACTS ...........................................................2

IV.   ARGUMENT.......................................................................3

    A.    LEGAL STANDARD FOR ADMITTING EXPERT
          TESTIMONY ................................................................3

    B.    DR. RAVETCH'S, DR. CAPON'S, AND DR. KURIYAN'S
          TESTIMONY SHOULD BE EXCLUDED BECAUSE THEY
          ARE BASED ON LEGAL ARGUMENT, NOT "FACTS" OR
          "DATA" AS REQUIRED BY RULE 702, AND THUS WILL
          NOT ASSIST THE TRIER OF FACT ........................................4

        1.    Dr. Ravetch's Opinions.........................................................4

        2.    Dr. Capon's Opinions .........................................................10

        3.    Dr. Kuriyan's Opinions........................................................13

    C.    DR. RAVETCH'S, DR. CAPON'S, AND DR. KURIYAN'S
          TESTIMONY SHOULD BE EXCLUDED BECAUSE THEY
          ARE NOT INDEPENDENT.................................................17

    D.    DR. RAVETCH'S CONCEPTION TESTIMONY SHOULD
          BE EXCLUDED.........................................................22

    E.    DR. CAPON'S OBVIOUSNESS TESTIMONY SHOULD BE
          EXCLUDED .............................................................23

V.    CONCLUSION...................................................................26

## TABLE OF AUTHORITIES

**CASES**

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993)..................................................................................................3

*Graham v. John Deere Co. of Kansas City,*
    383 U.S. 1 (1966)....................................................................................................24

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)................................................................................8

**OTHER AUTHORITIES**

Fed. R. of Evid. 702 ................................................................................... Passim

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This action involves claims of patent infringement and invalidity. The present motion to exclude testimony is brought by Plaintiff ZymoGenetics, Inc. ("ZymoGenetics") pursuant to the Court's Stipulated Amended Scheduling Order (D.I. 137-2) and Revised Scheduling Order (D.I. 148). Expert discovery closed on May 12, 2008 and the litigation is currently in the stage of simultaneous claim construction and summary judgment briefing. The Markman hearing and oral argument for summary judgment motions is scheduled for June 27, 2008.

## II.    SUMMARY OF THE ARGUMENT

ZymoGenetics hereby moves to exclude the testimony of Defendant Bristol-Myers Squibb Co.'s ("Bristol") experts Jeffrey Ravetch ("Dr. Ravetch"), Daniel Capon ("Dr. Capon"), and John Kuriyan ("Dr. Kuriyan"). The opinions of Bristol's experts all suffer from a common flaw: none of them are based on the expert's independent scientific knowledge and judgment. The experts admit explicitly in their reports and in depositions that their opinions are based on alleged legal arguments allegedly made by ZymoGenetics, rather than an application of scientific principles and methods to the facts of the case.

In addition, the opinions of Bristol's experts should be excluded because they are not truly independent and objective. The reports of Bristol's experts are verbatim to each another in many sections, and yet the experts testified that they consulted no one other than Bristol's attorneys in drafting their report. It is evident that Dr. Ravetch's, Dr. Capon's, and Dr. Kuriyan's reports were penned by Bristol's counsel, and that Bristol's allegedly independent experts are merely spokesmen advocating for Bristol's

positions. Such non-objective advocacy should not be introduced to the trier of fact under the guise of an independent expert opinion.

Finally, Dr. Capon and Dr. Kuriyan applied the wrong legal standards of obviousness and infringement under the doctrine of equivalents, and further evinced their confusion over these concepts in deposition. Their opinions are merely stated in conclusory terms, lumped together with findings regarding anticipation and literal infringement. This leaves the trier of fact with nothing but their *ipse dixit* on the ultimate conclusions on infringement and validity. The trier of fact is not assisted in any way with understanding the scientific facts and data underlying these ultimate legal conclusions.

For these reasons, ZymoGenetics respectfully requests the Court to exclude Dr. Ravetch, Dr. Capon, and Dr. Kuriyan from testifying at trial.

### III.    STATEMENT OF FACTS

ZymoGenetics brought this patent infringement action against Bristol because its CTLA4-Ig fusion protein (also known as its Orencia® product) infringes ZymoGenetics' U.S. Patent Nos. 5,843,725 ("the '725 patent") and 6,018,026 ("the '026 patent") (collectively, "the ZymoGenetics Patents"). On December 3, 2007, Dr. Ravetch and Dr. Capon submitted expert reports on behalf of Bristol regarding the alleged invalidity of the ZymoGenetics Patents. Dr. Ravetch opined that the ███████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████. Dr. Capon opined that ██

███████████████████████████████████████████████████

███████████████████████████████████████████████████[1]

On January 25, 2008, Dr. Ravetch and Dr. Kuriyan submitted rebuttal reports regarding the alleged noninfringement of the ZymoGenetics Patents. Dr. Capon was deposed on May 2, 2008, and Dr. Kuriyan was deposed on May 9, 2008. Dr. Ravetch was scheduled for deposition on April 24, 2008, but his deposition was cancelled for medical reasons. Dr. Ravetch is currently scheduled to be deposed on May 20, 2008.

