IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZYMOGENETICS, INC., a Washington Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No: 06-500-SLR-MPT |
| BRISTOL-MYERS SQUIBB CO., a Delaware Corporation, and DOES 1 through 100, | ) ) ) ) ) |
| Defendants. | ) ) |

**REPLY IN SUPPORT OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY'S
MOTION FOR BIFURCATION OF DAMAGES
AND RENEWED MOTION FOR BIFURCATION OF WILLFUL INFRINGEMENT**

Defendant Bristol-Myers Squibb Company ("Bristol") respectfully submits this reply in further support of its Motion for Bifurcation of Damages and Renewed Motion for Bifurcation of Willful Infringement ("Motion").

I. **INTRODUCTION**

District courts have broad discretion when it comes to ordering separate trials. *See* Fed. R. Civ. P. 42(b). Patent cases, and this case in particular, are especially well-suited for severing willfulness and damages issues from liability issues. In opposing Bristol's Motion, Plaintiff ZymoGenetics, Inc. ("ZymoGenetics") creates a strawman argument -- that Bristol is arguing bifurcation is **required** in all patent cases. However, Bristol is not advocating severance in every patent case. Bristol is advocating for separate trials because it is warranted based on the facts of this case. Separating willfulness and damages issues from liability issues in patent cases is common, particularly in the District of Delaware.

In arguing that the balance of prejudice is on its side, ZymoGenetics attempts to dilute the complexity of the litigation, mislead the Court regarding the ramifications of *Seagate*, and distract the Court with the threat of a potential "*de facto* license". The fact is (1) this litigation involves complicated biotechnology, multiple non-infringement and invalidity issues and complex damages issues, (2) *Seagate* does not eliminate the waiver issue, and (3) any harm associated with a potential delay can be remedied at the damages phase.

Further, ZymoGenetics completely ignores its own admissions of a "substantial question of patentability" surrounding the patents-in-suit, which, according to *Seagate*, should be sufficient to avoid a willfulness charge. Lastly, although ZymoGenetics deems Bristol's statements of fact supporting its likelihood of success in demonstrating no willfulness and no liability at trial as "self-serving," they present no contrary statements of fact. As outlined in Bristol's Motion, Bristol's likelihood of success in demonstrating no willfulness and no liability at trial are other factors that support bifurcation. (*See* D.I. 155 at 7).

## II.   ARGUMENT

### A.   ZymoGenetics' Statements of the Law Regarding Bifurcation are Consistent with Bristol's.

#### 1.   Bifurcation is Common in Patent Cases.

Bristol believes separating willfulness and damages from liability will "avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520 (D. Del. 2002). (*See* D.I. 155 at 4, 7). In fact, courts routinely bifurcate patent cases. *See, e.g., Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*, 2007 WL 188285, at *5 (D.N.J. Jan. 22, 2007) ("In patent cases, bifurcation of liability and damages is not uncommon . . . ."); *Ciena*, 210 F.R.D. at 521 ("In fact, bifurcation of complex patent trials has become common") (citation omitted); *Princeton Biochemicals, Inc. v.*

*Beckman Instruments, Inc.*, 180 F.R.D. 254, 259 (D.N.J. 1997) (acknowledging an "abundance" of patent cases in which the court permitted bifurcation).

### 2. Bristol Never Stated that Bifurcation is Required in Patent Cases.

Bristol does not dispute that this Court has broad discretion to order separate trials in this case. *See* Fed. R. Civ. P. 42(b). However, Bristol specifically stated in its Motion that severance of willfulness and damages in this case would be appropriate, as supported by the case law. (*See* D.I. 155 at 7). Bristol never stated that case law **required** that **all** patent cases separate willfulness and damages from liability, but rather, that separation in this case is consistent with what the District of Deleware has done for similar cases, and thus, bifurcation is appropriate in this patent case. *See, e.g., Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-91 (SLR) (November 30, 2007 Memorandum Order at 2) (D.I. 155 at Ex. 2).

### 3. The Law Governing Appeals Supports the Rationale for Bifurcation.

ZymoGenetics misleadingly states that 28 U.S.C. § 1292(c)(2) does not **require** bifurcation. (D.I. 202 at 6). Bristol cited 28 U.S.C. § 1292(c)(2) because it supports the rationale for severance in that it expressly provides for finality of decisions in patent cases prior to an accounting. 28 U.S.C. § 1292(c)(2). (*See* D.I. 155 at 2-3).

