# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ZYMOGENETICS, INC.,
a Washington Corporation,

              Plaintiff,

        v.

BRISTOL-MYERS SQUIBB CO.,
a Delaware Corporation, and
DOES 1 through 100,

              Defendants.

Civil Action No: 06-500-SLR-MPT

**REDACTED**
**PUBLIC VERSION**

## BRISTOL-MYERS SQUIBB COMPANY'S ANSWERING BRIEF
## IN OPPOSITION TO ZYMOGENETICS'
## MOTION TO EXCLUDE THE TESTIMONY OF BRISTOL'S EXPERTS

OF COUNSEL:

Robert L. Baechtold
Scott K. Reed
Colleen Tracy
Ha Kung Wong
Christopher P. Borello
Fitzpatrick Cella Harper & Scinto
30 Rockefeller Plaza
New York, N.Y. 10112
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendant*
*Bristol-Myers Squibb Co*

Dated: June 5, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY ...................... 2

II.     BRISTOL'S EXPERTS' OPINIONS ADHERE TO THE
        REQUIREMENTS OF RULE 702 ................................................................................ 4

        A.      Bristol's Experts are Qualified Experts ................................................................ 4

        B.      The Opinions of Bristol's Experts are Relevant to Issues in This
                Litigation and Based Upon Ample Facts and Data ............................................... 5

        C.      The Opinions of Bristol's Experts are Reliable .................................................... 6

III.    ZYMOGENETICS FAILS TO ESTABLISH A BASIS UNDER
        *DAUBERT* FOR EXCLUSION OF BRISTOL'S EXPERTS'
        TESTIMONY ............................................................................................................... 6

        A.      Use of ZymoGenetics' Term Definitions is Not a Basis for
                Exclusion Under *Daubert* .................................................................................... 7

        B.      ZymoGenetics has Contradictory Definitions of the Term "Non-
                Immunoglobulin", Not Bristol's Experts ............................................................. 9

        C.      What a Person of Ordinary Skill in the Art Understands in the
                Present Day is *Not* the Appropriate Standard ................................................... 11

        D.      Bristol's Experts are Independent, Regardless, Independence is
                Irrelevant Under *Daubert* .................................................................................. 12

        E.      Dr. Ravetch's Testimony on the Conception Date of the Patents-In-
                Suit is Admissible ............................................................................................... 14

        F.      ZymoGenetics' Reason for Why Bristol Retained Dr. Capon is
                Completely Irrelevant ......................................................................................... 15

        G.      Dr. Capon's Opinion on Obviousness is Admissible ........................................... 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Connell v. Sears, Roebuck & Co.,*
    722 F.2d 1542 (Fed. Cir. 1983)............................................................. 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993)............................................................*passim*

*Holbrook v. Lykes Bros. S.S. Co.,*
    80 F.3d 777 (3d Cir. 1996).................................................................. 3

*Hormone Research Found. v. Genentech, Inc.,*
    904 F.2d 1558 (Fed. Cir. 1990).......................................................... 12

*In re Baxter Travenol Labs,*
    952 F.2d 388 (Fed. Cir. 1992).............................................................. 15

*In re McDaniel,*
    293 F.3d 1379 (Fed. Cir. 2002)........................................................... 15

*In re Paoli R.R. Yard Pcb Litig.,*
    35 F.3d 717 (3d Cir. 1994).................................................................. 3

*Kannankeril v. Terminix Int'l,*
    128 F.3d 802 (3d Cir. 1997)................................................................ 3

*Micro Chem., Inc. v. Lextron, Inc.,*
    317 F.3d 1387 (Fed. Cir. 2003)........................................................... 5

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005).......................................................... 11, 12

*Robinson v. GEICO Gen. Ins. Co.,*
    447 F.3d 1096, 1100 (8th Cir. 2006) .................................................... 2

*Waldorf v. Shuta,*
    142 F.3d 601 (3d Cir. 1998)................................................................ 3

**Other**

FED. R. CIV. P. 26(a)(2)(B) ..................................................................... 13, 15

FED. R. EVID. 702 ...........................................................................*passim*

## **INTRODUCTION**

ZymoGenetics seeks to exclude the testimony of three highly qualified scientific experts -- Drs. Capon, Kuriyan, and Ravetch -- who all offer relevant and reliable opinions in support of Bristol's noninfringement and invalidity defenses. Bristol respectfully submits this answering brief in support of its opposition to Defendants' Motion to Exclude.

