# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ZYMOGENETICS, INC., a Washington
Corporation,

          Plaintiff,

    v.

BRISTOL-MYERS SQUIBB CO.,
a Delaware Corporation, and DOES 1
through 100,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 06-500-SLR

**PUBLIC VERSION**

---

### DECLARATION OF MEGHAN A. WHARTON IN SUPPORT OF
### ZYMOGENETICS, INC.'S OPPOSITION TO BRISTOL-MYERS SQUIBB CO.'S
### MOTION FOR SUMMARY JUDGMENT OF NO WILLFULNESS

OF COUNSEL:

Paul J. André
Lisa Kobialka
KING & SPALDING LLP
1000 Bridge Parkway
Suite 1000
Redwood City, CA 94065
(650) 590-0700

Dated: August 18, 2008
Public Version: August 25, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Plaintiff
ZymoGenetics, Inc.

I, MEGHAN WHARTON, declare:

1.    I am an attorney with the law firm of King & Spalding LLP, counsel of record for Plaintiff ZymoGenetics, Inc. I have personal knowledge of the facts set forth in this declaration and can testify competently to those facts.

2.    Attached hereto as Exhibit 1 is a true and correct copy of letter from Michael Kuran of ZymoGenetics, Inc. to Stephen McAndrew of Bristol-Myers Squibb Co. dated January 17, 2001, bearing Bates Nos. ZG 038157-59.

3.    Attached hereto as Exhibit 2 is a true and correct copy of pages 1, 6-7 and 22 of Bristol-Myers Squibb Company's Supplemental Objections and Responses to ZymoGenetics, Inc.'s Interrogatories Nos. 3, 4, 9, 13, 14, 17 and 18 dated September 17, 2007.

4.    Attached hereto as Exhibit 3 is a true and correct copy of pages 1 and 5-6 of Bristol-Myers Squibb Company's Objections and Responses to ZymoGenetics, Inc.'s Interrogatories Nos. (Nos. 15-16) dated April 16, 2007.

5.    Attached hereto as Exhibit 4 is a true and correct copy of pages 1, 6 and 8 of ZymoGenetics, Inc.'s First Set of Interrogatories to Bristol-Myers Squibb Co. dated October 31, 2006.

6.    Attached hereto as Exhibit 5 is a true and correct copy of excerpts from Bristol-Myers Squibb Company's Objections and Responses to ZymoGenetics, Inc.'s First Set of Interrogatories (Nos. 1-14) dated January 5, 2007.

7.    Attached hereto as Exhibit 6 is a true and correct copy of pages 1-5, 18-25 and 42-45 of the transcript of the October 4, 2007 telephone conference before United States Magistrate Judge the Honorable Mary Pat Thynge.

8.    Attached hereto as Exhibit 7 is a true and correct copy of pages 1-5 and 14-27 of the transcript of the November 8, 2007 telephone conference before United States Magistrate Judge the Honorable Mary Pat Thynge.

9.    Attached hereto as Exhibit 8 is a true and correct copy of pages 1-5 and 130-33 of the transcript of the June 29, 2008 hearing before United States District Court Judge the Honorable Sue L. Robinson.

10.    Attached hereto as Exhibit 9 is a true and correct copy of excerpts from the prosecution histories of ZymoGenetics' Patents Nos. 5,843,725 and 6,018,026 bearing Bates Nos. ZG000340-49, ZG000745, ZG001230-38 and ZG001646.

11.    Attached hereto as Exhibit 10 is a true and correct copy of pages 71-72 from the transcript of the deposition of Dr. David E. Smolin taken July 18, 2007.

12.    Attached hereto as Exhibit 11 is a true and correct copy of page 25 from Bristol-Myers Squibb Co.'s Form 10-K Annual Report for the fiscal year ended December 31, 2004.

13.    Attached hereto as Exhibit 12 is a true and correct copy of a Bristol-Myers Squibb Co. document entitled "List of INDs and BLAs, BMS-188667" bearing Bates No. BMS004275246.


I declare under penalty of perjury under the laws of the State of California and the United States that each of the above statements is true and correct.

Executed on August 18, 2008 in Redwood Shores, California.

_____
Meghan A. Wharton

# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZYMOGENETICS, INC., a<br>Washington Corporation,<br><br>              Plaintiff,<br><br>      v.<br><br>BRISTOL-MYERS SQUIBB CO.,<br>a Delaware Corporation, and<br>DOES 1 through 100,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 06-500-KAJ |

## ZYMOGENETICS, INC.'S
## FIRST SET OF INTERROGATORIES TO BRISTOL-MYERS SQUIBB CO.

Pursuant to Fed. R. Civ. P. 33, ZymoGenetics, Inc. ("ZymoGenetics") requests that Bristol-Myers Squibb Co. ("Bristol") answer the following interrogatories in accordance with the following Definitions and Instructions within thirty (30) days after the service of these interrogatories. These interrogatories shall be deemed continuing, and Bristol shall serve promptly upon ZymoGenetics supplemental answers in accordance with Federal Rule of Civil Procedure 26(e) and the Local Rules of the District of Delaware as Bristol acquires additional knowledge or information relating to these interrogatories.

**INTERROGATORY NO. 3:**

Describe in detail when and under what circumstances you first became aware of the existence of each of the Patents-in-Suit or the applications that resulted in each of the Patents-in-Suit, what actions you took upon becoming aware of each of the Patents-in-Suit or applications, the identity of all persons with knowledge of such facts and circumstances, and the identity of all documents reflecting such facts and circumstances.

**INTERROGATORY NO. 4:**

Separately for each BRISTOL FUSION PROTEIN PRODUCT, identify each person who was involved in the development, design, manufacture, FDA approval, marketing, distribution, sale, or licensing of such product, and describe in detail the role that each such person played in the development, design, manufacture, FDA approval, marketing, distribution, sale, or licensing of the compound.

**INTERROGATORY NO. 5:**

Identify the date of first design and date of first production for each BRISTOL FUSION PROTEIN PRODUCT.

**INTERROGATORY NO. 6:**

Describe in detail the steps taken to construct the vector(s) for each BRISTOL FUSION PROTEIN PRODUCT.

**INTERROGATORY NO. 7:**

Describe in detail the steps taken to express the protein(s) comprising BRISTOL FUSION PROTEIN PRODUCT.

**INTERROGATORY NO. 14:**

Identify all persons having knowledge of the facts that support your contentions in

your Answer and Counterclaims and, for each such person, state the entire factual basis for

that person's knowledge.


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. Andre                                    By _____
Perkins Coie LLP                                      Philip A. Rovner (#3215)
101 Jefferson Drive                                   Hercules Plaza
Menlo Park, California  94025-1114                    P. O. Box 951
(650) 838-4300                                        Wilmington, DE  19899
                                                      (302) 984-6000
Dated:  October 31, 2006                              provner@potteranderson.com
759190

*Attorneys for Plaintiff*
*ZymoGenetics, Inc.*

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 6

SHEET 1                                                                  1

1                  IN THE UNITED STATES DISTRICT COURT

2                  IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

ZYMOGENETICS, INC., a
4     Washington corporation,          :    CIVIL ACTION
                                        :
5                 Plaintiff,            :
                                        :
6            v                          :
                                        :
7     BRISTOL-MYERS SQUIBB CO., a       :
      Delaware corporation, and         :
8     DOES 1 THROUGH 100,               :
                                        :
9                 Defendants.           :    NO. 06-500 (***)

10                             - - -

11                        Wilmington, Delaware
             Thursday, October 4, 2007 at 11:00 a.m.
12                       TELEPHONE CONFERENCE

13                             - - -

14    BEFORE:   HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE

15                             - - -

      APPEARANCES:
16

17            POTTER ANDERSON & CORROON
              BY:  PHILIP A. ROVNER, ESQ.
18
                   and
19
              PERKINS COIE, LLP
20            BY:  PAUL J. ANDRE, ESQ.
                   (Menlo Park, California)
21
                        Counsel for Plaintiff
22

23

24
                             Brian P. Gaffigan
25                           Registered Merit Reporter

Thursday, October 4, 2007

SHEET 2

2

1  APPEARANCES: (Continued)

2          RICHARDS, LAYTON & FINGER, P.A.
3          BY:  FREDERICK L. COTTRELL, III, ESQ.

4              and

5          FITZPATRICK CELLA HARPER & SCINTO
6          BY:  CHRISTOPHER P. BORELLO, ESQ., and
7              COLLEEN TRACY, ESQ.
               (New York, New York)

8              Counsel for Defendants

9

10

11

12              - oOo -

13          P R O C E E D I N G S

14          (REPORTER'S NOTE:  The following telephone

15  conference was held in chambers, beginning at 11:00 a.m.)

16          THE COURT:  Good morning, this is Judge Thynge.

17          MR. COTTRELL:  Good morning, Your Honor.

18          MR. ROVNER:  Good morning, Your Honor,

19          THE COURT:  Who do I have on the line for

20  plaintiff, ZymoGenetics?

21          MR. ROVNER:  Good morning, Your Honor.  This is

22  Phil Rovner, and with me on the line is Paul Andre from

23  Perkins Coie.

24          MR. ANDRE:  Good morning, Your Honor.

25          THE COURT:  Good morning.

---

3

1          And who is on the line for Bristol-Myers?

2          MR. COTTRELL:  Good morning, Your Honor.  In

3  Wilmington, Fred Cottrell; and my co-counsel from the

4  Fitzpatrick firm are on, Colleen Tracy and Chris Borello.

5          THE COURT:  All right.  Good morning to all of

6  you.

7          I just want to remind you, counsel, before you

8  speak to please identify who you are for the purposes of the

9  record.

10          Now, I understand that there is a dispute

11  between the parties, the documents that I have reviewed are

12  found at DI 105 and 106.  I'm unaware of anything else.  Why

13  don't we get this addressed.  It appears to me it's

14  Bristol-Myers initiated this, so ...

15          MR. COTTRELL:  It is, Your Honor.  Fred

16  Cottrell.  With Your Honor's permission, I'll address it

17  and either Colleen or Chris may chime in.  Then if we get

18  through this quickly, there is one other issue not in the

19  letters that we would like to raise the parties have

20  discussed, but if Your Honor doesn't have time, we

21  understand.  We can do it another day.

22          The first issue, Your Honor, is fairly discrete.

23  As you know, on September 21st, you entered a modified

24  scheduling order in this case which set the end of fact

25  discovery for October 12th, and then the parties get in

---

4

1  expert reports, expert discovery, hopefully a Markman

2  hearing and a summary judgment hearing but, of course, Your

3  Honor put an asterisk there that that may move depending on

4  who the judge is at the time or who the judge isn't at that

5  time.

6          THE COURT:  Yes.

7          MR. COTTRELL:  So that is where we are,

8  procedurally.  And this discrete issue was simply when

9  Bristol-Myers should elect to identify any opinions of

10  counsel and to go forward with discovery on that to rebut

11  the charge of willfulness that Zymo has made.

12          What we could do, Your Honor, but we haven't

13  because we've tried to reach a compromise position with Zymo

14  through our meet and confer, what we could do is simply

15  move to bifurcate at the very least willfulness out, if not

16  damages.  Your Honor suggested that recently or raised that

17  possibility recently in our Honeywell/Universal case, and I

18  think the parties are actually submitting a few things in

19  that issue right now.