## IV.    ARGUMENT

### A.    LEGAL STANDARD FOR ADMITTING EXPERT TESTIMONY

Federal Rule of Evidence 702 entrusts the Court to admit expert testimony that is "not only relevant, but reliable." *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). Expert testimony cannot be mere "subjective belief or unsupported speculation." Id. at 590. Federal Rule of Evidence 702 requires that the testimony must be "based upon sufficient facts or data" and the "the product of reliable principles and methods." FED. R. EVID. 702. In reaching an expert opinion, the expert must have "applied the principles and methods reliably to the facts of the case." Id. Ultimately, the proffered testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*

---

[1]  As discussed in the argument section of the brief, Dr. Capon's expert report is unclear as to whether his obviousness opinion is based on a single alleged prior art patent or combination of them. Dr. Capon refused to clarify his position during his deposition. *See infra* at 4-13.

**B.     DR. RAVETCH'S, DR. CAPON'S, AND DR. KURIYAN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE THEY ARE BASED ON LEGAL ARGUMENT, NOT "FACTS" OR "DATA" AS REQUIRED BY RULE 702, AND THUS WILL NOT ASSIST THE TRIER OF FACT**

Bristol's experts should be excluded from testifying at trial because their opinions are not based upon scientific principles or methodology. Dr. Ravetch, Dr. Capon, and Dr. Kuriyan did not engage in an independent analysis of the facts to reach their ultimate opinions. Instead, their "scientific" opinions are based on positions allegedly taken by ZymoGenetics in the context of legal proceedings. In this way, their opinions fail to satisfy the requirements for admissibility under Rule 702.

**1.     Dr. Ravetch's Opinions**

Dr. Ravetch's opinion should be excluded because it lacks any basis in "facts" and "data" as required by Rule 702. Instead, his "scientific" opinion is based on legal arguments allegedly made by ZymoGenetics. Further, Dr. Ravetch uses different positions allegedly taken by ZymoGenetics depending on whether he is finding noninfringement or invalidity.

For example, the asserted claims of the ZymoGenetics Patents ' recite a "non-immunoglobulin polypeptide." In order to reach a conclusion of noninfringement, Dr. Ravetch reasons that ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████,"[2] Declaration of Amy Sun in

---

[2]  ZymoGenetics disagrees that it ever defined the term "non-immunoglobulin polypeptide." Dr. Ravetch refers to statements made by ZymoGenetics during prosecution of the foreign application to which the ZymoGenetics Patents claim priority. These statements relate to a specific molecule, the TCR. See Sun Decl., Ex. 3. The TCR is part of what is known as the immunoglobulin superfamily. The European Patent Office rejected ZymoGenetics' argument regarding TCR. See id., Ex. 4. However, from ZymoGenetics' statement concerning the TCR, Dr. Ravetch broadly extrapolates a

Support of ZymoGenetics' Motion to Exclude Testimony of Bristol-Myers Squibb's Experts ("Sun Decl."), Ex. 1, ¶39. Dr. Ravetch applies ZymoGenetics' alleged definition even though he acknowledges in his report that one of ordinary skill in the art would define the term differently, and even provides such definition in his report. *See* id. ¶35

█████████████████████████████████████████████████████

██████████████████████████████████████████████. Moreover,

Dr. Ravetch does not state what his own scientific understanding of CTLA4 or "non-immunoglobulin polypeptide" is. His alleged "scientific, technical, or other specialized knowledge" is the only reason he has any business expressing his opinions at all in this case, yet such alleged specialized knowledge is totally absent from his opinion. FED. R. EVID. 702. Rule 702 is clear that it is an expert's "scientific, technical, or other specialized knowledge [that] will assist the trier of fact," not his treatment of legal arguments.

Worse yet, the alleged arguments on which Dr. Ravetch bases his opinions vary depending on his pre-formed conclusions of either noninfringement or invalidity. In the above example, where Dr. Ravetch sought to reach a conclusion of noninfringement, he utilized ZymoGenetics' alleged definition of the term "non-immunoglobulin polypeptide," ██████████████████████████████████. For purposes of finding invalidity, however, Dr. Ravetch does the opposite, including all proteins in the immunoglobulin superfamily within the meaning of the term "non-immunoglobulin polypeptide." Sun Decl., Ex. 2, ¶84. In this way, he is able to find █████████████

definition of "non-immunoglobulin polypeptide" █████████████████████████
████████████████████. *See* id., Ex. 1, ¶¶ 38-42.

██████████████████████████████████████████

██████████████████████████████. Id. ¶ 85.

Taking contrary positions ████████████████████████████████

████████████████████████████████ based on what he

believes is a legal argument made by ZymoGenetics demonstrates Dr. Ravetch's utter

failure to use sound scientific methodology for formulating his opinions.

Again, this results-oriented reasoning is based not on the science, but rather on an

alleged argument made by ZymoGenetics. While ZymoGenetics contends that the

CTLA4 in Bristol's CTLA4-Ig fusion protein is a "non-immunoglobulin polypeptide," it

has never taken the position that every molecule in the immunoglobulin superfamily of

which CTLA4 is a part constitutes a non-immunoglobulin polypeptide. Dr. Ravetch's

conclusion of invalidity is thus not only based upon alleged legal argument, but also an

overbroad extrapolation from such an alleged argument.