Accordingly, the damages issue should be severed to conserve judicial resources and expedite resolution of the litigation as to liability issues. Since a finding of no liability at trial would make a determination of damages unnecessary, and since any finding regarding liability is available immediately for appeal, it is most advantageous from a judicial resource standpoint to allow for a final determination on liability issues before proceeding to damages. *See, e.g., Quinstreet, Inc. v. Parallel Networks, Inc.*, Civ. No. 06-495 (SLR) (March 17, 2008 Transcript at 28-29) (recognizing the advantage in waiting for the Federal Circuit to resolve liability issues

before hearing damages) (D.I. 155 at Ex. 1); *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-91 (SLR) (November 20, 2007 Transcript at 4) (describing the Court's inclination to let the "dust settle" in the Federal Circuit before addressing damages) (Ex. 1).

### B. Prejudice, Judicial Economy and Juror Confusion Favor Separate Trials.

#### 1. Birfucation Will Not Substantially Prejudice ZymoGenetics.

ZymoGenetics says the balance of prejudice will favor it in three ways. First, ZymoGenetics states that this case "presents no uniquely complicated issues." (D.I. 202 at 7). This case involves complicated fusion protein biotechnology, two patents-in-suit, multiple non-infringement and invalidity issues, as well as complex damages issues. Because of the complex subject matter involved in this case, juror confusion is likely, particularly when dealing with a jury that is not familiar with the area of intellectual property. *See Princeton Biochemicals*, 180 F.R.D. at 257 (finding even infringement assertion of only a single patent claim was likely to confuse the jury); *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 11 (D.P.R. 1997) (noting that bifurcation would simplify the issues for the jury and help expedite the jury's task).

Second, ZymoGenetics states that "the *Seagate* decision greatly restricts the scope of any waiver." (D.I. 202 at 7). Restricting the scope of waiver does not remove the waiver entirely. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1374-75 (Fed. Cir. 2007) (*en banc*) (granting discretion to trial courts to extend waiver to trial counsel). Bristol would still have to prematurely face waiver issues that could prejudice its case and unnecessarily vitiate attorney-client privilege. Severing the willfulness issue would avoid these dangers. This Court, post-*Seagate*, has recognized the benefit of separating out willfulness. *See Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-91 (SLR) (November 30, 2007 Memorandum Order at 2) (D.I. 155 at Ex. 2).

Last, ZymoGenetics states that "the approaching expiration of the patents-in-suit will create a *de facto* license for Bristol." (D.I. 202 at 7). This is a red herring. Any harm associated with the delay caused by bifurcation can easily by remedied at the damages phase. *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 9 (D.P.R. 1997). Therefore, the prejudice that ZymoGenetics alleges it will suffer from a potential "*de facto* license" could easily be rectified. Furthermore, because ZymoGenetics and Bristol are not competitors, the potential harm from a "*de facto* license" is significantly reduced and a damages calculation, taking into account any potential delay, is all the more appropriate. On the other hand, prejudice to Bristol such as juror confusion and dissemination of confidential information cannot be remedied.

### 2. A Single Trial Will Likely Prejudice Bristol.

The risk of juror confusion in a complex patent case such as this poses a great risk of prejudice to Bristol. *See Ciena*, 210 F.R.D. at 521; *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982) (finding "that one trial of both issues [i.e., liability and damages] would tend to clutter the record and to confuse the jury."). As noted above, this case is particularly complicated and likely to cause jury confusion. *See Princeton*, 180 F.R.D. at 257; *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 587 F. Supp. 1112, 1115 (D. Del. 1984) (noting how patent law involves "concepts and principles not usually dealt with by randomly selected jurors"). Further, any evidence regarding reasonable royalty that Bristol is forced to present to counter evidence by ZymoGenetics may erroneously be viewed by the jury as an admission of liability. The particular complexity of the technology and issues in the present case poses a significant threat of juror confusion, thus warranting separation of willfulness and damages from liability issues.

5

Dissemination of confidential and sensitive information regarding a damages calculation, not necessary to any liability issue, would also greatly prejudice Bristol. Courts have recognized the importance of keeping confidential information from being disseminated. *See Industrias*, 172 F.R.D. at 5. This potential divulgence of highly confidential and sensitive commercial information, which would not be necessary to any liability issue, can be avoided through bifurcation.