ZymoGenetics' arguments are not related to a proper analysis of admissibility as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Additionally, ZymoGenetics conveniently ignores that its own experts provide opinions with the same elements that it alleges are improper in Bristol's experts' opinions. Ultimately, ZymoGenetics' only issue appears to be with the conclusions reached by Bristol's experts, all of which are well rooted in science and supported by peer reviewed publications and testimony from ZymoGenetics' own witnesses. ZymoGenetics does <u>not</u> present any evidence that demonstrates Drs. Capon, Kuriyan, and Ravetch are unqualified experts, use insufficient facts/data, use unreliable methods, or proffer irrelevant testimonies. Rather, ZymoGenetics simply makes baseless assertions designed to cloud the standard set forth in *Daubert* and discredit Bristol's experts -- none of which establishes a proper basis for exclusion under *Daubert*.

Regardless, any of ZymoGenetics' objections to Bristol's experts' conclusions are irrelevant to the question of admissibility because as the Supreme Court made clear in *Daubert*, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. Therefore, Bristol respectfully requests that the Court deny ZymoGenetics' Motion to Exclude.

## ARGUMENT

I.    **STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY.**

The admissibility of expert testimony is governed by Rule 702 of the Federal

Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

In order to ensure that expert testimony meets the requirements of Rule 702, the

district court is given a "gatekeeping" role whereby it ensures that the testimony "rests on a

reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. In other

words, testimony should be excluded when irrelevant or based on highly dubious methodology,

*e.g.*, "junk science". *See, e.g., Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir.

2006) ("Daubert provides a district court with the discretion necessary to close the courtroom

door to 'junk science' and to admit reliable expert testimony that will aid the trier of fact.")

(citation omitted).

*Daubert* discusses four non-exclusive factors to assess the reliability of expert

testimony. *Daubert*, 509 U.S. at 593-594. These four factors are: (1) whether an expert's theory

or technique can be tested; (2) whether the theory or technique has been subjected to peer review

and publication; (3) whether there is a known or potential rate of error associated with a

particular technique; and (4) whether the theory or technique is generally accepted in the

scientific community. *Id.*

The Supreme Court made clear that cross-examination and contrary evidence, <u>not</u> exclusion, are the normal ways to challenge scientific evidence:

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

*Id.* at 596 (citation omitted). Additionally, the admissibility of expert testimony rests solely on the principles and methods they used, not their conclusions, as "[t]he analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination." *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 807 (3d Cir. 1997) (citation omitted).

Courts in the Third Circuit have determined that Rule 702 "has a liberal policy of admissibility." *Id.* at 806 (*citing Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996)); *see, e.g.*, *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) ("We have interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility of expert testimony 'extends to the substantive as well as the formal qualifications of experts.'" (citations omitted)). As a result, there exists a "strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril*, 128 F.3d at 806 (*citing Holbrook*, 80 F.3d at 780).

The standard under Rule 702 is not intended to be a high one and certainly does not require a party "to prove their case twice -- they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) (emphasis in original).

3

## II.   BRISTOL'S EXPERTS' OPINIONS ADHERE TO THE REQUIREMENTS OF RULE 702.

Bristol's experts' opinions are in complete conformity with the requirements set forth under Rule 702. Drs. Capon, Kuriyan, and Ravetch are qualified experts who have offered relevant testimony supported by ample facts/data and reliable methods.

### A.   Bristol's Experts are Qualified Experts

Drs. Capon, Kuriyan, and Ravetch are qualified experts, as their resumes and expert disclosures make clear. (*See* Exh. 1,[1] *curriculum vitae* of Dr. Jeffrey V. Ravetch; Exh. 2, *curriculum vitae* of Dr. John Kuriyan; Exh. 3, *curriculum vitae* of Dr. Daniel J. Capon; Exh. 4, Expert Report of Dr. Jeffrey V. Ravetch Regarding Invalidity; Exh. 5, Expert Rebuttal Report of Dr. John Kuriyan Regarding Noninfringement; Exh. 6, Expert Report of Dr. Daniel J. Capon Regarding Invalidity). Each possesses substantial experience and training in the biological and chemical arts relating to fusion proteins.

In its attempt to have Bristol's experts' opinions excluded, ZymoGenetics makes no effort to address the qualifications of Bristol's experts and presents no evidence that would raise doubts about their expertise. ZymoGenetics does not have any legitimate issue with the actual qualifications of Bristol's experts in this litigation. This is expected given the extensive credentials of Drs. Capon, Kuriyan, and Ravetch. (*See* Exh. 1-3).