20          But by way of compromise, we said what we would

21  propose, what Bristol-Myers would propose is that after

22  the Markman decision comes out, then Bristol would decide

23  whether to rely on advice of counsel, produce and allow

24  discovery.  So this isn't a question of either we don't

25  think any discovery should ever go forward or we think it

---

5

1  should be bifurcated out.  We've tried to sort of find a

2  middle ground.

3          And the reasons, I think there are two or three

4  good reasons:

5          The first is we alluded to in our letter we

6  believe that Zymo's position on infringement really hasn't

7  been solidified yet.  It eventually will need to be,

8  particularly through expert reports, but we don't think it

9  has been solidified as much as it could.

10          The second, and Your Honor knows about this

11  case, I'm sure, and the court is acutely aware of this case,

12  the Seagate case came down from the Federal Circuit which

13  changed not only the test for willfulness but what kind of

14  discovery could be had.  It was in front of Judge Robinson

15  a few weeks ago and she said at least she is still wrestling

16  with what to do with it in the context of willfulness.

17          As we suggested in our letter, there is really a

18  two-part test now for willfulness.  The first is, really,

19  has there been a high likelihood of infringement shown?

20  And we won't know that until, of course, after Markman and

21  summary judgment, and even then we may not know that.  But

22  the point is before we get to the second part of the test,

23  which is the subjective views of the alleged infringer where

24  advice of counsel may be relevant, we sort of think it would

25  make sense under Seagate to wait until after Markman before

Thursday, October 4, 2007

SHEET 6

**18**

1    MR. COTTRELL: Your Honor, claim construction
2    briefing begins February of '08. And it says here rebuttal
3    briefs on March 21st, '08. Yes, that is claim construction.
4    And I think summary judgment is about parallel.
5    THE COURT: Okay.
6    MR. ANDRE: And, Your Honor, just one more
7    data point. This is Paul Andre. I'm sorry. One more data
8    point that I wanted to mention is that the clock is ticking
9    against us because our patent expires in two years from this
10   month.
11   THE COURT: All right.
12   MR. ANDRE: So, October of 2009 our patents
13   expire. And I know that the endgame here is to make the
14   clock tick as long as possible to get the things to the end
15   of their life before we ever get any decision on the merits
16   of the case. This is a very common issue that comes up in
17   patent infringement cases. I don't understand, if this is
18   something they wanted to raise in the scheduling order, we
19   were doing the scheduling order, we should have done so
20   then.
21   I actually do have a case in front of Judge
22   Sleet with Mr. Rovner and Judge Sleet does require such a
23   disclosure during fact discovery and then claim construction
24   occurs thereafter. So this is not something that I think
25   is out of the ordinary. I don't believe Seagate really

**19**

1    changed the timing of the reliance on opinion-of-counsel
2    defense.
3    THE COURT: Well, I do think Seagate changed
4    the standard and that could influence the timing, but I will
5    agree with you that Seagate was not, and nor was it expected
6    to be addressed to the ins and outs of discovery. And as I
7    said, that little footnote 5, I love when the Fed Circuit
8    does it, "We leave it to the future cases to further develop
9    the application of this standard," and give little or no
10   guidance and then just tell us later on when we're wrong.
11   But I do think that disclosure of the opinions of counsel
12   should happen. My expectation of that is it's not going to
13   be done within the time frame that you presently have for
14   fact discovery.
15   I also recognize that it is highly unlikely,
16   even under the new Seagate standard, I put it probably in
17   the less than one percentile, that a defendant realistically
18   could expect to have a willfulness argument be or lack of
19   willfulness be necessarily an argument for summary judgment
20   because it's potentially so factually intense under both the
21   objective and subjective inquiry.
22   Having said that, I expect the disclosure to
23   occur and the question is the timing of it. I don't look
24   at this as being such an absolute necessary matter. I
25   certainly also leave out there that if you want to tee up an

**20**

1    issue on bifurcation, you can. But I do feel that discovery
2    should occur on this. The discovery should occur on this
3    and have it completed roughly 45 days or so before the due
4    date begins for claim construction, the filing of claim
5    construction, in that time frame.
6    I recognize that there could be quite a bit of
7    discovery in this area. But then again, as I said before, I
8    don't think it's generally an appropriate issue for summary
9    judgment. So as I say, I can't remember in February when
10   the date is. I think you said mid February, so 45 days
11   would bring you close to the end of December or in that
12   time frame to get that discovery done and completed.
13   MR. ROVNER: Your Honor, this is Phil Rovner.
14   Thank you. I just wanted to get some clarification.
15   If discovery is to be done within some time I
16   guess in December, early December, when would the opinions
17   have to be disclosed? Assuming if discovery on willful
18   infringement would end on December 1, let's say, how much
19   beforehand would we be able to get those opinions?
20   THE COURT: I would suggest 45 days before that.
21   MR. ROVNER: So ...
22   THE COURT: I firmly believe the amount of
23   discovery that is necessary on this can be taken in that
24   time period.
25   MR. ROVNER: I guess 45 days would be some time

**21**

1    in mid-to-late October to give us time to complete discovery
2    around December 1.
3    THE COURT: If it falls like that.
4    MR. ROVNER: Okay.
5    THE COURT: As I said --
6    MR. ROVNER: Briefing on claim construction is
7    due on February 22nd, so we'll count 45 days back from
8    there. So basically the opinions have to be disclosed about
9    90 days prior to February 22nd.
10   THE COURT: Yes.
11   MR. ROVNER: We can work out the dates from
12   there, I think.
13   THE COURT: Yes, that's my rough. These are my
14   rough estimates that I'm giving. And my hope is that by
15   that time, you have got some more information, but the
16   decision will be made as to whether opinion of counsel will
17   be disclosed.
18   MR. COTTRELL: And, Your Honor, it's Fred
19   Cottrell. I'd certainly want to speak with my colleagues
20   about the possibility of bifurcation.
21   THE COURT: I understand.
22   MR. COTTRELL: If we do that, would you like
23   a formal process or more sort of along the lines I think
24   what we did or are doing in Honeywell, sort of smaller
25   submissions?

SHEET 7

22

1    THE COURT: Refresh my recollection, Fred, as to
2  what we're doing in that.
3    MR. COTTRELL: I think we almost had, not
4  letters but --
5    THE COURT: Well, like letter briefs.
6    MR. COTTRELL: -- page limited kind of
7  submissions. The number 10 sticks in my mind for page
8  limits.
9    THE COURT: It may be 10, 10. Did I give you
10  opening, answering and reply?
11    MR. COTTRELL: I think. All I have is the
12  amended scheduling order that was submitted yesterday, Your
13  Honor. I don't have the procedure for the bifurcation
14  issue.
15    THE COURT: And this is horrible, I can't
16  remember, but I do remember it being abbreviated.
17    MR. COTTRELL: Yes, I believe it --
18    THE COURT: And I would prefer an abbreviated
19  arrangement because I again feel the bifurcation issue is
20  something that can be handled in less rather than more.
21    MR. COTTRELL: I agree, Your Honor. So I would
22  like the opportunity to consult with my colleagues. And
23  then if we decide to do it, perhaps we can speak with Zymo
24  about at least a procedural schedule. I'm sure they'll
25  oppose to the substance of it.

23

1    THE COURT: That's fine. And if you can't come
2  to an agreement on that, get back in touch with me and we'll
3  have a little chat. And that is an issue that I can decide
4  without your consent because it's nondispositive.
5    MR. COTTRELL: Yes, Your Honor. That's my
6  understanding.
7    THE COURT: Yes, you still have the right to not
8  like it and take appropriate steps.
9    MR. ROVNER: Your Honor, Phil Rovner, I'm a
10  little concerned by what was mentioned. I don't want to
11  get into a situation where when we hang-up the phone that
12  when we try to put together an order saying that opinions
13  of counsel will be due by the middle to end of October that
14  they say, well, we're going to file a bifurcation motion so
15  we're not going to give that to you.
16    THE COURT: Well, and they may very well do
17  that, Phil. And what I promise you, if that happens, we may
18  end up having a tete-a-tete with everybody so you get an
19  oral opinion from me as to whether there is going to be
20  bifurcation by phone.
21    MR. ROVNER: Okay.
22    THE COURT: I will try to do it so that is
23  addressed earlier rather than later, so that is another
24  reason why I would probably prefer the abbreviated
25  submissions and expedited submissions.

24

1    MR. COTTRELL: We understand, Your Honor. Thank
2  you.
3    THE COURT: Okay. It can almost be done in
4  letter format, but I happen to prefer the double spacing for
5  reading purposes. It's just easier to read.
6    All right. Thank you, counsel.
7    MR. ROVNER: Your Honor?
8    THE COURT: Yes.
9    MR. ROVNER: There was one other issue.
10    THE COURT: I'm sorry. That's right, yes.
11    MR. ROVNER: We have the mediation rescheduling.
12    THE COURT: Oh, yes. That was another reason
13  why I had this.
14    Could you please get me my two calendars, the
15  one on the desk and the other one?
16    I know that the mediation was cancelled, and my
17  recollection was that it was cancelled at the request I
18  think of both sides.
19    MR. ROVNER: Actually, it was the defendant who
20  wanted it rescheduled.
21    THE COURT: Okay. I didn't know whether it
22  made any sense to reschedule it and the timing of when the
23  rescheduling should occur. I need some assistance from
24  counsel in that regard because I don't know necessarily
25  the interest level or the desire to mediate at this point

25

1  and when that desire may be more better evaluated to
2  determine.
3    MR. ANDRE: Your Honor, this is Paul Andre. I
4  believe what was the issue to postpone the last mediation
5  was that Bristol believed it would be better to complete
6  expert discovery prior to mediation. Therefore, it would
7  put mediation some time early in 2008, January of 2008.
8    THE COURT: All right.
9    MS. TRACY: Your Honor, this is Colleen Tracy
10  for Bristol-Myers Squibb. That was Bristol's thinking. You
11  get through expert discovery because we, as yet, do not
12  have ZymoGenetics' proposed claim construction or their
13  infringement contentions. We'd like to have that. And then
14  after the close of expert discovery on January 3rd, we'd
15  like to revisit mediation with Your Honor.
16    THE COURT: Well, do you want me to schedule?
17  Is it the wish for me to reserve a date now?
18    MS. TRACY: Yes, Your Honor. We would like to
19  set something aside in your calendar after the close of
20  expert discovery so that we can mediate, potentially.
21    THE COURT: Well, right now, Thursday, the 24th
22  of January is available on my calendar.
23    MS. TRACY: That is fine with Bristol, Your
24  Honor.
25    THE COURT: I was hoping maybe that gave enough

Thursday, October 4, 2007

SHEET 12

42

1  approximately 200,000 pages of documents for their 33(d)
2  response to our basis of infringement or noninfringement.
3  And it pretty much was, it was over 100-some-odd boxes of
4  documents that we can derive the answer from. So I just
5  want to make sure we are not precluded from raising that
6  issue, if this does come up down the road again.
7        THE COURT: Absolutely not. As I said to you,
8  it has application to both sides of this fence. It is not
9  unusual for me to see -- and I'm not saying it necessarily
10  happened in this case -- that exactly that happening, using Rule
11  33, using the rules of discovery by being able to produce
12  documents, essentially just dumping everything on the one
13  side and saying here, this answers the interrogatory. Go
14  find it. I don't think that is an appropriate way to
15  identify what documents are actually pertinent to the issue
16  that was asked in the interrogatory. And it depends on how
17  the interrogatory was, what the interrogatory asks, but at
18  the same time I generally do not find it appropriate. It's
19  buried some place.
20        MS. TRACY: Your Honor?
21        THE COURT: Yes, Colleen. Did you want to say
22  something?
23        MS. TRACY: I'm sorry, Your Honor. I have a
24  few quick points. First of all, I sort of agree with Mr.
25  Andre's assessment of Bristol's interrogatory responses,

43

1  and I think that we've specified, document by document, what
2  we contend supports our infringement contention and we have
3  strived to not do a dump on ZymoGenetics.
4        THE COURT: Well, let me put it this way,
5  Colleen. The issue is not before me right now so I'm not
6  addressing it. I think all Mr. Andre was asking me, Paul
7  was asking me was if they have some concerns about that, are
8  they precluded from raising it? And they're not precluded
9  from raising it. I'm just pointing out what the ruling is
10  today equally applies to both of you, that's all.
11        MS. TRACY: Understood, Your Honor. And the
12  last point I wanted to make is the witness that was lately
13  identified by Zymo with respect to reduction to practice
14  is going forward next week, so we would like ZymoGenetics'
15  specific citations, they're narrowing of the 5,000 pages of
16  laboratory notebooks that they cited prior to that
17  deposition.
18        THE COURT: Well, I think that would be
19  expected. And my understanding is that that had been done,
20  or had it not been done?
21        MR. ANDRE: Your Honor, the pages that are
22  between January 5th, 1988 and January 18th, 1989 will be
23  identified to counsel if not by close of tomorrow, then
24  first thing Monday morning.
25        THE COURT: And when is the deposition?