Dr. Ravetch's report is littered with other examples where he relies on arguments

allegedly made by ZymoGenetics. *See* Sun Decl., Ex. 1, ¶42 ████████████████

█████████████████████████████████████████;

id. ¶57 █████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

████████████████████████████████

████████; Sun Decl., Ex. 2, ¶91 ██████████████████████

███████████████████████████████████

███████████████; id. ¶159 █████████████████████



Several things are worth noting from the above examples. First, none of the conclusions Dr. Ravetch reaches based on ZymoGenetics' alleged positions requires any basis in ZymoGenetics' positions in the first instance. In other words, Dr. Ravetch's analysis does not require him to accept ZymoGenetics' alleged arguments as true in the same way that, for example, a defendants' rebuttal damages expert would approach his report, *i.e.*, based on a finding of infringement. Whether CD4 forms a dimer, whether a polypeptide requires dimerization for biological activity, the definition of an

immunoglobulin, etc., are all matters of science that should not be altered based on legal arguments made by an interested party in the context of legal proceedings.

Secondly, along the same lines, what one of ordinary skill in the art believes does not depend on legal argument. Dr. Ravetch was apparently aware that he ███████

████████████████████████████████████████████████████ and

███████████████████████████████████████████████████████

Sun Decl., Ex. 1, ¶17; Ex. 2, ¶¶16, 18. Therefore, he made statements such as those quoted above which can superficially seem to apply the correct standard. *See also, e.g.,*

Sun Decl., Ex. 2 ¶175 ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. However, again, the understanding of a person of ordinary skill in the art depends on collective and objective scientific knowledge and the state of the art at the time of the invention, not legal positions made during the course of litigation. Moreover, the understanding of a person of ordinary skill in the art at the time of the invention, 1988, could not have been informed by present day legal arguments allegedly made by ZymoGenetics in the current litigation. *See* <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We have made clear . . . that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . .") (citations omitted).

The bottom line is that Dr. Ravetch's opinions are based on legal argument rather than "facts" and "data" as required by Rule 702. Dr. Ravetch abandoned his own independent scientific judgment, founding his alleged "opinions" not on the science, but

rather legal positions that he believes ZymoGenetics is taking in the litigation. He also conveniently selects different arguments allegedly made by ZymoGenetics for reaching his conclusions of either noninfringement or invalidity. Dr. Ravetch never discloses what his own independent scientific perspective is, implying that (1) it would contradict the opinions he did explicitly express, and (2) he could only reach the preformed noninfringement and invalidity opinions he did by contriving a requirement that his opinion must be constrained by ZymoGenetics' positions. *See* Sun Decl., Ex. 1; Ex. 2. Because Dr. Ravetch does not provide a neutral, expert perspective based on an application of scientific principles and methodology to "facts" and "data," his testimony will not assist the triers of fact in making determinations revolving around the complex scientific concepts and issues of the case.

For these reasons, Dr. Ravetch's testimony should be excluded with respect to those portions of his opinion that are based upon ZymoGenetics' alleged legal arguments. As shown in the above-quoted examples, those portions correspond to the following claim elements: "non-immunoglobulin polypeptide," "requiring dimerization for biological activity," and "dimerizing protein." The paragraphs of Dr. Ravetch's invalidity and noninfringement reports where these claim elements are discussed are reflected in the table below, and Dr. Ravetch should be excluded from providing any testimony regarding the substance disclosed in those paragraphs of his two reports. .

| Claim Term | Ravetch Invalidity Report | Ravetch Non-Infringement Report |
|---|---|---|
| "non-immunoglobulin polypeptide" | ¶¶ 82-85, 135-36, 174-75, 210-11, 243-44, 269-70, 295-96, 303-04 | ¶¶ 34-43, 150-51, 158-59, 168-69 |

| "requiring dimerization for biological activity" | ¶¶ 86-91, 137-38, 176-79, 212-13, 243-44, 269-70 | ¶¶ 44-95, 152-53, 162-63, 170-75 |
|---|---|---|
| "dimerizing protein" | ¶¶ 92-95, 139-40, 180-82, 214, 245-47, 271, 314-15, 318-19, 321 | ¶¶ 96-148, 154-55, 164-65, 178-79 |

Sun Decl., Ex. 1; Ex. 2.

### 2.    Dr. Capon's Opinions

In the same way as Dr. Ravetch, Dr. Capon bases his invalidity opinions on legal

arguments allegedly made by ZymoGenetics.  *See, e.g.,* Sun Decl., Ex. 7, ¶84 ███

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████; ¶86 ████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████; ¶87 ████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████; ¶90

█████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████; ¶92 ███████

████████████████████████████████████████████

███████████████████████████████████████████



; ¶98

; ¶122

.