### C. A Finding of Willfulness Under the Facts of the Case Would be Remote which Weighs in Favor of Bifurcation.

ZymoGenetics fails to even address the fact that the Federal Circuit in *Seagate* stated that a substantial question regarding invalidity is likely sufficient to avoid a charge of willfulness based on post-filing conduct. *Seagate*, 497 F.3d at 1374. The same should be true for avoiding willfulness based on prelitigation conduct. ZymoGenetics should not be permitted to deny that there was a substantial question concerning validity during much of the relevant prelitigation time period, as ZymoGenetics made representations to the USPTO in its Requests for Reexamination that there were substantial questions of patentability. ZymoGenetics attempts to characterize these statements of fact as "self-serving" and "not relevant to the question of bifurcation." (D.I. 202 at 10). In doing so, ZymoGenetics fails to appreciate the Federal Circuit's teachings in *Seagate*. Since a finding of willfulness is remote, this weighs in favor of bifurcation.

## III. CONCLUSION

For the foregoing reasons, as well as those set forth in Bristol's Motion, Bristol respectfully requests the Court grant its Motion and sever the issues of damages and willful infringement for separate trial after the resolution of liability, and to stay discovery related to willful infringement.

| OF COUNSEL: | /s/ Kelly E. Farnan |
|---|---|
| | Frederick L. Cottrell, III (#2555) |
| Robert L. Baechtold | cottrell@rlf.com |
| Scott K. Reed | Kelly E. Farnan (#4395) |
| Colleen Tracy | farnan@rlf.com |
| Ha Kung Wong | Richards, Layton & Finger, P.A. |
| Christopher P. Borello | One Rodney Square, P.O. Box 551 |
| FITZPATRICK CELLA HARPER & SCINTO | Wilmington, DE 19899 |
| 30 Rockefeller Plaza | (302) 651-7700 |
| New York, N.Y. 10112 | *Attorneys for Defendant* |
| Telephone: (212) 218-2100 | *Bristol-Myers Squibb Co* |
| Facsimile: (212) 218-2200 | |

Dated: June 5, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and which has also been served as noted:

**BY HAND DELIVERY and E-MAIL**

Philip A. Rovner
Potter, Anderson & Corroon
Hercules Plaza - 6th Floor
Wilmington, DE  19899

I hereby certify that on June 5, 2008, the foregoing document was sent to the following non-registered participants in the manner indicted:

**BY E-MAIL**

Paul J. Andre
King & Spalding, LLP
1000 Bridge Parkway
Suite 100
Redwood Shores, CA  94065


                                            /s/ Kelly E. Farnan
                                            Kelly E. Farnan (#4395)

# EXHIBIT 1

*( Pgs. 18-29 under seal, under separate cover.)*

(349)

1

```
            IN THE UNITED STATES DISTRICT COURT
            IN AND FOR THE DISTRICT OF DELAWARE
                          - - -

CALLAWAY GOLF COMPANY,          :   CIVIL ACTION
                                :
                  Plaintiff,    :
                                :
     vs.                        :
                                :
ACUSHNET COMPANY,               :
                                :
                  Defendant     :   NO. 06-91 (SLR)


                          - - -

                        Wilmington, Delaware
                        Tuesday, November 20, 2007
                        3:03 o'clock, p.m.
                        ***Pretrial conference

                          - - -

BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

                          - - -


APPEARANCES:


          FISH & RICHARDSON
          BY:  STAMATIOS STAMOULIS, ESQ.



                     -and-



                              Valerie J. Gunning
                              Official Court Reporter
```

ORIGINAL

4

1   the merits. That raises the question of damages.
2           In proving damages, there is a dispute over
3   whether and to what extent reference to the re-exams
4   will be made. We discussed this in the body of the pretrial
5   order.
6           THE COURT: Well, I am putting off damages
7   altogether.
8           MR. SCHERKENBACH: Okay.
9           THE COURT: So I don't need to talk about that.
10  Again, I have decided that damages kind of fall into place
11  once the dust settles in the Federal Circuit because you all
12  appeal everything. Once the Federal Circuit issues its
13  decision, and particularly in a case like this, where, quite
14  frankly, the claim construction could go either way, I never
15  predict what the Federal Circuit is going to do. So we're
16  bifurcating damages. So although it's an interesting
17  question, how we go about damages on either on any of the
18  issues, we're not going to address that now.
19          MR. SCHERKENBACH: Thank. That clarifies your
20  ruling on bifurcation.
21          Second point was laches. I don't actually know
22  what the Court's recent practice is in terms of submitting
23  that to the jury or not. Acushnet has a defense, we think
24  not, but we need some guidance on that.
25          THE COURT: I don't submit equitable issues to a