ZymoGenetics tries to confuse the issue, by stating since they would allegedly not disclose their own understanding of scientific technology they "lack[] . . . the 'scientific, technical, or other specialized knowledge'. . . ." (*See, e.g.*, D.I. 158, ZymoGenetics' Motion to Exclude Bristol's Experts, at 16). First, all of Bristol's experts are well qualified to provide the

---

[1] Citations to "Exh. ___" are to the Declaration of David M. Kelly filed contemporaneously herewith.

4

detailed opinions in their respective reports and these opinions would significantly assist the trier of fact. Second, ZymoGenetics ignores what makes an expert qualified: *their qualifications*. Whether they are qualified is <u>not</u> based on whether or not they allegedly disclose a particular opinion, but rather on their background, knowledge, and experience.

### B. The Opinions of Bristol's Experts are Relevant to Issues in This Litigation and Based Upon Ample Facts and Data.

Drs. Capon, Kuriyan, and Ravetch have provided disclosures and deposition testimonies that are relevant, and ZymoGenetics makes no argument and provides no evidence to the contrary. Similarly, ZymoGenetics' assertion that Bristol's experts do not offer opinions based on facts and data of the scientific technology is incorrect. Even a superficial review of their expert disclosures makes clear that Bristol's experts disclose their own opinions on the scientific technology in the case and that their opinions are based on ample facts and data.

**REDACTED**

ZymoGenetics appears to confuse not having "sufficient facts or data" with taking issue with the facts and data in an expert report. However, "[w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. . . . [The requirement of] 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (citing

Advisory Committee Note to Rule 702). Therefore, ZymoGenetics' mere disagreement with the facts contained in the expert reports of Drs. Capon, Kuriyan, and Ravetch does not provide a basis for exclusion of their opinions -- otherwise exclusion of experts would become the norm.

### C.    The Opinions of Bristol's Experts are Reliable

The opinions of Drs. Capon, Kuriyan, and Ravetch are reliable because they are based on the "methods and procedures of science" and not on "subjective belief or unsupported speculation". *See Daubert*, 509 U.S. at 590. ZymoGenetics does not explicitly question the reliability of Bristol's experts' opinions. Perhaps this is because there is no evidence to suggest any unreliability. As discussed *infra* Section III, ZymoGenetics appears to suggest that Bristol's experts' opinions are not reliable. But, ZymoGenetics fails to address any of the relevant considerations set forth by *Daubert*.

### REDACTED

## III.    ZYMOGENETICS FAILS TO ESTABLISH A BASIS UNDER *DAUBERT* FOR EXCLUSION OF BRISTOL'S EXPERTS' TESTIMONY.

ZymoGenetics fails to establish a basis for excluding any of Bristol's experts' testimony under the requirements of *Daubert*. To exclude the testimony of Bristol's experts under *Daubert*, ZymoGenetics must demonstrate that these experts are either not qualified as experts, did not base their opinions on facts/data, have irrelevant testimony, or have used unreliable methods. None of this has been demonstrated.

The only thing that ZymoGenetics establishes in its Motion to Exclude is that ZymoGenetics disagrees with the conclusions that Bristol's experts offer in their disclosures and deposition testimony. However, a disagreement over an expert's conclusions does not establish

a basis for exclusion under *Rule 702*. *See Daubert*, 509 U.S. at 595 ("[T]he focus must be solely on principles and methodologies, not on conclusions they generate."). Additionally, as noted below, ZymoGenetics conveniently ignores that its own experts provide opinions with the same elements that it alleges are improper in Bristol's experts' opinions. Accordingly, ZymoGenetics cannot credibly argue that Bristol's experts should be excluded.

**A.    Use of ZymoGenetics' Term Definitions is Not a Basis for Exclusion Under *Daubert.***

One of ZymoGenetics' primary contentions is that the testimonies of Drs. Capon, Kuriyan, and Ravetch are inadmissible under *Daubert* because they "are based on alleged legal arguments made by ZymoGenetics". ZymoGenetics' position is incorrect. ZymoGenetics mischaracterizes Bristol's experts' references to ZymoGenetics' positions.

**REDACTED**

Bristol's experts provide useful testimony that satisfies *Daubert* by "assist[ing] the trier of fact to understand the evidence or to determine a fact in issue". *Daubert*, 509 U.S. at 591 (citation omitted).