44

1        MR. ANDRE: It's next --
2        MS. TRACY: Thursday.
3        MR. ANDRE: -- Thursday.
4        THE COURT: It should give you enough time. It
5  really should because I know there is a boatload of people
6  on this phone call for these issues, and I'm sure there is a
7  boatload of people behind you looking up all this stuff and
8  reviewing it.
9        MR. ANDRE: Your Honor, that should be no
10  problem from Zymo's side. Thank you.
11        MS. TRACY: Yes. And if I understand Your
12  Honor's order, with respect to the witnesses that have
13  already been deposed, once ZymoGenetics has narrowed their
14  support, that documentary support, we'll look at that. And
15  if there are no depositions that are necessary, then that's
16  the way it will be, but there may be a need to take some
17  additional depositions.
18        THE COURT: And I expect both of you to be very
19  discriminatory in that regard.
20        MS. TRACY: Yes, Your Honor.
21        THE COURT: Okay?
22        MR. ANDRE: Thank you, Your Honor.
23        THE COURT: Thank you. I'll get an order out.
24  Oh, no. I will wait to hear from you, counsel, regarding
25  the mediation before I issue a new order on it. And it will

45

1  probably just be a brief order telling you the new date and
2  time and the new date for the submissions. And as I said,
3  what the court has ruled, the transcript will serve as an
4  order of the court and on the other issues that were ruled
5  on today.
6        (The attorneys respond, "Thank you, Your
7  Honor.")
8        THE COURT: All right. Have a great day;
9  weekend, too. Good-bye now.
10        (Telephone conference ends at 12:00 p.m.)

United States District Court - Honorable Mary Pat Thynge

# EXHIBIT 7

SHEET 1                                                          1

1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                           - - -

   ZYMOGENETICS, INC., a
4  Washington corporation,        :      CIVIL ACTION
                                  :
5              Plaintiff,          :
                                  :
6          v                      :
                                  :
7  BRISTOL-MYERS SQUIBB CO., a     :
   Delaware corporation, and      :
8  DOES 1 THROUGH 100,            :
                                  :
9          Defendants.            :      NO. 06-500 (***)

10                          - - -

11                    Wilmington, Delaware
              Thursday, November 8, 2007 at 4:00 p.m.
12                    TELEPHONE CONFERENCE

13                          - - -

14  BEFORE:   HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE

15                          - - -

   APPEARANCES:
16

17             POTTER ANDERSON & CORROON, LLP
               BY:  PHILIP A. ROVNER, ESQ.
18
                   and
19
               PERKINS COIE, LLP
20             BY:  PAUL J. ANDRE, ESQ.
                   (Menlo Park, California)
21
                   Counsel for Plaintiff
22

23

24
                        Brian P. Gaffigan
25                      Registered Merit Reporter

Thursday, November 8, 2007

SHEET 2                                                2

1    APPEARANCES: (Continued)

2         RICHARDS, LAYTON & FINGER, P.A.
3         BY: KELLY E. FARNAN, ESQ.

4              and

5         FITZPATRICK CELLA HARPER & SCINTO
          BY: CHRISTOPHER P. BORELLO, ESQ., and
6              COLLEEN TRACY, ESQ.
               (New York, New York)

7              Counsel for Defendants

8

9

10

11

12                        - oOo -

13             P R O C E E D I N G S

14             (REPORTER'S NOTE: The following telephone

15   conference was held in chambers, beginning at 4:00 p.m.)

16             THE COURT: Good afternoon, this is Judge

17   Thynge.

18             MS. FARNAN: Good afternoon, Your Honor.

19             MR. ROVNER: Good afternoon, Your Honor.

20             THE COURT: Who do I have on the line for

21   ZymoGenetics, please?

22             MR. ROVNER: Your Honor, for the plaintiff

23   ZymoGenetics, it's Phil Rovner; and Paul Andre is with me.

24             THE COURT: All right. And who is on the line

25   on behalf of Bristol-Myers?

---

3

1              MS. FARNAN: Your Honor, for Bristol-Myers, it's

2    Kelly Farnan. I also have on the line Colleen Tracy and

3    Chris Borello, my co-counsel.

4              THE COURT: I'm writing the names down. That's

5    why it's taking a little while.

6              Counsel, the reason I have you on the line is

7    to talk about the matter that you teed up to me concerning

8    bifurcation of the issue of willfulness and any potential

9    enhanced damage stemming from that, including the discovery

10   relating to that. And I'm assuming you are also asking for

11   bifurcation of damages basically, too. Is that correct?

12             MS. FARNAN: Your Honor, this is Kelly Farnan on

13   behalf of Bristol-Myers. In our application, I did not did

14   not ask for the bifurcation of damages.

15             THE COURT: It's just a bifurcation of

16   willfulness.

17             MS. FARNAN: Yes.

18             THE COURT: All right. Why don't you give me

19   your very brief thoughts on this. I realize that you had

20   the chance to sort of mini-brief it to me but give me the

21   best highlights of your discussion.

22             MS. FARNAN: Sure. Your Honor, on behalf of

23   Bristol-Myers, it's Kelly Farnan. And I think the best

24   highlights of our discussion are, of course, Seagate set

25   forth a new standard for willfulness and I think it's a

---

4

1    standard that lends itself to bifurcation. Not only did

2    the Federal Circuit set forth a new two-part test but in

3    that change, it changed the burden of proof to clear and

4    convincing.

5              Now, as a practical matter, willfulness may

6    never be an issue in this case, but if it does become an

7    issue, the Federal Circuit recognized that an alleged

8    infringer shouldn't be forced to make the decision of

9    whether to waive the attorney-client privilege unless

10   necessary and that bifurcation was an appropriate method

11   to deal with the timing of the disclosure of the

12   attorney-client privilege. In this case, if infringement

13   validity and willfulness all go to trial before the same

14   jury, you are having the jury consider certain issues on a

15   preponderance of the evidence standard and other issues

16   under clear and convincing. The courts have previously

17   bifurcated issues under the risk of jury confusion. I

18   think the risk is even greater added two separate burdens

19   of proof. So in light of this heightened standard,

20   Bristol-Myers does not believe all the issues should go to

21   trial all at once and that in conjunction with that, that

22   infringement and validity should go to trial first and that

23   Bristol should be entitled to wait to decide to waive the

24   attorney-client privilege until after infringement and

25   validity have been decided.

---

5

1              Now, ZymoGenetics has argued it would be a waste

2    of resources to conduct two trials but if infringement and

3    validity are decided, I think the parties can work out an

4    efficient way to, first of all, complete their discovery on

5    willfulness and then to present willfulness in a streamlined

6    way. The prejudice to Bristol-Myers of waiving the

7    attorney-client privilege, if unnecessary, I think would

8    outweigh any inconvenience.

9              I think those are the highlights of our argument

10   but if Your Honor has any questions, I'm certainly willing

11   to answer them.

12             THE COURT: All right. Thank you.

13             MR. ANDRE: Your Honor, this is Paul Andre

14   for ZymoGenetics. In a nutshell, our argument is based

15   on Bristol's logic, every single patent case would be

16   bifurcating willfulness, and that means you would have to

17   have two jury trials for every single case. Because the

18   Seagate case, it doesn't support the fact that you should

19   bifurcate. In fact, it is quite the opposite. It actually

20   states that the issue of willfulness will be determined by

21   the record developed in the infringement case so under

22   this idea of bifurcating, having two different jury trials,

23   two different juries, you just go back in and reprove

24   infringement once again to show the willfulness issue.

25   Seagate just doesn't propose bifurcating cases.

SHEET 5                                        14

1  except for maybe Chief Judge Sleet, there is a time, though,
2  for filing motions for summary judgment. That is consistent
3  among all the judges. That timing of those motions for
4  summary judgment are dependent upon and varies from judge to
5  judge.
6       But in the second, if everything is bifurcated,
7  the discovery on it and the trial, then you follow-up
8  with your infringement and validity trial with discovery
9  going on, whether there is willfulness, and then potentially
10 a round of briefing on whether plaintiff has met the
11 objectively reckless standard. And then maybe you get to
12 trial on the issue of willfulness. So explain to me if you
13 think that I'm completely wrong, that that type of process
14 may end up.
15      MS. FARNAN: So you are suggesting briefing on
16 the threshold and not necessarily a summary judgment of
17 willful infringement?
18      THE COURT: Well, I'm saying I can see more, I
19 can see summary judgment on a willful infringement, and I
20 have seen it enough times. I have seen the issue. But what
21 you are suggesting is there is going to be, it's going to be
22 in the second part. So we have done one round of summary
23 judgment motions, we've gone through a trial on these
24 points. We wait around, take some more discovery afterwards
25 and we end up with another round of summary judgment, and I

15

1  can see it potentially breaking down that the summary
2  judgments motions can be on willfulness totally or they
3  can be on willfulness, on whether or not the plaintiffs met
4  the objective standard.
5       MS. FARNAN: I think on whether or not
6  plaintiffs met the objective standard, I mean, I think
7  Mr. Andre's suggestion is that that should be dealt with in
8  the middle of trial so I think that is actually going to be
9  more onerous. This may make more sense to deal with that in
10 an orderly fashion because at some point that standard has
11 to be met and making that determination in the middle of
12 trial and determining whether or not to send evidence of
13 advice of trial in front of a jury, I think it's probably
14 more appropriate to do it more orderly. So I think while
15 that does slightly increase the court's workload, I think it
16 is maybe a more orderly way to proceed.
17      And with respect to summary judgment on
18 willfulness, you don't often see, or maybe you have seen a
19 lot, I haven't often seen summary judgments on willful
20 infringement but I guess that is sort of a problem with a
21 two-part test is to the extent that happens and I guess that
22 is something that the parties will have to be reasonable and
23 try not to bring too many issues before the court.
24      THE COURT: Paul, what type of discovery do you
25 see occurring in this case on willfulness?