As discussed above with respect to Dr. Ravetch, the conclusions Dr. Capon draws from ZymoGenetics' alleged arguments are not the type of conclusions that depend on legal argument. Dr. Capon refused to answer questions of science because his opinion was based on the logic of legal positions, and further, arguments which ZymoGenetics has never made. By predicating his "opinions" on ZymoGenetics' alleged arguments without questioning or disputing their validity, Dr. Capon is not providing scientifically sound opinions which his own independent opinions.

Dr. Capon confirmed this during his deposition. *See, e.g.*, Sun Decl., Ex. 5 at 152-55:





Dr. Capon failed to understand that expert testimony is "helpful" when it is based on facts and data analyzed from an objective point of view. An expert opinion is not helpful and does not assist the trier of fact when based on legal argument. It is not the role of the expert witness to create an opinion "helpful" to the lawyers' legal arguments, and which is not based on that expert's understanding of the science itself. Moreover, when Dr. Capon was given the opportunity to provide his own scientific understanding of the key areas of technology involved in the litigation, he either refused or stated that he had none. For example:



*See* Sun Decl., Ex. 5 at 201:21-202:10; *see also, e.g.*, id. at 24-28; id. at 39-43. If Dr. Capon is not willing to provide the jury with the benefit of his alleged "scientific,

technical, or other specialized knowledge," then his testimony will not help the trier of fact to "understand the evidence or to determine a fact in issue." FED. R. CIV. P. 702. Consequently, he has no business testifying in this case, and his testimony, specifically that which relates to the claim terms and paragraphs shown below, should be excluded.

| Claim Term | Capon Invalidity Report |
|---|---|
| "non-immunoglobulin polypeptide" | ¶¶ 62, 63, 83-87, 144 |
| "requiring dimerization for biological activity" | ¶¶ 89-95, 122, 130, 145 |
| "dimerizing protein" | ¶¶ 96-99, 106-07, 146 |

Sun Decl., Ex. 7.

### 3.    Dr. Kuriyan's Opinions

Dr. Kuriyan's expert opinions regarding noninfringement are also inadmissible. First, they are based on alleged legal arguments made by ZymoGenetics, rather than "facts or data" as required by Rule 702. Second, Dr. Kuriyan lacks (because he was unwilling to provide) the "scientific, technical, or other specialized knowledge" that is a prerequisite for proffering opinion testimony in the first place. FED. R. EVID. 702.

Like Dr. Ravetch and Dr. Capon, Dr. Kuriyan bases his noninfringement opinions on positions on ZymoGenetics' alleged arguments and positions. *See, e.g.*, Sun Decl., Ex. 8, ¶45 ████████████████████████████

████████████████████████████

█████; ¶48 ████████████████████████

████████████████████████████



; ¶59; ¶69.

As with Dr. Ravetch and Dr. Capon, Dr. Kuriyan was not in a situation where, as a starting point for his analysis, he needed to accept as true a position allegedly taken by ZymoGenetics. The above instances where he voluntarily binds himself to ZymoGenetics' alleged arguments are matters of science that invoke the particular "scientific, technical, or other specialized knowledge" contemplated by Rule 702. Yet instead Dr. Kuriyan relied on alleged positions never actually taken by ZymoGenetics. Dr. Kuriyan does not disclose in his report what his own scientific opinions are, again implying that they differ from the explicit opinions in his report and would not support a finding of noninfringement on behalf of Bristol.

In deposition Dr. Kuriyan confirmed that his opinions were not based upon his own scientific understanding, and even when given the opportunity to provide his own scientific understanding of terms, refused to do so. For example, Dr. Kuriyan refused to disclose his own understanding of what a T cell receptor is:





Sun Decl., Ex. 6 at 43:9-44:18 (objections omitted) (emphasis added).

Not only did Dr. Kuriyan base his opinions on ZymoGenetics' alleged legal arguments, he also failed to disclose any of his own alleged "scientific, technical, or other specialized knowledge" that could assist the trier of fact in this case. FED. R. EVID. 702. For example, Dr. Kuriyan would not say what his understanding of the science at issue was. He testified as follows at one point in his deposition:





Sun Decl., Ex. 6 at 36:22-38:14.  Because Dr. Kuriyan would not disclose his own

scientific understanding of the technology involved in the case, there is no "scientific,

technical, or other specialized knowledge" to speak of which could possibly "assist the

trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID.

702.  All that Dr. Kuriyan's opinions provide is legal advocacy rather than an objective

expert perspective on the complex scientific concepts and issues which the jury must

understand in order to make an infringement determination.  Dr. Kuriyan's testimony

does not satisfy the minimum standard of admissibility under Rule 702.  His improper

opinion testimony should be excluded at trial with respect to the claim elements and

paragraphs shown below:

| Claim Term | Kuriyan Non-Infringement Report |
|---|---|
| "non-immunoglobulin polypeptide" | ¶¶ 43-63, 143-45 |
| "requiring dimerization for biological activity" | ¶¶ 114-141, 154-57 |
| "dimerizing protein" | ¶¶ 61-113, 146-54 |

Sun Decl., Ex. 8.