In fact, it is surprising that ZymoGenetics takes issue with Bristol's experts discussing ZymoGenetics' positions and definitions of claim terms, because ZymoGenetics' experts likewise refer to Bristol's positions in their disclosures.

**REDACTED**

Just as ZymoGenetics considered it appropriate for its own experts to note Bristol's positions, it is also perfectly appropriate for Bristol's experts to note ZymoGenetics' positions, explain scientific bases for them, and evaluate the scientific evidence of this case in light of them.

7

Bristol's experts refer to ZymoGenetics' positions for the purposes of discussing ZymoGenetics' claim term definitions. For example, ZymoGenetics' definition of the claim term "non-immunoglobulin" that it put forth in its communications with the European Patent Office during the prosecution of Application No. 8910087 is discussed by Bristol's experts.[2] (*See* D.I. 179, Bristol's Opening Claim Construction Brief, at 32-34). During the prosecution of this application, on March 11, 1993, in response to the Examiner's rejection, ZymoGenetics amended a claim by adding the term "non-immunoglobulin". ZymoGenetics also distinguished the T cell receptor ("TCR") from "non-immunoglobulin" peptides in an attempt to avoid the prior art raised by the Examiner. (*See* D.I. 179 at 33-34).

**REDACTED**

---

[2] This is significant because the patents-in-suit claim the benefit of Application No. 8910087 for a priority date of Jan. 18, 1989.

REDACTED

It is incomprehensible how ZymoGenetics can claim this testimony lacks "any basis in 'facts' and 'data' as required by Rule 702" and is inappropriate testimony that would not help triers of fact. Dr. Ravetch's testimony explains the scientific basis for how ZymoGenetics defined "non-immunoglobulin" and how this would support that CTLA4 is <u>not</u> a "non-immunoglobulin". This is exactly the sort of testimony that would assist the trier of fact in understanding the issues in this case.

This is true for each instance that Bristol's experts address ZymoGenetics' positions or term definitions. Bristol's experts refer to these positions to clarify the meaning of scientific terms that the trier of fact would not otherwise understand. This is not "basing an opinion on legal argument" but simply explaining, as an expert should, the scientific technology at issue in this case and, when relevant, noting how claims or prior art would be understood in a particular context.

### B.    ZymoGenetics has Contradictory Definitions of the Term "Non-Immunoglobulin", Not Bristol's Experts.

ZymoGenetics argues that Dr. Ravetch has two definitions for the term "non-immunoglobulin": one for noninfringement and one for invalidity. However, it is not Dr. Ravetch who has two definitions of the term "non-immunoglobulin", rather it is ZymoGenetics: (1) one during the prosecution of the priority application and (2) another during the present litigation.[4]

---

[3] *See, e.g.*, D.I. 157, Ex. 7 of Andre Decl. in support of ZymoGenetics' Claim Construction Brief.

[4] For a full discussion, *see* D.I. 179 at 31-36.

Dr. Ravetch noted that at the time of his opinion, claim construction had not yet been determined by the Court and he specifically reserved the right to revise his opinion based on the final claim construction. Given a lack of claim construction, Dr. Ravetch did nothing improper in using ZymoGenetics' definition of the term "non-immunoglobulin" as set forth in the prosecution of the priority application for a noninfringement analysis.

It is strange that ZymoGenetics takes issue with Bristol's expert's disclosure because ZymoGenetics' experts do exactly the same thing -- they rely directly on the definitions of the patentees.[5] It is difficult to understand why ZymoGenetics argues that Bristol's experts should be excluded under *Daubert*, but its experts should not.

Since the claims had not been construed by the Court at the time of Dr. Ravetch's report and deposition, it was also appropriate for Dr. Ravetch to use for his invalidity analysis a definition of the term "non-immunoglobulin" that ZymoGenetics must assert in order to claim infringement.

If ZymoGenetics finds it inappropriate for Dr. Ravetch to (1) use ZymoGenetics' previous definition of "non-immunoglobulin" for his noninfringement opinion and (2) use ZymoGenetics' current construction of the term "non-immunoglobulin" for his invalidity opinion, then ZymoGenetics is highlighting the exact issue that Bristol finds inappropriate -- ZymoGenetics' flip-flopping with respect to a key claim term. Additionally, if ZymoGenetics now argues that Dr. Ravetch's discussion of the term "non-immunoglobulin" has no basis in scientific fact, ZymoGenetics is admitting that it made representations with no basis in scientific

---

[5]

**REDACTED**

fact to the European Patent Office since Dr. Ravetch's discussion evaluates the arguments that ZymoGenetics made.