16

1       MR. ANDRE: Well, Your Honor, I'm not sure.
2       THE COURT: Let's make an assumption there is an
3  opinion of counsel out there.
4       MR. ANDRE: Okay. You decide whether there is
5  opinion of counsel or not.
6       THE COURT: Let's assume there is opinion of
7  counsel. It's not only there is opinion of counsel, you
8  have to make the other assumption they will produce it.
9       MR. ANDRE: Okay.
10      THE COURT: They will waive attorney-client
11 privilege in that regard.
12      MR. ANDRE: Sure. I imagine what we would want
13 to know is what -- because as Knorr Bremse said, the opinion
14 of counsel is just one of many factors you look into to
15 determine the reasonableness of the company. And what we
16 would probably want to find out is what are they relying
17 upon, how they were going to use it, the opinion of counsel,
18 and any other affirmative defenses to that claim. We don't
19 know what those affirmative defenses are at that point on
20 discovery into it. If it was opinion of counsel, we
21 obviously would want to take discovery into the reliance
22 upon opinion of counsel, whether opinion of counsel was
23 competent or not. We'd have to look into it. If it was
24 competent, maybe we wouldn't need to take the deposition of
25 the attorney who prepared those opinions. We don't know.

17

1  If it is a competent opinion and we don't want to take that
2  discovery, we certainly would not do so. But you just don't
3  know. At this point, we're trying to read the tea leaves.
4       THE COURT: Well, I understand. Typically,
5  there is a game plan to some extent I would think with most
6  counsel when they are defending or prosecuting a case and
7  there is some idea, because you have got to have some game
8  plan on both sides because you are saying to the court we
9  think we can get the discovery done in X amount of time and
10 that is done.
11      MR. ANDRE: Yes.
12      THE COURT: So there has to be some thought
13 process in that regard, but you see potentially taking --
14 well, if they didn't have an opinion of counsel or more
15 importantly they don't waive it, what type of discovery
16 then do you see for willfulness?
17      MR. ANDRE: Well, I think what we want to see
18 is what measures the company took, whether they considered
19 the patents in trying to come up with a design-around. The
20 other factors, the Reed factors that the court can look at
21 that shows how a company is reasonable, and take discovery
22 into those issues. It probably would be very limited
23 discovery to be quite frank with you. We know that they had
24 knowledge of these patents prior to the litigation and we
25 have been in contact with them so we get that on record,

United States District Court - Honorable Mary Pat Thynge

Thursday, November 8, 2007

SHEET 6

18

```
1   obviously, and we would show that the people who designed
2   their product and continued to design working on this
3   product did so in a reckless manner, without regard for
4   our patent rights, our property rights.
5        THE COURT:  So there is discovery out there that
6   you could take to go to the objectively reckless standard.
7        MR. ANDRE:  I believe that is correct, yes.
8        THE COURT:  And what do you see the difference
9   is.  Beyond that, you may want to take the deposition of the
10  attorney who gave the opinion, who provided the opinion or
11  the attorneys who provided the opinion.
12       MR. ANDRE:  We would want to take the attorneys
13  who authored the opinion or opinions, depending on what the
14  opinion looks like.
15       THE COURT:  Sure.
16       MR. ANDRE:  It really would be dependent.  And
17  then what we really want to focus on, the reliance by the
18  company on those opinions, if there was a reliance.  If you
19  give an opinion, stick it in the file cabinet and never look
20  at it, it's not very effective for an affirmative defense
21  anyway.  I think at this point, what we would want to
22  pursue for down the road discovery would be anywhere from
23  two-to-four depositions would be my guess and some written
24  discovery on that.
25       THE COURT:  You're talking about if opinion of
```

19

```
1   counsel is produced.
2        MR. ANDRE:  Yes.
3        Your Honor, with respect to the administration,
4   obviously the Federal Circuit did the district courts no
5   favor when they said they leave it to future cases to
6   develop an application of this standard.  But that being
7   said, surely, the administration in a trial, judges can
8   easily bifurcate out a trial, let discovery go forth on it
9   and the lower record, there is no proof of infringement,
10  then you have to deal with it.  You can have the same jury
11  sit through the infringement part of the trial and the
12  willfulness afterwards.  That is one way of handling it if
13  it's an administration problem about being orderly.  I don't
14  think there is any such issue but that would just be one of
15  the alternatives.
16       As it sits now, if you were to say that every
17  willful infringement -- like I said, I have not been in a
18  patent case where willful infringement was not alleged, but
19  if you are going to bifurcate every single one of them, then
20  you do have to have two rounds of summary judgment.  You
21  have your team back up on discovery after trial and summary
22  judgment and then another trial to a new jury and I think
23  you will repeat a lot of information.
24       Even the Seagate says that the objective defined
25  risk is determined by the record in the infringement
```

20

```
1   proceedings.  So I think it would be very difficult for the
2   patentee to say that we're not putting forward the record,
3   the evidence of infringement so we had to go through the
4   whole infringement process again.
5        THE COURT:  Or the part of the record of the
6   infringement because you would have had the court just
7   basically telling the jury I would think at the bifurcated
8   portion on willfulness that they're supposed to work from
9   the assumption, which they would, that Bristol-Myers Squibb
10  was found infringing the patent or patents.  There had to
11  be some indication in that, something along those lines,
12  and to inform the jury either in preliminary instructions or
13  otherwise what their responsibilities are going to be and
14  deciding what issues they are supposed to focus their
15  attention on.
16       Okay.  From your standpoint, Kelly, and from, I
17  should say, Bristol-Myers' standpoint, for the willfulness
18  portion, for the objectively reckless standard, divorced
19  from opinion of counsel, what do you see as the type of
20  discovery, the type of responsibility on your part, that is,
21  the type of individuals that could potentially object to
22  that, or don't you know?  Subject to discovery.
23       MS. FARNAN:  I think Colleen and Chris have been
24  more involved with discovery and they can chime in if they
25  have anything additional, but at this point discovery is
```

21

```
1   closed, and I think the only thing that remains is whether
2   we waive the privilege and subject any attorney-client
3   privilege communications to discovery.  So I think from our
4   end, it would be fairly limited.
5        THE COURT:  Okay.  Well, I understand that,
6   but I don't know.  And this whole issue comes down to
7   the fact that Bristol-Myers does not want to be put in a
8   position of having to make a decision now about whether they
9   are going to give up an opinion of counsel and therefore
10  waive the attorney-client privilege.  To some extent, that
11  fear has been alleviated a little bit or concern has been
12  alleviated a little bit in the Seagate case because I do
13  believe that the Seagate case would have a tendency to
14  reverse or at least severely modify the Novartis/Eon, the
15  Eon/Novartis matter that was decided in this court and how
16  far this waiver goes.  It certainly restricted the waiver.
17       I also recognize that this case isn't scheduled
18  for trial.  Or if it is, it has trial dates that you may or
19  may not have.  This is not an ANDA case so it's going to be
20  tried in front of a jury.
21       I also recognize that all three judges, but,
22  in particular, Judge Robinson and Judge Farnan, have been
23  bifurcating more cases.  And I recently did what I call a
24  semi-bifurcation because the discovery had been essentially
25  completed and I bifurcated out willfulness and damages from
```

Thursday, November 8, 2007

SHEET 7

**22**

1  being presented to the jury in the go-around on liability.
2  Depending upon what the jury decided on the liability phase
3  would determine whether or not we would have any evidence
4  presented on willfulness and any evidence presented on
5  damages. So there has been a variety of approaches in this
6  court in an attempt to address the concerns expressed by
7  counsel.
8      What it sounds like to me, and you correct me
9  if I'm wrong, Paul, about this, the only thing that is left
10  on willfulness from your viewpoint I guess is the opinion
11  of counsel aspect and whether or not you get it now and/or
12  have you been prevented to take discovery on the other
13  willfulness aspects? You know, other evidence of
14  willfulness.
15      MR. ANDRE: At this point, Your Honor, they
16  have not provided us. We have had issues of wilfulness and
17  written discovery and there have been objections to that.
18  But mostly it has focused on the opinion of counsel.
19      THE COURT: Yes, but I mean I'm trying to find
20  out what are their objections to the other discovery, the
21  other discovery outside of opinion of counsel.
22      MR. ANDRE: Sitting here off the top of my head,
23  I don't know that there has been additional objections on
24  that discovery. We have been able to discover certain
25  issues that would factor into the showing of objective

**23**

1  recklessness. I think probably most of the discovery has
2  been denied on the idea of the opinion of counsel.
3      THE COURT: Okay.
4      MS. FARNAN: Your Honor, that is my
5  understanding as well. That it's only the waiver that is
6  left.
7      THE COURT: Yes, so that is really
8  Bristol-Myers' issue. Do we waive opinion of counsel now,
9  and the argument that you are making about willfulness being
10  bifurcated is really just focused on the opinion of counsel.
11      This is what my thought was. To the extent that
12  discovery was not allowed or prevented or reduced on the
13  initial objective argument that has to be obviously reached,
14  and that is the objective recklessness, I really do think
15  discovery should be allowed to go forward.
16      I am not inclined at this stage, and where this
17  case presently is, to necessarily bifurcate willfulness
18  because I'm not going to be the judge trying this case.
19  That's in part a concern that I have and any decision that
20  I make now may very well bind one of the District Court
21  judges on this bench or a new one that starts on this bench.
22      My thought was also that we hold off on
23  willfulness, hold off on opinion of counsel for now, but
24  I would allow it to be revisited, to allow additional
25  discovery to be taken. And I think on that point that my

**24**

1  decision on not bifurcating willfulness does not necessarily
2  bind next judge, that my decision on keeping the opinion of
3  counsel protected for now does not bind the next judge, and
4  both parties understanding and recognizing that they have
5  that. That ZymoGenetics would have the right to request to
6  get opinion of counsel and to be able to take some discovery
7  on it. As you have indicated, Paul, you think max probably
8  four depositions and some written discovery, not much, and
9  you revisit the issue of bifurcation because what has been
10  said to me is there has been some discovery taken on
11  willfulness at this point on the objective standard. I'm
12  saying that that discovery should be allowed to go forward
13  and get completed.
14      On the more subjective standard on opinion of
15  counsel, quite frankly, I'm punting it a bit because, like I
16  said, I'm not 100 percent certain what's Seagate's approach
17  and what solution is going to work with the Seagate opinion,
18  whether we stop it at the discovery level completely and
19  then face the prospect of bifurcating every case, which I
20  don't think is going to happen, whether we allow discovery
21  to go forward and do whatever we need to do at trial. But
22  to the extent that it is really left at the trial level,
23  that is going to affect some other judge's approach to this
24  trial and potentially limit that judge.
25      So those are my thoughts on this, so I make both

**25**

1  sides miserable.
2      MR. ANDRE: Your Honor, speaking for
3  ZymoGenetics, I think that is a reasonable approach.
4      THE COURT: Well, you are happy because you
5  don't have to give up your opinion of counsel right now.
6      MR. ANDRE: That is a reasonable approach, I
7  think. We can wait for the discovery until we determine
8  what judge is going to hear this case and get that judge's
9  preference on it who is administering the trial.
10      THE COURT: Yes. From your standpoint, I would
11  think, and then Bristol-Myers should be happy because they
12  don't have to give their opinion of counsel. They're not
13  happy I didn't bifurcate it but they didn't have to give up
14  opinion of counsel.
15      MS. FARNAN: Your Honor, of course we're happy
16  we don't have to give it up now. I just want to be clear,
17  it's that we're going to hold off until there is another
18  judge so discovery on that portion is stayed.
19      THE COURT: That is basically what it is, but I
20  don't want one side or the other to argue, well, gee,
21  discovery has now passed. I am carving this out because any
22  judge who is going to get this is going to potentially pick
23  a trial date. That date is going to be picked some time in
24  the future. There is usually enough time to get this type
25  of discovery, and I don't believe there is that much, on the