### C.  DR. RAVETCH'S, DR. CAPON'S, AND DR. KURIYAN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE THEY ARE NOT INDEPENDENT

An expert opinion must obviously be independent and objective in order to be helpful to the trier of fact in understanding the facts and evidence.  Dr. Ravetch's noninfringement and invalidity opinions are verbatim or near verbatim to large sections of Dr. Capon's invalidity and Dr. Kuriyan's noninfringement reports, demonstrating that they cannot possibly be the product of three individual experts' independent opinions. The following paragraphs, for example, are identical in Dr. Ravetch's and Dr. Capon's invalidity reports or Dr. Ravetch's and Dr. Kuriyan's noninfringement reports:



Sun Decl., Ex. 2, ¶30; Ex. 7, ¶33.





<u>Id</u>., Ex. 2, ¶59; Ex. 7, ¶62.



<u>Id</u>., Ex. 1, ¶19; Ex. 8, ¶29.



<u>Id</u>., Ex. 1, ¶20; Ex. 8, ¶30.

In other areas, the opinions of Dr. Ravetch, Dr. Capon, and Dr. Kuriyan were nearly verbatim, differing in only a few discretionary words (additions are indicated by brackets and deletions by strikethrough):



| Ravetch Invalidity Report | Capon Invalidity Report |
|---|---|
| 60. | 63. |



Sun Decl., Ex. 2, ¶60.

Sun Decl., Ex. 7, ¶63.

Id., Ex. 2, ¶155.

Id., Ex. 7, ¶157.



**Ravetch Noninfringement Report**

**Kuriyan Noninfringement Report**

Id., Ex. 1, ¶35.

Id., Ex. 8, ¶46.

The expert reports of these witnesses have numerous paragraphs that are identical or nearly identical. (*See* Appendix attached hereto for a side-by-side comparison of the reports). It is impossible that three allegedly independent experts reached the same opinions articulated with the exact same words in the exact same order using the exact same sentence structure. Dr. Capon testified at his deposition that ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████. Sun Decl., Ex. 5 at 142:10-144:2; 249:1-252:13. Dr. Kuriyan testified that ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████. Id., Ex. 6 at 198:21-204:2. [3]

Yet both Dr. Capon and Dr. Kuriyan testified under oath that ██████████████

████████████████████████████████████████████

████████████████. Id.; Sun Decl., Ex. 5 at 140:7-23. Despite the lack of explanation, it does not take an expert to figure out that what occurred in this case was a cut-and-paste job by Bristol's counsel, the resulting product being legal advocacy shrouded in the guise of an independent expert opinion. Dr. Ravetch, Dr. Capon, and Dr. Kuriyan are mouthpieces for Bristol. Their opinions are not objective or independent and as such cannot "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702.

---

[3] It was not possible to depose Dr. Ravetch prior to the submission of the present motion. As discussed in the Statement of Facts, Dr. Ravetch's deposition, originally scheduled for April 24, 2008, was cancelled for medical reasons. *See supra* Part III.

Therefore, the entirety of Dr. Ravetch's, Dr. Capon's, and Dr. Kuriyan's opinions should be excluded. It cannot be determined which parts, if any, were drafted by an individual expert and which parts were drafted by Bristol's counsel. The one certainty that exists is the fact that Bristol's experts are anything but independent. This fact taints their entire opinion.

At the very least, the opinions found Bristol's experts reports which are verbatim or duplicative should be excluded. Those paragraphs are indicated in the Appendix attached hereto. As explained above, the verbatim paragraphs cannot possibly be the product of an independent analysis. As far as the duplicative portions of Bristol's experts' reports, these are not helpful to the trier of fact. Hearing the same message multiple times does not provide the trier of fact with a greater amount of information or clarity than hearing it once. The cumulativeness of the opinions further risks undue weight being accorded to Bristol's positions because they are backed by multiple experts. Judicial resources are also wasted in entertaining duplicative expert witnesses. And, at least with respect to the issue of validity, it is evident that Dr. Capon was retained because he is a listed inventor on the '603, '335, '655, and '169 alleged prior art patents, not because he has any additional or different opinions from Dr. Ravetch's invalidity opinion. For these reasons, in the alternative to excluding Dr. Ravetch's, Dr. Capon's, and Dr. Kuriyan's opinions in their entirety, ZymoGenetics respectfully requests the Court to exclude the verbatim and duplicative testimony reflected in the attached Appendix.

## D.    DR. RAVETCH'S CONCEPTION TESTIMONY SHOULD BE EXCLUDED

Dr. Ravetch's opinion regarding the conception of the inventions of the ZymoGenetics Patents should be excluded because it will not assist the trier of fact. The entirety of Dr. Ravetch's opinion concerning the conception is the single paragraph reproduced below:



Sun Decl., Ex. 2, ¶24. Dr. Ravetch's "opinion" does nothing more than recite the legal standard for conception outlined in the previous paragraph of his report. *See* id. ¶23. It contains no scientific analysis of the laboratory notebook page at issue. Yet the laboratory notebook entry makes reference to "SPDGF-R," "yeast" and "mammalian cells," "IL-2 receptor," "plasma membrane," "high affinity binding," "dimers," "monomer," "pBTL12," "screening techniques," and "antibody system," all scientific terms which a lay trier of fact could not possibly be expected to interpret without the assistance of an expert's "scientific, technical, or other specialized knowledge." Sun Decl., Ex. 9 (Laboratory Notebook of Andrzej Sledziewski at ZG033206); FED. R. EVID. 702. However, precisely absent from Dr. Ravetch's "opinion" above is the application of any such scientific knowledge to the evidence that is the laboratory notebook.