### C. What a Person of Ordinary Skill in the Art Understands in the Present Day is *Not* the Appropriate Standard.

ZymoGenetics partly bases its argument for exclusion of Bristol's experts on an inappropriate standard for an ordinary person skilled in the art. For example, ZymoGenetics argues that Dr. Ravetch's opinion "lacks any basis in 'facts'" based on its claim that "Dr. Ravetch does not state what his own understanding of 'non-immunoglobulin' is." (D.I. 158 at 4-5). To claim Dr. Ravetch's opinion "lacks any basis in 'facts'" based on the alleged failure to define the meaning of a term as it is understood today is simply inaccurate. (*See supra* Section II.B. at 5). More importantly, however, as ZymoGenetics acknowledges, what *is* relevant is what a person of ordinary skill in the art at the time of the invention understood, not what an expert's present day understanding is. (*See* D.I. 158 at 8 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005))). This context -- the person of ordinary skill in the art at the time of the invention -- is very important, and ZymoGenetics appears to ignore it for the purposes of seeking exclusion.

**REDACTED**

ZymoGenetics uses the same inappropriate standard in its attempt to exclude Dr. Capon's and Dr. Kuriyan's opinions. However, both of these experts also appropriately disclosed their own scientific understanding of these terms in the relevant context.

**REDACTED**

11

**REDACTED**

It is incorrect that ZymoGenetics concludes Bristol's experts' opinions "lack[] any basis in facts" when they, in fact, do define the terms as one of ordinary skill in the art would have understood them during the appropriate time frame.  Their opinions are appropriate by the measure that ZymoGenetics sets forth in its motion to exclude.  All of Bristol's experts define claim terms in an appropriate fashion pursuant to the Federal Rules of Evidence and case law: either based on how a person of ordinary skill at the time of an invention would or based on how the patentee defined those terms.  *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." (citation omitted)); *Hormone Research Found v. Genentech, Inc.*, 904 F.2d 1558, 1563 (Fed. Cir. 1990) ("It is a well-established axiom in patent law that a patentee is free to be his or her own lexicographer and thus may use terms in a manner contrary to or inconsistent with one or more of their ordinary meanings." (internal citations omitted)).

### D.    Bristol's Experts are Independent, Regardless, Independence is Irrelevant Under *Daubert.*

Drs. Capon, Kuriyan, and Ravetch have formulated independent opinions on the scientific matters in this case.  Regardless, ZymoGenetics' allegation that they are somehow not independent is irrelevant to an inquiry under *Daubert*.  The relevant inquiry under *Daubert* is whether a qualified expert can provide a relevant and reliable opinion.  *See Daubert*, 509 U.S. at 597.  Since, there is no question that Bristol's experts' opinions are relevant, by alleging that

they are not independent, ZymoGenetics must be alleging that Bristol's experts' opinions are therefore not reliable. However, this allegation is baseless.

Independence of opinions has nothing to do with reliability. If anything, quite the opposite of what ZymoGenetics suggests would be the case. The consistency between Bristol's experts in their evaluation of the science at issue would suggest their opinions are more reliable, not less. To have highly qualified experts agree on something can in no way raise a question as to reliability. Moreover, in evaluating a question of admissibility raised under *Daubert*, a court should look at the principles and methods used, not the conclusions reached. *See Daubert*, 509 U.S. at 595. ZymoGenetics' allegation relating to independence has nothing to do with showing that the "principles and methods" of Bristol's experts are unreliable, irrelevant, or not based on facts. As such, it is not an appropriate basis for a motion to exclude under *Daubert*.

## REDACTED

Therefore, ZymoGenetics' own disclosures are inconsistent with its position that Bristol's experts' opinions are "not objective or independent" because of some overlap in language. (*See* D.I. 158 at 20). Applying ZymoGenetics' measure of what constitutes an objective and independent expert opinion (*i.e.*, no overlap in language) would mean that ZymoGenetics' experts are also not objective and independent.[6]

---

[6] To the extent that ZymoGenetics attempts to suggest it is inappropriate for attorneys to assist in the drafting of expert reports, ZymoGenetics is incorrect. *See* FED. R. CIV. P. 26(a)(2)(B) advisory committee's note (1993) ("Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed [with certain experts] this assistance may be needed").