United States District Court - Honorable Mary Pat Thynge

SHEET 8

26

1  more subjective part of the analysis done in fairly short
2  order, in fairly easy order.
3           MS. FARNAN:  Your Honor, this is Kelly Farnan.
4  Just to be clear, our position would be on the objective
5  portion, that that has been completed and what would be left
6  to be decided later would be our waiver and the discovery on
7  that.
8           THE COURT:  I'm not certain about that because,
9  like I said, I haven't seen the discovery, Kelly, but to the
10  extent it hasn't been responded or hasn't been finished up,
11  I want that to be completed because I think when your motion
12  was filed, or when it first was discussed -- the motion was
13  filed on October 15th.  I can't remember when we had our
14  first discussion, October 4th.  Was discovery closed at
15  that time?
16           MS. FARNAN:  Discovery closed October 12th.
17           THE COURT:  Okay.  So between the time the issue
18  was raised and the time it's been addressed, discovery is
19  closed.
20           MS. FARNAN:  That's correct.
21           THE COURT:  So there could be some.  I don't
22  know if there are any other points but that is, to me,
23  extremely limited in any event.
24           MS. FARNAN:  Understood.
25           THE COURT:  Okay.  So I'm not going to decide it

27

1  should be bifurcated.  I really do have a concern that
2  Seagate or its progeny, if there are going to be any progeny
3  from it -- because I know we're not going to get any more
4  direction from the Fed Circuit on how to try to manage our
5  trials or our pretrial matters, because I don't think they
6  really know how to give us any advice on that for the most
7  part -- I just don't want to see every case now subject to
8  bifurcation because of Seagate.  I clearly don't believe
9  that was Seagate's intent but I do think that bifurcation is
10  appropriate and I still think it's a discretionary matter
11  for the court, particularly the trial judge.
12           Okay.  Thank you.
13           MR. ANDRE:  Thank you, Your Honor.
14           THE COURT:  Thank you very much.
15           MS. FARNAN:  Thank you, Your Honor.
16           THE COURT:  Take care now.  Good-bye.  Have a
17  great weekend, all.
18           (Telephone conference ends at 4:37 p.m.)
19
20
21
22
23
24
25

# EXHIBIT 8

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 9



EXPRESS MAIL NO. EH314450612US

I hereby certify that this correspondence is being
deposited with the United States Postal Service as
Express Mail #EH314450612US in an envelope addressed
to: Box Patent Application, Assistant Commissioner
for Patents, Washington, D. C.  20231 on 11-26-97.

TOWNSEND and TOWNSEND and CREW

By _Kim M. Soplen_

PATENT
Attorney Docket No. 13952A-005321US

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of

Andrzej Z. Sledziewski,
Lillian A. Bell, and
Wayne R. Kindsvogel

Serial No.: Unassigned

Parent Serial No. 08/477,329

Filed: Herewith
Parent Filed: June 7, 1995

For: METHODS OF PRODUCING
SECRETED RECEPTOR ANALOGS
AND BIOLOGICALLY ACTIVE
DIMERIZED POLYPEPTIDE
FUSIONS

Examiner:  Unassigned
Parent Exr: C. Kaufman

Art Unit:  Unassigned
Parent Art Unit: 1812

INFORMATION DISCLOSURE
STATEMENT

Box Patent Application
Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Applicants direct the Examiner's attention to the
references below, also listed on the accompanying Form PTO-
1449.  This application is a divisional and relies, under 35
U.S.C. § 120, on the earlier filing date of prior application
USSN 08/477,329, filed on June 7, 1995; which is a
continuation of USSN 08/180,195, filed January 11, 1994,
issued as U.S. Patent No. 5,567,584; which is a file wrapper
continuation of USSN 07/634,510, filed December 27, 1990;
which is a continuation-in-part of USSN 07/347,291, filed May
2, 1989, issued as U.S. Patent No. 5,155,027; which is a

ZG 000340

continuation-in-part of USSN 07/146,877, filed January 22, 1988, now abandoned. The references listed on the attached form PTO-1449 were submitted to and/or cited by the Office in these prior applications and, therefore, are not required to be provided in the present application pursuant to 37 CFR 1.98(d).

The following U.S. Patents are set forth below:

U.S. Patent No. 4,766,073, issued 8/23/88
U.S. Patent No. 4,599,311, issued 7/8/86
U.S. Patent No. 4,816,567, issued 3/28/89
U.S. Patent No. 4,816,397, issued 3/28/89
U.S. Patent No. 4,474,893, issued 10/2/84
U.S. Patent No. 4,761,371, issued 8/2/88
U.S. Patent No. 5,116,964, issued 5/26/92
U.S. Patent No. 5,015,571, issued 5/14/91

The following foreign patent publications are set forth below:

EP 173 494, published 3/5/86
WO 86/01533, published 3/13/86
EP 088 994, published 9/21/83
EP 239 400, published 9/30/87
EP 162 319, published 11/27/85
EP 171 496, published 2/19/86
EP 256 654, published 2/24/88
EP 315 062, published 5/10/89
EP 116 201, published 8/22/84
EP 120 694, published 10/3/84
EP 327 369 A2, published 8/9/89
EP 244 221 A1, published 11/4/87
WO 90/06953, published 6/28/90

The following articles are set forth below:

Kuwana et al., *Biochemical and Biophysical Research Communications* 149(3): 960-968, 1987.

Yarden et al., *Nature* 323:226-232, 1986.

2

ZG 000341

Hart et al., Science 240:1529-1531, 1988.

Escobedo et al., Science 240:1532-1534, 1988.

Heldin et al., EMBO J. 7:1387-1393, 1988.

Radeke et al., Nature 325:593-597, 1987.

Ebina et al., Cell 40:747-758, 1985.

Rubin et al., J. Immun. 135:3172-3177, 1985.

Ellis et al., J. Cell Biol.150:14a, 1987.

Smith et al., Science 238:1704-1707, 1987.

Livneh et al., J. Biol. Chem. 261:12490-12497, 1986.

Boni-Schnetzler and Pilch, Proc. Natl. Acad. Sci. USA 84:7832-7836, 1987.

Claesson-Welsh et al., Mol. Cell. Biol. 8:3476-3486, 1988.

Ullrich et al., Nature 309:418-425, 1984.

Ullrich et al., Nature 313:756-761, 1985.

Derynck et al., Nature 316:701-705, 1985.

Loh et al., Cell 33:85-93, 1983.

Honjo et al., Cell 18:559-568, 1979.

Alber and Kawasaki, J. Mol. Appl. Genet. 1:419-434, 1982.

Russell et al., Nature 304:652-654, 1983.

Grosschedl and Baltimore, Cell 41:885-897, 1985.

Hieter et al., Cell 22:197-207, 1980.

Treiger et al., J. Immunol. 136:4099-4105, 1986.

Roth et al., J. Cell. Biol. 102:1271-1283, 1986.

Riedel et al., Science 236:197-200, 1987.

Riedel et al., Nature 324:68-70, 1986.

Gascoigne et al., Proc. Natl. Acad. Sci. USA 84:2936-2940, 1987.

Maddon et al., Cell 47:333-348, 1986.

Maddon et al., Cell 42:93-104, 1985.

3

ZG 000342

Capon et al., Nature 337:525-531, 1989.

Wood et al., Nature 314:446-449, 1985.

Carlson et al., Mol. Cell. Biol. 3:439-447, 1983.

Marx, Science 229:455-456, 1985.

Neuberger et al., Nature 312:604-609, 1984.

Oi and Morrison Biotechniques 4:214-221, 1986.

Bailon et al., Bio/Technology 5:1195-1198, 1987.

Ballou et al., J. Biol. Chem. 255:5986-5991, 1980.

Munro and Pelham, EMBO J. 3:3087-3093, 1984.

von Heijne, Nucl Acids Res. 14:4683-4690, 1986.

von Heijne, Eur. J. Biochem. 133:17-21, 1983.

Beggs, Nature:104-108, 1978.

Clarke et al., Meth. Enzym. 68:436-442, 1979.

Struhl et al., Proc. Natl. Acad. Sci. USA 76:1035-1039, 1979.

Broach et al., Gene 8:121-133, 1979.

Mariuzza and Winter, J. Biol. Chem. 264:7310-7316, 1989.

Gronwald et al., Proc. Natl. Acad. Sci. USA 85:3435-3439, 1988.

Riedel et al., Protein Engineering 1(3):237, 1987.

It is respectfully requested that the cited information be expressly considered during the prosecution of this application, and the references be made of record therein and appear among the "references cited" on any patent to issue therefrom.

Applicants believe that their invention as claimed is patentable over the above references taken alone or in any combination. However, Applicants reserve the right to demonstrate that their claimed invention was made prior to any

4

ZG 000343

one or more of the above-identified references. No inference should be drawn as to the pertinence of the references based on the order in which they are presented.

Applicants respectfully request that the Examiner review the foregoing references to make her own determination of the patentability of the present invention and that the references be made of record in the file of this application.

Although no fee is believed to be due, the Commissioner is hereby authorized to charge any fees necessitated by this transmittal to Townsend and Townsend Deposit Account No. 20-1430.

Respectfully submitted,

Date: November 26, 1997    By: _____
                               Jeffrey J. King
                               Reg. No. 38,515

TOWNSEND and TOWNSEND and CREW LLP
Two Embarcadero Center, 8th Floor
San Francisco, CA  94111-3834
(206) 467-9600

JJK/kg
Enc:  PTO-1449

1:\13952\53\2-1-IDS

5

ZG 000344

FILE COPY

| FORM PTO-1449 (Modified)<br>Page 1 of 5<br>LIST OF PATENTS AND<br>PUBLICATIONS FOR APPLICANT'S<br>INFORMATION DISCLOSURE<br>STATEMENT | Attorney Docket<br>13952A-005321US | EXPRESS MAIL<br>NO.<br>EH314450612US |
|---|---|---|
| | Applicants<br>Andrzej Z. Sledziewski et al. | 08/980,400  #4 |
| | Filing Date<br>November 26, 1997 | Group 1646<br>Not Assigned |

REFERENCE DESIGNATION*          U.S. PATENTS

| Examiner<br>Initial | * | Document No. | Date | Name | Class | Sub-<br>Class |
|---|---|---|---|---|---|---|
| claul | AA | 4,766,073 | 8/23/88 | Murray et al. | 435 | 172.3 |
| | AB | 4,599,311 | 7/8/86 | Kawasaki | 435 | 71 |
| | AC | 4,816,567 | 3/28/89 | Cabilly et al. | 530 | 387 |
| | AD | 4,816,397 | 3/28/89 | Boss et al. | 435 | 68 |
| | AE | 4,474,893 | 10/2/84 | Reading | 436 | 547 |
| | AF | 4,761,371 | 8/2/88 | Bell et al. | 435 | 68 |
| | AG | 5,116,964 | 5/26/92 | Capon et al. | 536 | 27 |
| CMr | AH | 5,015,571 | 5/14/91 | Niman et al. | 435 | 7.92 |

FOREIGN PATENT DOCUMENTS

| Examiner<br>Initial | * | Document No. | Date | Country | Trans-<br>lation<br>? | Class |
|---|---|---|---|---|---|---|
| Cly | AI | EP 173 494 | 3/5/86 | EPO | | |
| | AJ | WO 86/01533 | 3/13/86 | PCT | | |
| | AK | EP 088 994 | 9/21/83 | EPO | | |
| | AL | EP 239 400 | 9/30/87 | EPO | | |
| Cln | AM | EP 162 319 | 11/27/85 | EPO | | |

OTHER ART (INCLUDING AUTHOR, TITLE, DATE, PERTINENT PAGES, ETC.)

| | AN | Kuwana et al., _Biochemical and Biophysical Research Communications_ 149(3): 960-968, 1987. |
|---|---|---|
| Cln | AO | Yarden et al., _Nature 323_:226-232, 1986. |
| | AP | Hart et al., _Science 240_:1529-1531, 1988. |
| Cln | AQ | Escobedo et al., _Science 240_:1532-1534, 1988. |

| EXAMINER Clair M. Earl | DATE CONSIDERED 9/24/98 |
|---|---|

Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP
609; Draw line through citation if not in conformance **and** not considered. Include a copy of this
form with next communication to Applicant.