Dr. Ravetch should be excluded from testifying regarding conception because his

conclusory opinion, stated in legal terms, will not assist the trier of fact in understanding

the complex evidence of conception in this case.

### E.    DR. CAPON'S OBVIOUSNESS TESTIMONY SHOULD BE EXCLUDED

Dr. Capon's purported obviousness opinion should be excluded because he

applied the wrong legal standard for obviousness, performed no actual substantive

analysis of obviousness, and demonstrated confusion over the law of anticipation an

obviousness that will ultimately only confuse, rather than assist, the trier of fact.

Dr. Capon's entire opinion concerning obviousness comprises a single paragraph,

the penultimate paragraph of his report:



Sun Decl., Ex. 7 ¶163.  First of all, Dr. Capon's opinion is vague in the sense that the

phrase ████████████ does not disclose which combination of references, if any,

forms the basis for his obviousness conclusion.  In deposition, when asked of his opinion

was that the ZymoGenetics Patents were obvious in light of "any" or "some combination

of" the '603, '335, '655, or '169 patents, Dr. Capon simply recited ████████████

████ from his report.  Sun Decl., Ex. 5 at 239:19-240:6.  Moreover when asked why he

would combine any of the references at all, since their specifications were admittedly

---

[4] Dr. Capon clarified in his deposition that ████████████████████████
████████████████████████.  Sun Decl., Ex. 5 at
243:14-24.

identical, Dr. Capon would not provide an answer. Id. at 235:16-239:14; *see also* Sun

Decl., Ex. 7 ¶ 137 ████████████████████████████████████████████

████████.

In any case, aside from being vague, Dr. Capon's obviousness opinion was

reached based upon an incorrect legal standard for obviousness. ████████████

████████████████████████████████████████████████████

████████████████████████████. Sun Decl., Ex. 7, ¶163. In

deposition, Dr. Capon testified that he ████████████████████████████

████████████████ Id., Ex. 5 at 247:24-248:4. Such, however, is not the

correct legal standard for obviousness. Graham v. John Deere Co. of Kansas City, 383

U.S. 1, 17-18 (1966) provides a standard for obviousness that is separate and distinct

from the standard for anticipation:

> Under § 103, the scope and content of the prior art are to be
> determined; differences between the prior art and the
> claims at issue are to be ascertained; and the level of
> ordinary skill in the pertinent art resolved. Against this
> background, the obviousness or nonobviousness of the
> subject matter is determined. Such secondary
> considerations as commercial success, long felt but
> unsolved needs, failure of others, etc., might be utilized to
> give light to the circumstances surrounding the origin of the
> subject matter sought to be patented. As indicia of
> obviousness or nonobviousness, these inquiries may have
> relevancy.

Obviously, the single paragraph that comprises Dr. Capon's obviousness opinion does

not even begin to delve into the factual inquiries underlying the question of obviousness

or any of the secondary indicia of nonobviousness. When asked in deposition if he

analyzed these factors, Dr. Capon relied on his anticipation analysis:



Sun Decl., Ex. 5 at 246:17-247:1.  Also, when asked to clarify his obviousness opinion,

Dr. Capon referred to ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████ Id. at 240:20-241:2 (emphasis added).

When asked if this statement regarding anticipation was the basis for his obviousness

opinion, Dr. Capon ████████████████████████████████████████████████

█████████████████████████████ Id. at 241:24-244:19.

  Dr. Capon's opinion regarding obviousness should be excluded because it is

based upon flawed methodology, specifically, the incorrect legal standard that if a claim

is anticipated, it is also obvious.  The trier of fact should not be permitted to follow the

same illogical reasoning, which circumvents the separate analysis for determining

obviousness.  In addition, his testimony cannot assist the trier of fact because he never

engaged in any analysis of the factors underlying the obviousness inquiry.  The entirety

of his obviousness opinion is a conclusory *ipse dixit*, an afterthought contained in a single

paragraph at the end of his expert report.  Finally, Dr. Capon's obviousness opinion

should be excluded because his confusion over the concepts of anticipation and

obviousness will only, in turn, confuse rather than assist the trier of fact.