## REDACTED

13

E.      **Dr. Ravetch's Testimony on the Conception Date of the Patents-In-Suit is Admissible.**

The opinions put forth by Dr. Ravetch regarding the conception and reduction to practice are admissible because they are based on a thorough review of notebooks offered by ZymoGenetics' in support of their conception story as well as deposition testimony from the inventors.

In making its argument for exclusion of Dr. Ravetch's testimony on the date of conception of the patents-in-suit, ZymoGenetics lists a variety of scientific terms and states that Dr. Ravetch's testimony does not discuss all of those terms. However, ZymoGenetics fails to note that many of those terms are irrelevant to the issues of the present litigation and in no way affect the reliability of Dr. Ravetch's opinion.

**REDACTED**

Additionally, ZymoGenetics deposed Dr. Ravetch on May 20, 2008, shortly after its motion to exclude was filed.

**REDACTED**

**REDACTED**

14

F.    **ZymoGenetics' Reason for Why Bristol Retained Dr. Capon is Completely Irrelevant.**

ZymoGenetics' assertion that Bristol retained Dr. Capon simply "because he is a listed inventor on the '603, '335, '655, and '169 [prior art patents]" is baseless. (D.I. 158 at 21). Bristol fails to understand what ZymoGenetics is implying with this statement nor how such an implication would relate to ZymoGenetics' expert, Dr. Gascoigne, who is listed on prior art as well.[7] In fact, that Dr. Capon's patents are prior art to the patents-in-suit demonstrates precisely why Dr. Capon is well versed in the area of fusion proteins -- this expertise is exactly why Bristol asked Dr. Capon be an expert in this matter.[8] ZymoGenetics' implication regarding Bristol's intent in retaining Dr. Capon is completely irrelevant.

G.    **Dr. Capon's Opinion on Obviousness is Admissible.**

Dr. Capon's opinion on obviousness is admissible because it is based on a correct legal standard. The obviousness standard referred to by ZymoGenetics is appropriate only when prior art does not meet the threshold of being anticipatory. However, when a prior art reference is anticipatory, it also makes a patent obvious because "anticipation is the epitome of obviousness." *See Connell v Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) (citations omitted); *see also In re McDaniel*, 293 F.3d 1379, 1385 (Fed. Cir. 2002) ("It is well settled that 'anticipation is the epitome of obviousness.'") (citation omitted); *In re Baxter Travenol Labs*, 952 F.2d 388, 391 (Fed. Cir. 1992) ("[S]ince anticipation is the ultimate of obviousness, the subject matter of these claims is necessarily obvious . . . .") (internal citation omitted). Thus, there is no basis for exclusion of Dr. Capon's opinion on obviousness.

---

[7] *See* D.I. 158 at 2; *see also* Exh. 4 at ¶¶ 231-284.

[8] Dr. Capon is an inventor on more than 40 patents which relate to the generation and expression of a variety of proteins, in particular fusion proteins. (*See* Exh. 3 at 3-5).

## CONCLUSION

For the foregoing reasons, Bristol respectfully requests that this Court deny ZymoGenetics' Motion to Exclude the Testimony of Bristol's Experts.

OF COUNSEL:

Robert L. Baechtold
Scott K. Reed
Colleen Tracy
Ha Kung Wong
Christopher P. Borello
FITZPATRICK CELLA HARPER & SCINTO
30 Rockefeller Plaza
New York, N.Y. 10112
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

Dated: June 5, 2008

*Kelly E. Farnan*

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendant*
*Bristol-Myers Squibb Co.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2008, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF which will send notification of such filing to the following

and which has also been served as noted:

### BY HAND DELIVERY and E-MAIL

Philip A. Rovner
Potter, Anderson & Corroon
Hercules Plaza - 6th Floor
Wilmington, DE  19899

I hereby certify that on June 5, 2008, the foregoing document was sent to the following

non-registered participants in the manner indicted:

### BY E-MAIL

Paul J. Andre
King & Spalding, LLP
1000 Bridge Parkway
Suite 100
Redwood Shores, CA  94065

Kelly E. Farnan (#4395)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and which has also been served as noted:

### BY HAND DELIVERY

Philip A. Rovner
Potter, Anderson & Corroon
Hercules Plaza - 6th Floor
Wilmington, DE  19899

I hereby certify that on June 12, 2008, the foregoing document was sent to the following non-registered participants in the manner indicted:

### BY FEDERAL EXPRESS

Paul J. Andre
King & Spalding, LLP
1000 Bridge Parkway
Suite 100
Redwood Shores, CA  94065

Kelly E. Farnan (#4395)