ZG 000345

| FORM PTO-1449 (Modified) Page 2 of 5 LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | Attorney Docket No. 13952A-005321US | Serial No. Not Assigned 08/980,400 |
|---|---|---|
| | Applicants Andrzej Z. Sledziewski et al. | |
| | Filing Date November 26, 1997 | Group 1646 Not Assigned |

### REFERENCE DESIGNATION*    U.S. PATENTS

| Examiner Initial | * | Document No. | Date | Name | Class | Sub-Class |
|---|---|---|---|---|---|---|
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initial | * | Document No. | Date | Country | Translation? | Class |
|---|---|---|---|---|---|---|
| Clur | AR | EP 171 496 | 2/19/86 | EPO | | |
| | AS | EP 256 654 | 2/24/88 | EPO | | |
| | AT | EP 315 062 | 5/10/89 | EPO | | |
| | AU | EP 116 201 | 8/22/84 | EPO | | |
| | AV | EP 120 694 | 10/3/84 | EPO | | |
| | AW | EP 327 369A2 | 8/9/89 | EPO | | |
| | AX | EP 244 221A1 | 11/4/87 | EPO | | |
| Clu | AY | WO 90/06953 | 6/28/90 | PCT | | |

### OTHER ART (INCLUDING AUTHOR, TITLE, DATE, PERTINENT PAGES, ETC.)

| | | |
|---|---|---|
| Clu | AZ | Heldin et al., EMBO J. 7:1387-1393, 1988. |
| | BA | Radeke et al., Nature 325:593-597, 1987. |
| | BB | Ebina et al., Cell 40:747-758, 1985. |
| ah | BC | Rubin et al., J. Immun. 135:3172-3177, 1985. |
| Clu | BD | Ellis et al., J. Cell Biol. 150:14a, 1987. |
| Clu | BE | Smith et al., Science 238:1704-1707, 1987. |
| Clu | BF | Livneh et al., J. Biol. Chem. 261:12490-12497, 1986. |

| EXAMINER    Clau M Lef | DATE CONSIDERED    9/24/98 |
|---|---|

Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include a copy of this form with next communication to Applicant.

ZG 000346

| FORM PTO-1449 (Modified). Page 3 of 5 LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | Attorney Docket No. 13952A-005321US | Serial No. Not Assigned | 08/980,400 |
|---|---|---|---|
| | Applicants Zndrzej Z. Sledziewski et al. | | 08/980,400 |
| | Filing Date November 26, 1997 | Group 1646 Not Assigned | |

**REFERENCE DESIGNATION*    U.S. PATENTS**

| Examiner Initial | * | Document No. | Date | Name | Class | Sub-Class |
|---|---|---|---|---|---|---|
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initial | * | Document No. | Date | Country | Translation? | Class |
|---|---|---|---|---|---|---|
| | | | | | | |

**OTHER ART (INCLUDING AUTHOR, TITLE, DATE, PERTINENT PAGES, ETC.)**

| | | |
|---|---|---|
| _Cu_ | BG | Boni-Schnetzler and Pilch, _Proc. Natl. Acad. Sci. USA_ 84:7832-7836, 1987. |
| | BH | Claesson-Welsh et al., _Mol. Cell. Biol._ 8:3476-3486, 1988. |
| | BI | Ullrich et al., _Nature_ 309:418-425, 1984. |
| | BJ | Ullrich et al., _Nature_ 313:756-761, 1985. |
| | BK | Derynck et al., _Nature_ 316:701-705, 1985. |
| | BL | Loh et al., _Cell_ 33:85-93, 1983. |
| | BM | Honjo et al., _Cell_ 18:559-568, 1979. |
| | BN | Alber and Kawasaki, _J. Mol. Appl. Genet._ 1:419-434, 1982. |
| | BO | Russell et al., _Nature_ 304:652-654, 1983. |
| | BP | Grosschedl and Baltimore, _Cell_ 41:885-897, 1985. |
| | BQ | Hieter et al., _Cell_ 22:197-207, 1980. |
| | BR | Treiger et al., _J. Immunol._ 136:4099-4105, 1986. |
| _Cu_ | BS | Roth et al., _J. Cell. Biol._ 102:1271-1283, 1986. |

| EXAMINER _Clau M. Kal_ | DATE CONSIDERED 9/24/98 |
|---|---|

Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include a copy of this form with next communication to Applicant.

ZG 000347

| FORM PTO-1449 (Modified)<br>Page 4 of 5<br>LIST OF PATENTS AND<br>PUBLICATIONS FOR APPLICANT'S<br>INFORMATION DISCLOSURE<br>STATEMENT | Attorney Docket c.<br>13952A-005321US | Serial No.<br>Not Assigned |
|---|---|---|
| | Applicants<br>Andrzej Z. Sledziewski et al. | 6' |
| | Filing Date<br>November 26, 1997 | Group 1696<br>Not Assigned |

### REFERENCE DESIGNATION*    U.S. PATENTS

| Examiner<br>Initial | * | Document No. | Date | Name | Class | Sub-<br>Class |
|---|---|---|---|---|---|---|
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner<br>Initial | * | Document No. | Date | Country | Trans-<br>lation? | Class |
|---|---|---|---|---|---|---|
| | | | | | | |

### OTHER ART (INCLUDING AUTHOR, TITLE, DATE, PERTINENT PAGES, ETC.)

| Examiner Initial | * | Citation |
|---|---|---|
| *(initialed)* | BT | Riedel et al., _Science 236_:197-200, 1987. |
| | BU | Riedel et al., _Nature 324_:68-70, 1986. |
| | BV | Gascoigne et al., _Proc. Natl. Acad. Sci. USA 84_:2936-2940, 1987. |
| | BW | Maddon et al., _Cell 47_:333-348, 1986. |
| | BX | Maddon et al., _Cell 42_:93-104, 1985. |
| | BY | Capon et al., _Nature 337_:525-531, 1989. |
| | BZ | Wood et al., _Nature 314_:446-449, 1985. |
| | CA | Carlson et al., _Mol. Cell. Biol. 3_:439-447, 1983. |
| | CB | Marx, _Science 229_:455-456, 1985. |
| | CC | Neuberger et al., _Nature 312_:604-609, 1984. |
| *(initialed)* | CD | Oi and Morrison _Biotechniques 4_:214-221, 1986. |

| EXAMINER *Claire M. Kaufman* | DATE CONSIDERED<br>9/24/98 |
|---|---|

Examiner: Initial if reference considered, whether or not citation is in
conformance with MPEP 609; Draw line through citation if not in conformance
and not considered. Include a copy of this form with next communication to
Applicant.

ZG 000348

| FORM PTO-1449 (Modified) Page 5 of 5 LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT | Attorney Docket No. 13952A-005321US | Serial No. ~~Not Assigned~~ |
|---|---|---|
| | Applicants Andrzej Z. Sledziewski et al. | |
| | Filing Date November 26, 1997 | Group 646 ~~Not Assigned~~ |

**REFERENCE DESIGNATION\***                **U.S. PATENTS**

| Examiner Initial | * | Document No. | Date | Name | Class | Sub-Class |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

OTHER ART (INCLUDING AUTHOR, TITLE, DATE, PERTINENT PAGES, ETC.)

| Examiner Initial | | |
|---|---|---|
| *CW* | CD | Bailon et al., _Bio/Technology_ 5:1195-1198, 1987. |
| | CE | Ballou et al., _J. Biol. Chem._ 255:5986-5991, 1980. |
| | CF | Munro and Pelham, _EMBO J._ 3:3087-3093, 1984. |
| | CG | von Heijne, _Nucl Acids Res._ 14:4683-4690, 1986. |
| | CH | von Heijne, _Eur. J. Biochem._ 133:17-21, 1983. |
| | CI | Beggs, _Nature_:104-108, 1978. |
| *Cw* | CJ | Clarke et al., _Meth. Enzym._ 68:436-442, 1979. |
| *CWk* | CK | Struhl et al., _Proc. Natl. Acad. Sci. USA_ 76:1035-1039, 1979. |
| *CWk* | CL | Broach et al., _Gene_ 8:121-133, 1979. |
| *Cw* | CM | Mariuzza and Winter, _J. Biol. Chem._ 264:7310-7316, 1989. |
| | CN | Gronwald et al., _Proc. Natl. Acad. Sci. USA_ 85:3435-3439, 1988. |
| *Cw* | CO | Riedel et al., _Protein Engineering_ 1(3):237, 1987. |

| EXAMINER _Claire M. Lee_ | DATE CONSIDERED _9/24/98_ |
|---|---|

Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include a copy of this form with next communication to Applicant.

I:\13952\53\2-1-1449.PTO

ZG 000349

Substitute for form 1449A/PTO

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**

*(Use as many sheets as necessary)*

Complete if Known

| | |
|---|---|
| Application Number | Unknown |
| Filing Date | Even Date Herewith |
| First Named Inventor | Sledziewski, Andrzej |
| Group Art Unit | Unknown |
| Examiner Name | Unknown |

Sheet 1 of 1

Attorney Docket No: 985.012USX

### US PATENT DOCUMENTS

| Examiner Initial* | USP Document Number | Publication Date | Name of Patentee or Applicant of cited Document | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| RBK | US-5,336,603 | 08/09/1994 | Capon, Daniel J., et al. | 435 | 69.7 | 08/26/1992 |
| RBK | US-5,565,335 | 10/15/1996 | Capon, Daniel J., et al. | 435 | 64.7 | 05/02/1994 |
| RBK | US-6,004,781 | 12/21/1999 | Seed, Brian | 435 | 69.7 | 02/04/1994 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials** | Foreign Document No | Publication Date | Name of Patentee or Applicant of cited Document | Class | Subclass | T² |
|---|---|---|---|---|---|---|
| | | | | | | |

### OTHER DOCUMENTS -- NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No ¹ | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T² |
|---|---|---|---|
| RBK | | ELLIS, LELAND, et al., "Linking functional domains of the human insulin receptor with the bacterial aspartate receptor", Proc. Natl. Acad. Sci. USA, Vol. 83, (November 1986), pp. 8137-8141 | |
| RBK | | GASCOIGNE, NICHOLAS R., et al., "Secretion of a chimeric T-cell receptor-immunoglobulin protein", Proc. Natl. Acad. Sci., Vol. 84, (May 1987), pp. 2936-2940 | |
| RBK | | RIEDEL, HEIMO, et al., "A chimeric, ligand-binding v-erbB/EGF receptor retains transforming potential", Science, Vol. 236,(April 10, 1987), pp. 197-200 | |
| RBK | | TRAUNECKER, ANDRE, et al., "Soluble CD4 molecules neutralize human immunodeficiency virus type 1", Nature, Vol. 331,(January 1988), pp. 84-86 | |

| | | | |
|---|---|---|---|
| EXAMINER | *Raul B. Kapur* | DATE CONSIDERED | 5/24/04 |

Substitute Disclosure Statement Form (PTO-1449)

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional) ² Applicant is to place a check mark here if English language Translation is attached.*

ZG 000745



#6
mJB
05/24/96

PATENT

I hereby certify that on the date specified below, this correspondence is being deposited with the United States Postal Service as first-class mail in an envelope addressed to:  Assistant Commissioner for Patents, Washington, DC 20231.