## V.    CONCLUSION

For the foregoing reasons, ZymoGenetics respectfully requests the Court to grant

its motion and exclude testimony from Dr. Ravetch, Dr. Capon, and Dr. Kuriyan at trial.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. André                      By: /s/ Philip A. Rovner
Lisa Kobialka                           Philip A. Rovner (#3215)
King & Spalding LLP                     Hercules Plaza
1000 Bridge Parkway                     P. O. Box 951
Suite 100                               Wilmington, DE  19899
Redwood City, CA 94065                  (302) 984-6000
(650) 590-0700                          provner@potteranderson.com

Dated: May 16, 2008                     *Attorneys for Plaintiff*
864999                                  *ZymoGenetics, Inc.*
Public Version: May 22, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

       I, Philip A. Rovner, hereby certify that on May 22, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

       Frederick L. Cottrell, III, Esq.
       Kelly E. Farnan, Esq.
       Richard Layton & Finger, P.A.
       One Rodney Square
       P. O. Box 551
       Wilmington, DE 19899
       cottrell@rlf.com
       farnan@rlf.com

       I hereby certify that on May 22, 2008 I have sent by E-mail the foregoing

document to the following non-registered participant:

       Christopher P. Borello, Esq.
       Colleen Tracy, Esq.
       Fitzpatrick Cella Harper & Scinto
       30 Rockefeller Plaza
       New York, NY 10112
       cborello@fchs.com
       ctracy@fchs.com

       /s/ Philip A. Rovner
       Philip A. Rovner (#3215)
       Potter Anderson & Corroon LLP
       Hercules Plaza
       P. O. Box 951
       Wilmington, DE 19899
       (302) 984-6000
       provner@potteranderson.com

748348

# APPENDIX

# APPENDIX

| Dr. Ravetch | Dr. Capon | Type of Redundancy |
|---|---|---|
| ¶ 13 | ¶ 22 | Identical |
| ¶ 14 | ¶ 23 | Identical |
| ¶ 15 | ¶ 24 | Identical |
| ¶ 16 | ¶ 25 | Identical |
| ¶ 17 | ¶ 26 | Duplicative |
| ¶ 18 | ¶ 27 | Identical |
| ¶ 19 | ¶ 28 | Identical |
| ¶ 20 | ¶ 29 | Identical |
| ¶ 21 | ¶ 30 | Identical |
| ¶ 22 | ¶ 31 | Identical |
| ¶ 29 | ¶ 32 | Identical |
| ¶ 30 | ¶ 33 | Identical |
| ¶ 31 | ¶ 34 | Identical |
| ¶ 32 | ¶ 35 | Identical |
| ¶ 33 | ¶ 36 | Identical |
| ¶ 34 | ¶ 37 | Identical |
| ¶ 35 | ¶ 38 | Identical |
| ¶ 36 | ¶ 39 | Identical |
| ¶ 37 | ¶ 40 | Duplicative |
| ¶ 38 | ¶ 41 | Identical |
| ¶ 39 | ¶ 42 | Identical |
| ¶ 40 | ¶ 43 | Identical |
| ¶ 41 | ¶ 44 | Identical |
| ¶ 42 | ¶ 45 | Duplicative |
| ¶ 43 | ¶ 46 | Duplicative |
| ¶ 47 | ¶ 49 | Duplicative |
| ¶ 46 | ¶ 50 | Identical |
| ¶ 48 | ¶ 51 | Identical |
| ¶ 49 | ¶ 52 | Identical |
| ¶ 51 | ¶ 53 | Duplicative |
| ¶ 52 | ¶ 54 | Duplicative |
| ¶ 53 | ¶ 55 | Identical |
| ¶ 54 | ¶ 56 | Duplicative |
| ¶ 55 | ¶ 57 | Duplicative |
| ¶ 56 | ¶ 58 | Duplicative |
| ¶ 57 | ¶ 59 | Duplicative |
| ¶ 58 | ¶ 60 | Duplicative |
| ¶ 58 | ¶ 61 | Duplicative |
| ¶ 59 | ¶ 62 | Identical |
| ¶ 60 | ¶ 63 | Identical |
| ¶ 61 | ¶ 64 | Identical |

| ¶ 62 | ¶ 65 | Identical |
|------|------|-----------|
| ¶ 63 | ¶ 66 | Duplicative |
| ¶ 64 | ¶ 67 | Duplicative |
| ¶ 67 | ¶ 68 | Duplicative |
| ¶ 75 | ¶ 77 | Duplicative |
| ¶ 76 | ¶ 78 | Duplicative |
| ¶ 77 | ¶ 80 | Duplicative |
| ¶ 80 | ¶ 81 | Duplicative |
| ¶ 81 | ¶ 82 | Duplicative |
| ¶ 84 | ¶ 86 | Duplicative |
| ¶ 85 | ¶ 87 | Duplicative |
| ¶ 88 | ¶ 91 | Identical |
| ¶ 105 | ¶ 93 | Duplicative |
| ¶ 106 | ¶ 95 | Duplicative |
| ¶ 93 | ¶ 97 | Identical |
| ¶ 94/95 | ¶ 98 | Duplicative |
| ¶ 98 | ¶ 100 | Duplicative |
| ¶ 96/97 | ¶ 101 | Duplicative |
| ¶ 77 | ¶ 103 | Duplicative |
| ¶ 108 | ¶ 105 | Duplicative |
| ¶ 101/103 | ¶ 107 | Duplicative |
| ¶ 78 | ¶ 109 | Duplicative |
| ¶ 99 | ¶ 111 | Duplicative |
| ¶ 110 | ¶ 121 | Duplicative |
| ¶ 113 | ¶ 132 | Duplicative |
| ¶ 134 | ¶ 141 | Duplicative |
| ¶ 128 | ¶ 142 | Duplicative |
| ¶ 132 | ¶ 143 | Duplicative |
| ¶ 136 | ¶ 144 | Duplicative |
| ¶ 138 | ¶ 145 | Duplicative |
| ¶ 142 | ¶ 146 | Duplicative |
| ¶ 144 | ¶ 147 | Duplicative |
| ¶ 154 | ¶ 156 | Duplicative |
| ¶ 155 | ¶ 157 | Identical |
| ¶ 157 | ¶ 159 | Identical |
| ¶ 158 | ¶ 160 | Duplicative |
| ¶ 161 | ¶ 162 | Identical |