__MAY 13, 1996__                          _____
Date                                                       David J. Maki

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicants | : | Andrzej Z. Sledziewski, Lillian A. Bell and Wayne R. Kindsvogel |
| Application No. | : | 08/475,458 |
| Filed | : | June 7, 1995 |
| For | : | METHODS OF PRODUCING SECRETED RECEPTOR ANALOGS AND BIOLOGICALLY ACTIVE DIMERIZED POLYPEPTIDE FUSIONS |

| | | |
|---|---|---|
| Art Unit | : | 1804 |
| Docket No. | : | 990008.446D5 |
| Date | : | May 9, 1996 |

Assistant Commissioner for Patents
Washington, DC 20231

RECEIVED
MAY 23 1996

INFORMATION DISCLOSURE STATEMENT

Dear Assistant Commissioner:

In accordance with 37 C.F.R. §§ 1.56 and 1.97 through 1.98, applicants wish to make known to the Patent and Trademark Office the references set forth on the attached form PTO-1449. This application is a divisional and relies, under 35 U.S.C. § 120, on the earlier filing date of prior application USAN 08/180,195 filed on January 11, 1994; which is a file wrapper continuation of USAN 07/634,510 filed on December 27, 1990; which was a continuation-in-part of USAN 07/347,291 filed May 2, 1989; which was a continuation-in-part of USAN 07/146,877, filed January 22, 1988. The references listed on the attached form PTO-1449 were submitted to and/or cited by the Office in these prior applications and, therefore, are not required to be provided in the present application. However the following four references were not submitted to and/or cited by the Office and are submitted herewith:

ZG 001230

2

- EP 327 369 A2
- EP 244 221 A1
- Gronwald et al., *Proc. Natl. Acad. Sci. USA 85*: 3435-3439, 1988.
- Riedel et al., *Protein Engineering 1*(3): 237, 1987.

As to any reference made of record on the attached form PTO-1449, applicants do not admit that it is "prior art" under 35 U.S.C. §§ 102 or 103, and specifically reserve the right to traverse or antedate any such reference, as by a showing under 37 C.F.R. § 1.131 or other method. Although the aforesaid references are made known to the Patent and Trademark Office in compliance with applicants' duty to disclose all information of which they are aware that is believed relevant to the examination of the above-identified application, applicants believe that their invention is patentable.

Please acknowledge receipt of this Information Disclosure Statement and kindly make the cited references of record in the above-identified application.

Respectfully submitted,

Andrzej Z. Sledziewski et al.

SEED and BERRY LLP

David J. Maki
Registration No. 31,392

DJM:ljt
Enclosures:
    Postcard
    Form PTO-1449 (7 Sheets)
    Copies of 4 Cited References

6300 Columbia Center
701 Fifth Avenue
Seattle, Washington 98104-7092
(206) 622-4900
Fax: (206) 682-6031

Fld (?) ##/?     Sheet 1 of 1

| FORM PTO-1449 (REV.7-80) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 990008.446DS | | APPLICATION NO. 08/475,458 |

INFORMATION DISCLOSURE STATEMENT
*(Use several sheets if necessary)*

APPLICANTS Andrzej Z. Sledziewski et al.

FILING DATE June 7, 1995

GROUP ART UNIT 1804 1812

## U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| CMK | AA | 4,766,073 | 8/23/88 | Murray et al. | 435 | 172.3 | |
| | AB | 4,599,311 | 7/8/86 | Kawasaki | 435 | 71 | |
| | AC | 4,816,567 | 3/28/89 | Cabilly et al., | 530 | 387 | |
| | AD | 4,816,397 | 3/28/89 | Boss et al. | 435 | 68 | |
| | AE | 4,474,893 | 10/2/84 | Reading | 436 | 547 | |
| | AF | 4,761,371 | 8/2/88 | Bell et al. | 435 | 68 | |
| | AG | 5,116,964 | 5/26/92 | Capon et al. | 536 | 27 | |
| CMK | AH | 5,015,571 | 5/14/91 | Niman et al. | 435 | 7.92 | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|---|
| CMK | AL | EP 173 494 | 3/5/86 | EPO | — | | | |
| | AM | WO 86/01533 | 3/13/86 | PCT | — | | | |
| | AN | EP 088 994 | 9/21/83 | EPO | — | | | |
| | AO | EP 239 400 | 9/30/87 | EPO | — | | | |
| CMK | AP | EP 162 319 | 11/27/85 | EPO | — | | | |

## OTHER PRIOR ART *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| CMK | AR | Kuwana et al., *Biochemical and Biophysical Research Communications* 149(3): 960-968, 1987. |
| CMK | AS | Yarden et al., *Nature 323*: 226-232, 1986. |
| CMK | AT | Hart et al., *Science 240*: 1529-1531, 1988. |

| EXAMINER Clein M. Kerf | DATE CONSIDERED 12/13/96 |

* EXAMINER: Initial if reference considered, whether or not criteria is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

Form PT-27/11/94

ZG 001232

Sheet 2 of 7

| FORM PTO-1449 (REV.7-80) | | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | | ATTY. DOCKET NO. 990008.446D5 | | APPLICATION NO. 08/475,458 | |
|---|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT** *(Use several sheets if necessary)* | | | | APPLICANTS Andrzej Z. Sledziewski et al. | | | |
| | | | | FILING DATE June 7, 1995 | | GROUP ART UNIT 1804 1812 | |

**U.S. PATENT DOCUMENTS**

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | BA | | | | | | |
| | BB | | | | | | |
| | BC | | | | | | |
| | BD | | | | | | |
| | BE | | | | | | |
| | BF | | | | | | |
| | BG | | | | | | |
| | BH | | | | | | |
| | BI | | | | | | |
| | BJ | | | | | | |
| | BK | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| CMk | BL | EP 171 496 | 2/19/86 | EPO | | | | |
| | BM | EP 256 654 | 2/24/88 | EPO | | | | |
| | BN | EP 315 062 | 5/10/89 | EPO | | | | |
| | BO | EP 116 201 | 8/22/84 | EPO | | | | |
| CMk | BP | EP 120 694 | 10/3/84 | EPO | | | | |

**OTHER PRIOR ART** *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| CMk | BR | Escobedo et al., *Science 240*: 1532-1534, 1988. |
| CMk | BS | Heldin et al., *EMBO J. 7*: 1387-1393, 1988. |
| CMk | BT | Radeke et al, *Nature 325*: 593-597, 1987. |

| EXAMINER Chris M. Lee | DATE CONSIDERED 12/13/96 |
|---|---|

\* EXAMINER:    Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

Form PT-337/37/94

ZG 001233

Sheet 3 of 7

| FORM PTO-1449 (REV. 3-80) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 4600008.446D5 | APPLICATION NO. 08/475,458 |
|---|---|---|---|

**INFORMATION DISCLOSURE STATEMENT**
*(Use several sheets if necessary)*

| APPLICANTS Andrzej Z. Sledziewski et al. | |
|---|---|
| FILING DATE June 7, 1995 | GROUP ART UNIT 1804 1812 |

### U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | CA | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|---|
| CMM | CB | EP 327 369 A2 | 8/9/89 | EPO | | | | |
| CMM | CC | EP 244 221 A1 | 11/4/87 | EPO | | | | |
| CMM | CD | WO 90/06953 | 6/28/90 | PCT | | | | |
| | CE | | | | | | | |
| | CF | | | | | | | |

### OTHER PRIOR ART *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| CMM | CG | Ebina et al., *Cell 40*: 747-758, 1985. |
| CMM | CH | Rubin et al., *J.Immun. 135*: 3172-3177, 1985. |
| CMM | CI | Ellis et al., *J. Cell. Biol. 150*: 14a, 1987. |
| CMM | CJ | Smith et al., *Science 238*: 1704-1707, 1987. |
| | CK | Livneh et al., *J. Biol. Chem. 261*: 12490-12497, 1986. |
| | CL | Boni-Schnetzler and Pilch, *Proc. Natl. Acad. Sci. USA 84*: 7832-7836, 1987. |
| | CM | Claesson-Welsh et al., *Mol. Cell. Biol. 8*: 3476-3486, 1988. |
| CMM | CN | Ullrich et al., *Nature 309*: 418-425, 1984. |

| EXAMINER *Clark M. Kent* | DATE CONSIDERED 12-13-96 |
|---|---|

* EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant(s).

Form PT-TSV1/1094

ZG 001234

Sheet _4_ of _7_

| FORM PTO-1449 (REV.7-80) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 99008.446D5 | APPLICATION NO. 08/475,458 |
|---|---|---|---|

INFORMATION DISCLOSURE STATEMENT

*(Use several sheets if necessary)*

| APPLICANTS Andrzej Z. Sledziewski et al. | |
|---|---|
| FILING DATE June 7, 1995 | GROUP ART UNIT 1804 1812 |

## U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | DA | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | DB | | | | | | | |

## OTHER PRIOR ART *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| | DC | Ullrich et al., *Nature 313*: 756-761, 1985. |
| | DD | Derynck et al., *Nature 316*: 701-705, 1985. |
| | DE | Loh et al., *Cell 33*: 85-93, 1983. |
| | DF | Honjo et al., *Cell 18*: 559-568, 1979. |
| | DG | Alber and Kawasaki, *J. Mol. Appl. Genet. 1*: 419-434, 1982. |
| | DH | Russell et al., *Nature 304*: 652-654, 1983. |
| | DI | Grosschedl and Baltimore, *Cell 41*: 885-897, 1985. |
| | DJ | Hieter et al., *Cell 22*: 197-207, 1980. |
| | DK | Treiger et al., *J. Immunol. 136*: 4099-4105, 1986. |
| | DL | Roth et al., *J. Cell. Biol. 102*: 1271-1283, 1986. |

| EXAMINER | DATE CONSIDERED 12/13/96 |
|---|---|

* EXAMINER: Initial if reference considered, whether or not criteria is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

ZG 001235

Sheet 1 of 1

| FORM PTO-1449 (REV.7-80) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 990008.446DS | APPLICATION NO. 08/475,458 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT *(Use several sheets if necessary)* | | APPLICANTS Andrzej Z. Sledziewski et al. | |
| | | FILING DATE June 7, 1995 | GROUP ART UNIT 1804 1812 |

## U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | EA | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | EB | | | | | | | |