| Dr. Ravetch | Dr. Kuriyan | Type of Redundancy |
|-------------|-------------|--------------------|
| ¶ 8 | ¶ 18 | Identical |
| ¶ 11 | ¶ 20 | Identical |
| ¶ 14 | ¶ 23 | Identical |
| ¶ 15 | ¶ 24 | Identical |
| ¶ 16 | ¶ 25 | Identical |

2

| ¶ 17 | ¶ 26 | Identical |
|---|---|---|
| ¶ 18 | ¶ 28 | Identical |
| ¶ 19 | ¶ 29 | Identical |
| ¶ 20 | ¶ 30 | Identical |
| ¶ 21 | ¶ 31 | Identical |
| ¶ 22 | ¶ 32 | Identical |
| ¶ 23 | ¶ 33 | Identical |
| ¶ 24 | ¶ 34 | Identical |
| ¶ 25 | ¶ 35 | Identical |
| ¶ 26 | ¶ 36 | Identical |
| ¶ 27 | ¶ 37 | Identical |
| ¶ 28 | ¶ 38 | Identical |
| ¶ 29 | ¶ 39 | Identical |
| ¶ 30 | ¶ 40 | Identical |
| ¶ 31 | ¶ 41 | Identical |
| ¶ 33 | ¶ 42 | Identical |
| ¶ 34 | ¶ 43 | Identical |
| ¶ 35 | ¶ 46 | Identical |
| ¶ 38 | ¶ 47 | Duplicative |
| ¶ 39 | ¶¶ 48, 52 | Duplicative |
| ¶ 40 | ¶ 49 | Identical |
| ¶ 41 | ¶ 51 | Identical |
| ¶ 44 | ¶ 114 | Identical |
| ¶ 45 | ¶ 115 | Identical |
| ¶¶ 50, 51 | ¶ 118 | Duplicative |
| ¶ 58 | ¶¶ 123, 125 | Duplicative |
| ¶ 75 | ¶ 126 | Duplicative |
| ¶¶ 77, 90, 91 | ¶¶ 133, 134 | Duplicative |
| ¶ 79 | ¶ 136 | Duplicative |
| ¶¶ 84-87 | ¶¶ 138-140 | Duplicative |
| ¶ 96 | ¶ 61 | Identical |
| ¶ 97 | ¶ 62 | Identical |
| ¶ 98 | ¶ 63 | Identical |
| ¶ 99 | ¶ 64 | Duplicative |
| ¶ 100 | ¶¶ 68, 69 | Duplicative |
| ¶ 103 | ¶ 105 | Duplicative |
| ¶ 104 | ¶¶ 108, 109 | Duplicative |
| ¶ 107 | ¶ 111 | Identical |
| ¶ 109 | ¶ 110 | Duplicative |
| ¶ 113 | ¶ 71 | Duplicative |
| ¶ 114, 115 | ¶ 72 | Duplicative |
| ¶ 116 | ¶ 73 | Duplicative |
| ¶ 117 | ¶ 74 | Duplicative |
| ¶ 118 | ¶ 75 | Duplicative |
| ¶ 119 | ¶ 76 | Duplicative |

| ¶ 120 | ¶ 77 | Duplicative |
|---|---|---|
| ¶ 121 | ¶ 78 | Duplicative |
| ¶¶ 125-128 | ¶¶ 79-83 | Duplicative |
| ¶ 129 | ¶¶ 85, 86 | Duplicative |
| ¶ 130 | ¶ 87 | Duplicative |
| ¶ 132 | ¶ 88 | Duplicative |
| ¶¶ 134, 135 | ¶ 92 | Duplicative |
| ¶¶ 140, 141 | ¶ 93 | Duplicative |
| ¶ 142 | ¶ 94 | Duplicative |
| ¶ 144 | ¶ 96 | Duplicative |
| ¶ 145 | ¶ 97 | Duplicative |
| ¶ 146 | ¶ 91 | Duplicative |
| ¶ 149 | ¶ 142 | Identical |
| ¶ 154 | ¶ 143 | Identical |
| ¶ 155 | ¶ 144 | Identical |
| ¶ 156 | ¶ 145 | Identical |
| ¶ 177 | ¶ 150 | Identical |
| ¶ 178 | ¶ 151 | Duplicative |
| ¶ 179 | ¶ 152 | Duplicative |
| ¶ 182 | ¶ 158 | Identical |