## OTHER PRIOR ART *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| *CMW* | EC | Riedel et al., *Science 236*: 197-200, 1987. |
| | ED | Riedel et al., *Nature 324*: 68-70, 1986. |
| | EE | Gascoigne et al., *Proc. Natl. Acad. Sci. USA 84*: 2936-2940, 1987. |
| | EF | Maddon et al., *Cell 47*: 333-348, 1986. |
| | EG | Maddon et al., *Cell 42*: 93-104, 1985. |
| | EH | Capon et al., *Nature 337*: 525-531, 1989. |
| | EI | Wood et al., *Nature 314*: 446-449, 1985. |
| | EJ | Carlson et al., *Mol. Cell. Biol. 3*: 439-447, 1983. |
| | EK | Marx, *Science 229*: 455-456, 1985. |
| *CMH* | EL | Neuberger et al., *Nature 312*: 604-609, 1984. |

| EXAMINER  *Clan M. Kol* | DATE CONSIDERED  12/13/96 |
|---|---|

\* EXAMINER: Initial if reference considered, whether or not criteria is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

Form PT-325/VI.I/94    [psd4999008.446DS99944645.ks]

Sheet 6 of 7

| FORM PTO-1449 (REV.7-80) | | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 9000008.446DS | | APPLICATION NO. 08/475,458 |
|---|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT *(Use several sheets if necessary)* | | | APPLICANTS Andrzej Z. Sledziewski et al. | | |
| | | | FILING DATE June 7, 1995 | GROUP ART UNIT 1804 1812 | |

## U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | FA | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | YES | NO |
| | FB | | | | | | | |

## OTHER PRIOR ART *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| *Wil* | FC | Oi and Morrison, *Biotechniques 4*: 214-221, 1986. |
| | FD | Bailon et al., *Bio/Technology 5*: 1195-1198, 1987. |
| | FE | Ballou et al., *J. Biol. Chem. 255*: 5986-5991, 1980. |
| | FF | Munro and Pelham, *EMBO J. 3*: 3087-3093, 1984. |
| | FG | von Heijne, *Nucl Acids Res. 14*: 4683-4690, 1986. |
| | FH | von Heijne, *Eur. J. Biochem. 133*: 17-21, 1983. |
| | FI | Beggs, *Nature*: 104-108, 1978. |
| *CWW* | FJ | Clarke et al., *Meth. Enzym. 68*: 436-442, 1979. |
| | FK | Stiuhl et al., *Proc. Natl. Acad. Sci. USA 76*: 1035-1039, 1979. |
| | FL | Broach et al., *Gene 8*: 121-133, 1979. |

| EXAMINER *Clau M. La* | DATE CONSIDERED 12/13/91 |
|---|---|

* EXAMINER:    Initial if reference considered, whether or not criteria is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

Form PA-TRV1/1/04    \9000008.446DS\9994446ds.idz

ZG 001237

Sheet 7 of 7

| FORM PTO-1449 (REV.7-80) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 990008.446D5 | | APPLICATION NO. 08/475,458 |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT (Use several sheets if necessary) | | APPLICANTS Andrzej Z. Sledziewski et al. | | |
| | | FILING DATE June 7, 1995 | | GROUP ART UNIT 1804 1812 |

**U.S. PATENT DOCUMENTS**

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | GA | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | GB | | | | | | | |

**OTHER PRIOR ART** *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| CML | GC | Mariuzza and Winter, *J. Biol. Chem.* 264: 7310-7316, 1989. |
| CML | GD | Gronwald et al., *Proc. Natl. Acad. Sci. USA* 85: 3435-3439, 1988. |
| CL | GE | Riedel et al., *Protein Engineering* 1(3): 237, 1987. |
| | GF | |
| | GG | |
| | GH | |
| | GI | |
| | GJ | |
| | GK | |
| | GL | |

| EXAMINER *Claire M. Kee* | DATE CONSIDERED 12/13/96 |
|---|---|

* EXAMINER: Initial if reference considered, whether or not criteria is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant(s).

Form PT-37/VI/1/94    9964809008.446D5/99844683.xls

ZG 001238

PTO/SB/08A(10-01)
Approved for use through 10/31/2002 OMB 0651-0031
US Patent & Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

| Substitute for form 1449A/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | Unknown |
| | Filing Date | Even Date Herewith |
| | First Named Inventor | Sledziewski, Andrzej |
| | Group Art Unit | Unknown |
| | Examiner Name | Unknown |
| Sheet 1 of 1 | Attorney Docket No: 985.011USX | |

## US PATENT DOCUMENTS

| Examiner Initial * | USP Document Number | Publication Date | Name of Patentee or Applicant of cited Document | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| PBK | US-5,336,603 | 08/09/1994 | Capon, Daniel J., et al. | 435 | 69.7 | 08/26/1992 |
| PBK | US-5,565,335 | 10/15/1996 | Capon, Daniel J., et al. | 435 | 64.7 | 05/02/1994 |
| PBK | US-6,004,781 | 12/21/1999 | Seed, Brian | 435 | 69.7 | 02/04/1994 |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Foreign Document No | Publication Date | Name of Patentee or Applicant of cited Document | Class | Subclass | T² |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHER DOCUMENTS -- NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No ¹ | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number[s], publisher, city and/or country where published. | T² |
|---|---|---|---|
| PBK | | ELLIS, LELAND, et al., "Linking functional domains of the human insulin receptor with the bacterial aspartate receptor", Proc. Natl. Acad. Sci. USA, Vol. 83, (November 1986), pp. 8137-8141 | |
| RBK | | GASCOIGNE, NICHOLAS R., et al., "Secretion of a chimeric T-cell receptor-immunoglobulin protein", Proc. Natl. Acad. Sci., Vol. 84, (May 1987), pp. 2936-2940 | |
| RBK | | RIEDEL, HEIMO, et al., "A chimeric, ligand-binding v-erbB/EGF receptor retains transforming potential", Science, Vol. 236,(April 10, 1987), pp. 197-200 | |
| RBK | | TRAUNECKER, ANDRE, et al., "Soluble CD4 molecules neutralize human immunodeficiency virus type 1", Nature, Vol. 331,(January 1988), pp. 84-86 | |

| EXAMINER | Rachel B. Kapust | DATE CONSIDERED | 5/24/04 |
|---|---|---|---|

Substitute Disclosure Statement Form (PTO-1449)
*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² Applicant is to place a check mark here if English language Translation is attached.

ZG 001646

# EXHIBIT 10

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 11

10-K 1 d10k.htm ANNUAL REPORT FOR THE FISCAL YEAR ENDED DECEMBR 31, 2004

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 10-K

**ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2004

Commission File Number 1-1136

# BRISTOL-MYERS SQUIBB COMPANY
(Exact name of registrant as specified in its charter)

| Delaware | 22-0790350 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |

**345 Park Avenue, New York, N.Y. 10154**
(Address of principal executive offices)

**Telephone: (212) 546-4000**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $0.10 Par Value | New York Stock Exchange Pacific Exchange, Inc. |
| $2 Convertible Preferred Stock, $1 Par Value | New York Stock Exchange Pacific Exchange, Inc. |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes ☒ No ☐

The aggregate market value of the 1,951,041,834 shares of voting common equity held by non-affiliates of the registrant, computed by reference to the closing price as reported on the New York Stock Exchange, as of the last

### Table of Contents

research efforts. These investments can take many forms, including licensing arrangements, codevelopment and comarketing agreements, copromotion arrangements and joint ventures.

Drug development is time-consuming, expensive and risky. In the development of human health products, industry practice and government regulations in the United States and most foreign countries provide for the determination of effectiveness and safety of new molecular entities through preclinical tests and controlled clinical evaluation. Before a new drug may be marketed in the United States, recorded data on preclinical and clinical experience are included in the NDA or the BLA to the FDA for the required approval. The development of certain other products is also subject to government regulations covering safety and efficacy in the United States and many foreign countries. There can be no assurance that a compound developed as a result of any program will obtain the regulatory approvals necessary for it to be marketed for any particular disease indication.

On average, only about one in ten thousand chemical compounds discovered by pharmaceutical industry researchers proves to be both medically effective and safe enough to become an approved medicine. The process from discovery to regulatory approval typically takes ten years or longer. Drug candidates can fail at any stage of the process, and even late-stage product candidates sometimes fail to receive regulatory approval. The Company believes its investments in research, both internally and in collaboration with others, have been rewarded by the number of new pharmaceutical compounds and indications it has in all stages of development.

The Company's drug discovery program includes many alliances and collaborative agreements. These agreements bring new products into the pipeline or help the Company remain on the cutting edge of technology in the search for novel medicines.

Listed below are several investigational compounds that the Company has in the later stages of development. All of these compounds are in or entering Phase II or Phase III clinical trials. Whether or not any of these investigational compounds ultimately becomes one of the Company's marketed products depends on the results of pre-clinical and clinical studies, the competitive landscape of the potential product's market and the manufacturing processes necessary to produce the potential product on a commercial scale, among other factors. The Company filed applications to the FDA for entecavir in September 2004 and muraglitazar in December 2004. The Company also filed a rolling BLA for abatacept (CTLA4Ig) under the provisions of the FDA's Continuous Marketing Application, Pilot 1 and expects that submission to be completed in early 2005. However, as noted above, there can be no assurance that the Company will seek regulatory approval of any of these compounds or that, if such approval is sought, it will be obtained. At this stage of development, the Company cannot determine all intellectual property issues or all the patent protection that may, or may not, be available for these investigational compounds. The patent coverage highlighted below does not include potential term extensions.

| | |
|---|---|
| Abatacept | CTLA4Ig, a biological product which has been developed internally and is currently in Phase III clinical trials, is a fusion protein with novel immunosuppressive activity targeted initially at rheumatoid arthritis. Abatacept has been granted fast track status by the U.S. FDA and the Company is filing a rolling BLA for abatacept under the provisions of Continuous Marketing Application, Pilot 1. Complete Non-Clinical and Clinical sections have already been submitted to the FDA and the remaining sections will be submitted in early 2005. The Company has a series of patents covering CTLA4Ig and its method of use. The latest of the composition of matter patents expires in the United States in 2016. U.S. litigation with Repligen Corporation (Repligen) concerning the inventorship of CTLA4Ig has been concluded in favor of the Company. Repligen has received a U.S. patent that claims a use of CTLA4Ig to treat specific autoimmune diseases, including rheumatoid arthritis. For more information about this litigation, see "Item 8. Financial Statements—Note 21. Legal Proceedings and Contingencies." |
| Entecavir | Entecavir, which has been developed internally and is currently under regulatory review, is a potent and selective inhibitor of hepatitis B virus. The Company submitted an NDA to the FDA and a marketing authorization application to the European Medicines Evaluation Agency in October 2004. The Company has a composition of matter patent that expires in the United States in 2010. |
| Muraglitazar | Muraglitazar, which has been developed internally and is currently under regulatory review, is a dual PPAR agonist for the treatment of type 2 diabetes and other metabolic disorders. The Company submitted an NDA to the FDA in December 2004. The product is being codeveloped and copromoted under a collaboration agreement with Merck. The Company has a composition of matter patent which expires in the United States in 2020. |
| EMSAM* | EMSAM*, an investigational monoamine oxidase inhibitor administered as a transdermal patch for the |

acute and maintenance treatment of patients with major depressive disorder, is being codeveloped with
Somerset and has received an approvable letter from the FDA in February 2004.

25

# EXHIBIT 12

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 25, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richard Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE 19899
cottrell@rlf.com
farnan@rlf.com

I hereby certify that on August 25, 2008 I have sent by E-mail the foregoing

document to the following non-registered participant:

Christopher P. Borello, Esq.
Colleen Tracy, Esq.
Fitzpatrick Cella Harper & Scinto
30 Rockefeller Plaza
New York, NY 10112
cborello@fchs.com
ctracy@fchs.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

748348